U.S. COURTS

MAR 25 2025

Rcvd____ Filed____ Time 2:54 pm
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

1 | JASON HENRY ALLEN,
Plaintiff, Pro se

2

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO NORTHERN DIVISION

3

4

5 | JASON HENRY ALLEN,
INDIVIDUALLY AND AS TRUSTEE
OF RIKUR PRIVATE IRREVOCABLE
6 | TRUST,

Case No.: **CV 25-0172-NUKG**

COMPLAINT

7

Plaintiff,

8

vs.

9

10 | IDAHO CENTRAL CREDIT
UNION AND BRIAN M.
BERRETT,

11

Defendants

12

13 | **COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, FAIR DEBT COLLECTION PRACTICES ACT, EQUAL CREDIT OPPORTUNITY ACT, FEDERAL CREDIT UNION ACT, FEDERAL FRAUD STATUTES, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, UNJUST ENRICHMENT, CONVERSION OF TRUST PROPERTY, IDAHO CONSUMER PROTECTION AND UNFAIR CLAIMS LAWS, IDAHO CONSTITUTIONAL VIOLATIONS, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, CIVIL CONSPIRACY, AND FOR INJUNCTIVE RELIEF, COMPENSATORY AND PUNITIVE DAMAGES.**

14

15

16

17

COMES NOW, Plaintiff, JASON HENRY ALLEN, and files this Complaint against Defendants
18
Idaho Central Credit Union ("ICCU") and Brian M. Berrett, stating as follows:
COMPLAINT - 1

## PARTIES AND JURISDICTION

1. Plaintiff Jason-Henry:Allen maintains a physical presence near 2600 East Seltice Way #235, Post Falls, Kootenai County, Idaho 83854, and is a natural person and non-citizen national of the United States of America, possessing inherent standing to bring this action individually and as Trustee of the Rikur Private Irrevocable Trust (*Exhibit A*) [trust formation date—August 26, 2022]. The 2023 Toyota Sequoia VIN 7SVAAABA8PX011784 is trust res of the Rikur Private Irrevocable Trust, not Plaintiff's personal property. For the sole and limited purpose of instituting and prosecuting this action, Plaintiff exercises his power of attorney (*Exhibit A*) to naturalize the ens legis, JASON HENRY ALLEN, into this Court's jurisdiction. Plaintiff, the living man Jason-Henry:Allen, and the ens legis, JASON HENRY ALLEN, are distinct entities, and any conflation shall be deemed subterfuge, subject to all lawful remedies.

2. Defendant Idaho Central Credit Union ("ICCU") is a financial institution with its principal place of business located at 4400 Central Way, Chubbuck, Bannock County, Idaho 83202. ICCU is engaged in financial services throughout the State of Idaho and is subject to all regulations governing banking, consumer credit, and consumer finance.

3. Defendant Brian M. Berrett is the Chief Financial Officer for ICCU, responsible for overseeing financial operations, policies, fiduciary duties, and regulatory compliance for ICCU and its members. Berrett received and ignored Plaintiff's fiduciary appointment, Form 56, and demands, knowingly breaching his duty under common law and UCC § 3-301 as a holder of the instrument making him a viable Defendant in this action.

COMPLAINT - 2

4. Defendant Brian M. Berrett, as CFO of ICCU, personally directed or ratified financial policies leading to the breaches and violations alleged herein, rendering him individually liable under Idaho law and 15 U.S.C. § 1681n (FCRA willful noncompliance)

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the claims asserted herein under 28 U.S.C. § 1331 (federal question jurisdiction), as the action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy as the federal claims.

6. Venue is proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to this claim—namely, the purchase of the 2023 Toyota Sequoia from George Gee Kia in Coeur d'Alene, Kootenai County, Idaho and Defendants' wrongful actions against Plaintiff and the Rikur Private Irrevocable Trust—occurred in this judicial district.

7. Defendants are subject to personal jurisdiction in this district due to their business activities and contacts in Kootenai County, including but not limited to contracts with Plaintiff.

## PROCEDURAL BACKGROUND

Plaintiff has exhausted all reasonable pre-litigation remedies, including demands on December 1, 2024, January 13, 2025, and cease-and-desist on March 5, 2025 (*Exhibits B, C, D*), to no avail. This action complies with FRCP 8(a). Plaintiff demands a trial by jury on all issues so triable, pursuant to FRCP 38(b). Plaintiff provides notice of intent to seek

COMPLAINT - 3

sanctions under FRCP 37(e) for any spoliation of evidence by Defendants, including but not limited to emails, credit reports, and loan records related to the 2023 Toyota Sequoia transaction.

# FACTUAL ALLEGATIONS

1. On or about October 18, 2024, Plaintiff entered into a contract (*Exhibit E*) with ICCU for **a 2023 Toyota Sequoia VIN 7SVAAABA8PX011784** from George Gee Kia dealership.

2. George Gee Kia is located at 317 Dalton Avenue Coeur D'Alene ID 83815.

3. Plaintiff fully performed on the contract relating to the 2023 Toyota Sequoia VIN 7SVAAABA8PX011784 on October 18, 2024 (*Exhibit E*).

4. Plaintiff indorsed the contract specially and restrictively on October 18th 2024 (*Exhibit E*).

5. Plaintiff indorsed the negotiable instrument specially and restrictively on October 18th 2024 (*Exhibit F*).

6. Plaintiff signed all contract documents with special and restrictive indorsements "By: Jason-Henry:Allen Without Recourse" or "By: Jason-Henry:Allen Without Recourse, Pay to the order of JASON H ALLEN" in alignment with UCC 3-205(a) (*Exhibit E*).

7. A "special indorsement" is an indorsement made by the holder of an instrument, whether payable to an identified person or payable to bearer, and that identifies a person to whom it makes the instrument payable (UCC 3-205(a)).

8. ICCU accepted the specially and restrictively indorsed Negotiable Instrument on or around October 18th 2024.

9. ICCU fully accepted the perfected contract on or around October 18th 2024.

COMPLAINT - 4

10. Brian M. Berrett in his official capacity of Chief Financial Officer for ICCU became the Fiduciary for JASON HENRY ALLEN on or around October 18th 2024.

11. Plaintiff performed all obligations pertaining to the contract on October 18, 2024.

12. ICCU fully accepted the contract containing the specially and restrictively indorsed instrument on or around October 18th, 2024.

13. ICCU agent Brian M. Berrett became Plaintiff's fiduciary on or around October 18th, 2024 regarding the Plaintiff's fiduciary within the transaction (*Exhibit G*).

14. Plaintiff sent Brian M Barrett CFO for ICCU letter of instruction, Notice of Tender, copy of original contract, copy of perfected Negotiable Instrument, Durable Power of Attorney, specially and restrictively indorsed payment coupons, and Fiduciary appointment form 56. Sent via Registered mail #RF816840985US (*Exhibit B*).

15. Plaintiff formally demanded the clean and clear title for the 2023 Toyota Sequoia VIN 7SVAAABA8PX011784 on December 1, 2024 via Registered mail (*Exhibit B*).

16. Plaintiff formally demanded the proof of lien release for the 2023 Toyota Sequoia (VIN 7SVAAABA8PX011784 on December 1, 2024 via Registered mail (*Exhibit B*).

17. The demands were sent via Registered Mail RF816840985US (*Exhibit B*).

18. The demands were received by ICCU on December 10th, 2024.

19. The demands were fully accepted by ICCU on December 10th, 2024 per the posting rule (Culton v Gilchrist 81 US (14 Wall.) 306 (1871)).

20. ICCU agent signed acknowledging delivery and acceptance of the demands with a wet ink signature.

21. Plaintiff formally demanded the clean and clear title for 2023 Toyota Sequoia VIN 7SVAAABA8PX011784 again on January 13, 2025 (*Exhibit C*).

COMPLAINT - 5

22. Plaintiff formally demanded the proof of lien release for 2023 Toyota Sequoia VIN 7SVAAABA8PX011784 again on January 13, 2025 (*Exhibit C*).

23. The demands were sent via Registered Mail RF816840968US (*Exhibit C*).

24. The demands were received on January 23rd, 2025.

25. The demands were fully accepted on January 23, 2025 per the posting rule (Culton v Gilchrist 81 US (14 Wall.) 306 (1871)).

26. ICCU agent signed acknowledging delivery and acceptance of the demands with a wet ink signature.

27. ICCU has failed to release the title and continued collection attempts and negative credit reporting despite the fulfilled contract.

28. Plaintiff notified ICCU and Brian M. Berrett of their breach of contract and breach of fiduciary duty on December 1, 2024 and again on January 13, 2025 (*Exhibits B, C*).

29. Plaintiff affirms that 2023 Toyota Sequoia VIN 7SVAAABA8PX011784 was placed into Rikur Private Irrevocable Trust on November 3, 2024 (*Exhibit H*).

30. Plaintiff affirms that 2023 Toyota Sequoia VIN 7SVAAABA8PX011784 is Trust Res of Rikur Private Irrevocable Trust (*Exhibit A*).

31. Plaintiff affirms that 2023 Toyota Sequoia VIN 7SVAAABA8PX011784 is secured with highest lien position by UCC financial statement on the public record with the Idaho Secretary Of State (*Exhibit H*).

32. Plaintiff requested any and all appropriate funds related to 2023 Toyota Sequoia VIN 7SVAAABA8PX011784 to be deposited into the plaintiffs Treasury Direct Account # G 509-840-052 on December 1st 2024 via Registered mail #RF816840985US (*Exhibit B*).

COMPLAINT - 6

33. Plaintiff requested that all collection attempts and any and all negative credit reporting related to 2023 Toyota Sequoia VIN 7SVAAABA8PX011784 cease and be corrected on December 1st 2024 via Registered Mail RF816840985US (*Exhibit B, D*).

34. Plaintiff requested that all collection attempts and any and all negative credit reporting cease and be corrected on January 13th 2025 via Registered mail #RF816840968USUS (*Exhibit C*).

35. Plaintiff noticed ICCU and its agent Brian M. Berrett they are in breach of contract and in breach of Fiduciary Duty on January 13th 2025 via Registered mail #RF816840968USUS (*Exhibit C*).

36. Plaintiff affirms that ICCU and its agents have not challenged or refuted the contract.

37. Plaintiff affirms that ICCU and its agents have not challenged the negotiable instrument(s).

38. Plaintiff affirms that ICCU and its agents have not returned, refused, or refuted the negotiable instrument(s).

39. Plaintiff asserts that ICCU and Brian M. Berrett have absconded with the negotiable instruments supplied by the Plaintiff, amounting to possible securities fraud and willful fraud under applicable law.

40. Plaintiff asserts that ICCU and its agents are in breach of contract.

41. Plaintiff asserts that ICCU and its agents have committed willful and deliberate fraud.

42. Plaintiff affirms that he has performed all obligations required under the purchase contract, including submitting full payment and completing all required documentation.

43. These actions invoke Plaintiff's rights under the *Fair Credit Reporting Act (FCRA)* and FDCPA.

44. On February 5th 2025, Plaintiff sent a Notice of Intent to Litigate to ICCU (*Exhibit I*).

COMPLAINT - 7

45. On February 23rd 2025, Plaintiff sent a formal demand for debt validation ICCU (*Exhibit J*).

46. On February 27th 2025, Plaintiff sent a formal Fiduciary appointment documents to Brian M. Berrett CFO for ICCU (*Exhibit G*).

47. On March 5th 2025, Plaintiff sent a formal cease and desist to ICCU (*Exhibit D*).

48. Defendant ICCU is accredited by the Better Business Bureau (BBB) and has publicly committed to upholding the BBB Standards for Trust, which include being responsive and addressing marketplace disputes through good-faith dispute resolution processes.

49. Despite Plaintiff's repeated attempts to resolve this dispute without litigation—including demands for title release on December 1, 2024, and January 13, 2025 (Exhibits B. C), a cease-and-desist notice on March 5, 2025 (Exhibit D), and a notice of intent to litigate sent to ICCU on February 5, 2025 ICCU has failed to engage in <u>any</u> dispute resolution efforts.

50. ICCU's refusal to respond to Plaintiff's demands or participate in BBB-mediated dispute resolution processes violates their BBB commitment to address marketplace disputes in good faith, further evidencing their pattern of bad faith conduct in this transaction.

51. ICCU's failure to uphold their BBB commitment has exacerbated Plaintiff's financial harm, reputational damage, and emotional distress, as Plaintiff was forced to escalate this matter to litigation to seek redress for Defendants' wrongful actions.

52. Plaintiff has suffered severe emotional distress as a direct result of Defendants' actions, including but not limited to anxiety, sleeplessness, and humiliation caused by ICCU's wrongful retention of the 2023 Toyota Sequoia title, continued collection attempts, and false credit reporting.

COMPLAINT - 8

53. Plaintiff's emotional distress has been exacerbated by the need to engage in litigation to protect the Rikur Private Irrevocable Trust's property and Plaintiff's financial reputation, a burden directly attributable to Defendants' refusal to engage in good-faith dispute resolution as committed to under their BBB accreditation.

54. Defendants ICCU and Brian M. Berrett engaged in a civil conspiracy to wrongfully retain Plaintiff's payment of $84,800.94, withhold the title to the 2023 Toyota Sequoia, and falsely report Plaintiff's credit status, with the intent to cause Plaintiff financial and reputational harm.

55. Berrett, as CFO, directed or ratified ICCU's actions, including the refusal to release the title and the continuation of collection attempts, as evidenced by his non-response to Plaintiff's Form 56 fiduciary appointment and demands

56. As a result of Defendants' conspiracy, Plaintiff has suffered financial loss, reputational damage, and emotional distress.

# CLAIMS FOR RELIEF

# COUNT I – BREACH OF CONTRACT

57. Plaintiff incorporates by reference all prior allegations as if fully stated herein.

58. ICCU's breach proximately caused damages exceeding $75,000, including loss of vehicle ownership, use, and equity. *Hadley v. Baxendale* (1854).

59. A valid and enforceable contract existed between Plaintiff and ICCU regarding the purchase of the 2023 Toyota Sequoia VIN 7SVAAABA8PX011784.

COMPLAINT - 9

60. ICCU accepted the perfected and performed on contract and assumed financial obligations and fiduciary duties, including processing the transaction correctly and issuing a clean and clear title. This obligation is outlined as per the *Uniform Commercial Code (UCC)* and general principles of contract law.

61. ICCU's failure to release the title and properly execute contractual obligations constitutes a material breach of contract.

62. ICCU's failure to release the clean title to the Rikur Private Irrevocable Trust, despite accepting full payment via the negotiable instrument (UCC § 3-603), constitutes a material breach of contract and trust law under Idaho Code § 68-106.

63. Plaintiff has suffered financial harm, inconvenience, and damages due to ICCU's breach. It is well settled that breach of "a contract to act diligently and skillfully" provides a "ground of action" in federal court. *Wilcox v. Executors of Plummer*, 4 Pet. 172, 181-182, 7 L.Ed. 821 (1830). It is also undisputed that "a breach of contract always creates a right of action," even when no financial "harm was caused." Restatement (First) of Contracts § 328, and Comment *a*, pp. 502-503 (1932); see also *Spokeo*, 578 U. S.,136 S.Ct., at 1551 (THOMAS, J., concurring)

64. ICCU's failure to engage in good-faith dispute resolution, as committed to under their BBB accreditation, constitutes an additional breach of the implied covenant of good faith and fair dealing inherent in the contract for the 2023 Toyota Sequoia, further violating Idaho common law principles as recognized in *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 108 P.3d 380 (2005).

## COUNT II – BREACH OF FIDUCIARY DUTY

COMPLAINT - 10

65. Plaintiff incorporates by reference all prior allegations as if fully stated herein.

66. By accepting Plaintiff's perfected contract and payment, ICCU and Defendant Berrett assumed a fiduciary duty towards Plaintiff.

67. This duty arises from the trust and confidence placed in ICCU to handle Plaintiff's funds and obligations responsibly.

68. Defendants breached this duty by failing to properly process Plaintiff's requests, release the vehicle title, and make accurate credit bureau reporting. As a result, Plaintiff has suffered financial losses and reputational harm.

69. A breach of-fiduciary-duty claim exists regardless of the beneficiary's personal gain, loss, or recovery. Berrett's failure to act as fiduciary, despite fully accepting the Fiduciary Appointment and Form 56 (Exhibits B, G), breached duties of loyalty and care under U.C.C and Idaho Code § 15-7-804

## COUNT III – VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. § 1681 *et seq.*

70. Plaintiff incorporates by reference all prior allegations as if fully stated herein.

71. ICCU and its agents furnished inaccurate and misleading information to credit reporting agencies regarding Plaintiff's financial obligations, violating *15 U.S.C. § 1681s-2(a)*.

72. Plaintiff disputed inaccuracies with ICCU on December 1, 2024, and January 13, 2025 (Exhibits B, C, D), yet ICCU failed to investigate and correct within 30 days, per 15 U.S.C. § 1681s-2(b)(2).

COMPLAINT - 11

73. ICCU's reporting of inaccurate debt information against Plaintiff, rather than the Rikur Private Irrevocable Trust—the legal owner of the 2023 Toyota Sequoia—further violates 15 U.S.C. § 1681s-2(a)(1)(A) by furnishing false data tied to the wrong entity.

74. As a direct result of ICCU's violations, Plaintiff has suffered harm, including damage to credit reputation, financial losses, and emotional distress. Plaintiff is entitled to damages as provided under *15 U.S.C. § 1681n* for willful noncompliance and *15 U.S.C. § 1681o* for negligent noncompliance.

75. CCU's refusal to participate in BBB dispute resolution processes after Plaintiff's disputes of inaccurate credit reporting on December 1, 2024, and January 13, 2025 (Exhibits B, C), demonstrates willful noncompliance with 15 U.S.C. § 1681s-2(b), as ICCU failed to engage in any meaningful effort to investigate or correct the inaccuracies, further justifying statutory damages under 15 U.S.C. § 1681n.

# COUNT IV- VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT, *Idaho Code § 48-601 et seq.*

76. Plaintiff incorporates by reference all prior allegations as if fully stated herein.

77. ICCU's actions constitute unfair or deceptive business practices in violation of the Idaho Consumer Protection Act. These practices include but are not limited to, misrepresenting the terms of the transaction, failing to provide clear and accurate information, and not honoring the mutually agreed-upon terms.

COMPLAINT - 12

78. ICCU's misrepresentations about debt status violate Idaho Code § 48-603(7) (false statements in trade). Specifically, reporting paid debt as delinquent.

79. Pursuant to *Idaho Code § 48-608*, Plaintiff is entitled to legal remedies including actual damages, a minimum recovery of $1,000, recovery of court fees, and at the Courts discretion, costs and punitive damages.

80. ICCU's false advertising through their BBB commitment further violates Idaho Code § 48-603(5), as their misrepresentation misled Plaintiff into expecting ethical conduct, justifying additional damages under Idaho Code § 48-608.

81. ICCU's failure to uphold their BBB commitment to dispute resolution constitutes an additional unfair and deceptive business practice under Idaho Code § 48-603(17) (engaging in conduct that creates a likelihood of confusion or misunderstanding), as ICCU's public commitment to ethical dispute resolution misled Plaintiff into expecting a good-faith response that never materialized.

82. ICCU's failure to uphold their BBB commitment to dispute resolution also violates Idaho Code § 48-603(9) under the Deceptive Trade Practices Act, as their public representations misled Plaintiff into expecting ethical conduct that ICCU failed to deliver.

83. ICCU's failure to engage in any dispute resolution efforts despite Plaintiff's demands violates Idaho Code § 48-603(9) by engaging in deceptive acts that create a likelihood of confusion or misunderstanding regarding ICCU's business practices.

84. ICCU's public commitment to the BBB Standards for Trust, including good-faith dispute resolution, constitutes a representation to the public that ICCU will engage in ethical business practices, as governed by Idaho's Deceptive Trade Practices Act, Idaho Code § 48-601 et seq.

COMPLAINT - 13

# COUNT V - UNJUST ENRICHMENT

85. Plaintiff incorporates by reference all prior allegations as if fully stated herein.

86. ICCU retained at least $84,800.94 without delivering title, unjustly enriching itself at Plaintiff's expense.

87. ICCU has been unjustly enriched by retaining the full payment made by Plaintiff without providing the corresponding release of title and fulfillment of their contractual obligations.

88. It is inequitable for ICCU to retain these funds under these circumstances.

89. Plaintiff is entitled to restitution for at least the amount of the unjust enrichment.

90. A claim for unjust enrichment is maintained, "(1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." *Stevenson v. Windermere Real Estate/Capital Grp., Inc.*, 152 Idaho 824, 827, 275 P.3d 839, 842 (2012).

# COUNT VI – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

91. Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

92. If ICCU is not a debt collector, its agent acted as one under 15 U.S.C § 1692a(6), and ICCU is vicariously liable per *Fox v. Citicorp*, 15 F.3d 1507 (9th Cir. 1994).

COMPLAINT - 14

93. Violation of 15 U.S.C. § 1692c(c) – Cease and Desist Violations (*Exhibit D*): Plaintiff formally notified ICCU in writing on December 1, 2024, on January 13, 2025, and again on February 25, 2025 to cease all collection efforts related to the alleged debt.

94. Despite these requests, ICCU continued to engage in collection activities, including attempting to collect on an obligation Plaintiff had already satisfied.

95. Despite Plaintiff's cease-and-desist notices, ICCU continued collection efforts against Plaintiff personally, rather than the Rikur Private Irrevocable Trust, the lawful owner and debtor if any debt exists, violating 15 U.S.C. § 1692c(c).

96. Violation of 15 U.S.C. § 1692e – False or Misleading Representations: ICCU knowingly or recklessly misrepresented the status of the debt by falsely reporting it as outstanding despite receiving Plaintiff's full payment and contractual performance.

97. ICCU's misrepresentation was made with the intent to deceive Plaintiff and induce further payments that were not legally owed.

98. This conduct constitutes a violation of 15 U.S.C. § 1692e, which prohibits the use of false, deceptive, or misleading representations in the collection of a debt.

99. Violation of 15 U.S.C. § 1692f – Unfair and Unconscionable Practices: ICCU engaged in unfair and unconscionable debt collection practices by demanding payment even though the obligation was satisfied.

100.   ICCU's failure to provide the clear title and proof of lien release, despite being contractually obligated to do so, constitutes an unfair act under 15 U.S.C. § 1692f.

101.   By retaining control over Plaintiff's property without justification and reporting erroneous debt information to credit bureaus, ICCU engaged in practices prohibited under federal law.

COMPLAINT - 15

# COUNT VII – VIOLATION OF 18 U.S.C. § 1001 (FALSE STATEMENTS)

102.  Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

103.  ICCU's false statements to credit bureaus constitute fraud under Idaho common law, actionable per *McKay v. Owens*, 130 Idaho 148 (1997).

104.  ICCU misrepresented the status of Plaintiff's debt by reporting an obligation that had been fully satisfied, despite receiving formal notice and proof of payment from Plaintiff.

105.  Such false statements were material, intended to mislead financial institutions, credit bureaus, and regulators, and had a direct impact on Plaintiff's financial standing and creditworthiness, and reputation.

106.  As a result of ICCU's knowing and willful misrepresentation, Plaintiff has suffered financial harm, damage to his credit reputation, and emotional distress.

# COUNT VIII – VIOLATION OF 18 U.S.C. § 1341 (MAIL FRAUD)

107.  Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

108.  ICCU's use of mail to misrepresent debt status constitutes common-law fraud, per *Watts v. Krebs*, 131 Idaho 616 (1998), causing damages over $75,000.

109.  ICCU knowingly sent fraudulent correspondence regarding Plaintiff's alleged financial obligations in an attempt to unjustly retain funds and refuse the release of the vehicle title.

COMPLAINT - 16

110. The use of mail for the purpose of executing a fraudulent scheme constitutes mail fraud in violation of *18 U.S.C. § 1341*.

111. As a result of ICCU's mail fraud, Plaintiff has suffered financial harm and reputational damage.

# COUNT IX – VIOLATION OF 18 U.S.C. § 1343 (WIRE FRAUD)

112. Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

113. ICCU's use of wire to misrepresent debt status constitutes common-law fraud, per *Watts v. Krebs*, 131 Idaho 616 (1998), causing damages over $75,000.

114. ICCU engaged in fraudulent activities using electronic communications, including emails, credit reporting systems, and other digital platforms, to misrepresent Plaintiff's financial obligations.

115. ICCU falsely reported to credit bureaus and financial institutions that Plaintiff owed a balance on the 2023 Toyota Sequoia despite having received full payment.

116. ICCU's actions were intentional and carried out via electronic means to execute a fraudulent scheme, thereby constituting wire fraud in violation of 18 U.S.C. § 1343.

117. As a direct result of ICCU's fraudulent actions, Plaintiff has suffered significant financial and reputational damages.

# COUNT X - DECLARATORY JUDGMENT AND CONVERSION OF TRUST PROPERTY

COMPLAINT - 17

118.    Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

119.    On November 3, 2024, Plaintiff transferred all rights, title, and interest in the 2023

Toyota Sequoia VIN 7SVAAABA8PX011784 to the Rikur Private Irrevocable Trust (*Exhibit*

*A*), a separate legal entity under Idaho Code § 68-104, via a perfected UCC Financing

Statement filed with the Idaho Secretary of State (*Exhibit H*). Said vehicle is trust res, held

exclusively by the trust and not the personal property of Plaintiff Jason Henry Allen.

120.    ICCU's acceptance of Plaintiff's specially and restrictively indorsed negotiable

instrument on October 18, 2024 (*Exhibit B*), constituted full satisfaction of the debt under

UCC § 3-603(b) "Tender of payment discharges the obligation to the extent of the amount

tendered". Defendants' refusal to release the title to the Rikur Private Irrevocable Trust,

despite satisfaction of the underlying obligation, violates UCC § 3-306 (impairment of

holder's rights).

121.    Defendants' continued attempts to repossess the 2023 Toyota Sequoia and report

derogatory credit information against Plaintiff, rather than the trust, constitute wrongful

conversion of trust property under Idaho common law. See Watts v. Krebs, 131 Idaho 616,

962 P.2d 387 (1998).

122.    ICCU's lien, if valid, attached to the vehicle on October 18, 2024, but was extinguished

by Plaintiff's tender of payment (Exhibit B), rendering the trust's ownership superior under

Idaho Code § 28-9-317 (priority of security interests). Defendants' failure to acknowledge

the trust's title and release their claim is an unlawful interference with trust property.

123.    Plaintiff, as grantor and/or trustee of the Rikur Private Irrevocable Trust, has standing to

seek relief on behalf of the trust to protect its assets from Defendants' wrongful actions.

COMPLAINT - 18

124.    As a direct result of Defendants' conduct, the trust has been deprived of clear title and use of its property, and Plaintiff has suffered ancillary harm, including financial loss and reputational damage from erroneous credit reporting.

# COUNT XI – VIOLATION OF BBB STANDARDS FOR TRUST AND BAD FAITH CONDUCT

125.    Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

126.    ICCU, as a BBB-accredited business, has committed to upholding the BBB Standards for Trust, which include being responsive and addressing marketplace disputes through good-faith dispute resolution processes.

127.    ICCU's failure to engage in any dispute resolution efforts despite Plaintiff's repeated attempts violates their BBB commitment and constitutes bad faith conduct under Idaho common law principles of good faith and fair dealing, as recognized in *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 108 P.3d 380 (2005).

128.    ICCU's bad faith conduct has directly caused Plaintiff to incur additional financial harm, reputational damage, and emotional distress, as Plaintiff was forced to escalate this matter to litigation to seek redress.

129.    Plaintiff's emotional distress warrants additional punitive damages for ICCU's bad faith conduct.

130.

COMPLAINT - 19

131.    Plaintiff is entitled to damages for ICCU's bad faith conduct, including compensatory and punitive damages, as well as injunctive relief to compel ICCU to comply with their BBB commitment to engage in good-faith dispute resolution.

## COUNT XII – VIOLATION OF THE FEDERAL CREDIT UNION ACT (12 U.S.C. § 1751 et seq.)

132.    Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

133.    ICCU, as a credit union, is subject to the Federal Credit Union Act, which requires it to treat members fairly and equitably, per 12 U.S.C. § 1757.

134.    ICCU's actions, including retaining Plaintiff's payment without releasing the title, continuing collection attempts after cease-and-desist notices, and falsely reporting Plaintiff's credit status, constitute a violation of 12 U.S.C. § 1757 by failing to act in good faith and treat Plaintiff equitably.

135.    As a direct result, Plaintiff has suffered financial harm, reputational damage, and emotional distress, entitling Plaintiff to damages, including compensatory and punitive damages, in an amount to be determined by the court.

## COUNT XIII – VIOLATION OF IDAHO UNFAIR CLAIMS SETTLEMENT PRACTICES ACT (IDAHO CODE § 41-1301 et seq.)

COMPLAINT - 20

136.    Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

137.    ICCU's actions, including falsely reporting Plaintiff's credit status, continuing collection attempts after cease-and-desist notices, and refusing to release the title despite full payment, violate Idaho Code § 41-1302 by engaging in unfair claims settlement practices.

138.    ICCU's failure to engage in good-faith dispute resolution further violates Idaho Code § 41-1302(4) by failing to attempt prompt, fair, and equitable settlement of Plaintiff's claims.

139.    As a direct result, Plaintiff has suffered financial harm, reputational damage, and emotional distress, entitling Plaintiff to damages, including compensatory and punitive damages, in an amount to be determined by the court.

## COUNT XIV – VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT (15 U.S.C. § 1691)

140.    Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

141.    ICCU violated ECOA, 15 U.S.C. § 1691(a), by engaging in unfair and discriminatory credit practices, including falsely reporting Plaintiff's credit status and refusing to release the title to the 2023 Toyota Sequoia

142.    ICCU's actions were willful, as evidenced by their continued misconduct after Plaintiff's demands and cease-and-desist notices

143.    As a result, Plaintiff has suffered financial harm, reputational damage, and emotional distress, entitling Plaintiff to statutory damages of up to $10,000 per violation under 15 U.S.C. § 1691e(b), as well as actual damages to be assigned by the court.

COMPLAINT - 21

## COUNT XV – VIOLATION OF IDAHO CONSTITUTION

## (ARTICLE I, §§ 18, 21)

144.    Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

145.    ICCU's actions, including refusing to release the title to the 2023 Toyota Sequoia and continuing false credit reporting, violate Plaintiff's right to justice without delay under Article I, § 18 of the Idaho Constitution.

146.    ICCU's actions further violate Plaintiff's right to due process under Article I, § 21 by depriving Plaintiff of property—the use and title of the Sequoia—without fair procedure.

147.    As a result, Plaintiff has suffered financial harm, reputational damage, and emotional distress, entitling Plaintiff to damages, including compensatory and punitive damages, in an amount to be determined by the court.

148.    ICCU's actions also violate Plaintiff's right to property under Article I, § 13 of the Idaho Constitution by depriving Plaintiff and the Rikur Trust of the Sequoia title without due process, further justifying damages.

149.    ICCU's refusal to release the title to the 2023 Toyota Sequoia despite full payment violates Plaintiff's right to property under Article I, § 13 by depriving Plaintiff and the Trust of lawful possession without due process.

## COUNT XVI - INTENTIONAL INFLICTION OF

## EMOTIONAL DISTRESS

150.    Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

COMPLAINT - 22

151.    Defendants' conduct, including but not limited to their wrongful retention of the 2023 Toyota Sequoia title, continued collection attempts after cease-and-desist notices, false credit reporting, and refusal to engage in BBB dispute resolution, constitutes extreme and outrageous behavior under Idaho common law, as recognized in *Spence v. Howell*, 126 Idaho 763, 890 P.2d 714 (1995)

152.    Defendants acted intentionally or with reckless disregard for the likelihood of causing Plaintiff severe emotional distress, knowing Plaintiff's reliance on the Sequoia for personal use and the Rikur Trust's legal ownership.

153.    As a direct result, Plaintiff has suffered severe emotional distress, including anxiety, sleeplessness, and humiliation.

154.    Plaintiff is entitled to compensatory and punitive damages for Defendants' intentional infliction of emotional distress, in an amount to be determined at trial.

# COUNT XVII – CIVIL CONSPIRACY

155.    Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

156.    Defendants ICCU and Brian M. Berrett engaged in a civil conspiracy to wrongfully retain Plaintiff's payment, withhold the title to the 2023 Toyota Sequoia, and falsely report Plaintiff's credit status, with the intent to cause Plaintiff harm.

157.    Defendants acted in concert, with Berrett directing or ratifying ICCU's actions, as evidenced by his non-response to Plaintiff's demands and Fiduciary Appointment, constituting an agreement to commit unlawful acts under Idaho common law, as recognized in *McPheters v. Maile*, 138 Idaho 391, 64 P.3d 317 (2003).

COMPLAINT - 23

1  158.    As a direct result, Plaintiff has suffered financial loss, reputational damage, and

2         emotional distress, entitling Plaintiff to compensatory and punitive damages in an amount to

3         be determined at trial.

4                              **PRAYER FOR RELIEF**

5                     WHEREFORE, Plaintiff prays for the following relief:

6      A.  A declaratory judgment that ICCU is in breach of contract;

7      B.  A declaratory judgment that ICCU and Brian M. Berrett are in breach of fiduciary duties;

8      C.  Order ICCU to deliver the Manufacturer's Certificate of Origin (MCO) and lien-free title

9         for the 2023 Toyota Sequoia, VIN 7SVAAABA8PX011784 within 14 days;

10     D.  Order ICCU to correct all credit reports within 14 days and provide written proof of

11        corrections;

12     E.  An injunction preventing Defendants from any further negative credit reporting related to

13        Plaintiff;

14     F.  Statutory damages of $1,000 per FCRA violation, as provided by *15 U.S.C. § 1681n*;

15     G.  Compensatory damages of at least $75,000 for financial loss and emotional distress;

16     H.  Punitive damages of $500,000 for willful misconduct, where applicable under Idaho State

17        and Federal laws;

18     I.  Additional punitive damages of $100,000 for ICCU's bad faith conduct in failing to

       uphold their BBB Standards for Trust, exacerbating Plaintiff's harm.

       J.  Actual damages, restitution, costs, and such other relief as the Court deems just;

COMPLAINT - 24

K. Damages for ICCU's violation of the Federal Credit Union Act, including compensatory and punitive damages, in an amount to be assigned by the Court, but not less than $50,000.

L. Damages for ICCU's violation of the Idaho Unfair Claims Settlement Practices Act, including compensatory and punitive damages, in an amount to be assigned by the Court, but not less than $50,000.

M. Statutory damages of up to $10,000 per ECOA violation under 15 U.S.C. § 1691e(b), plus actual damages for ICCU's willful noncompliance.

N. Damages for ICCU's violation of Plaintiff's rights under Article I, §§ 18 and 21 of the Idaho Constitution, including compensatory and punitive damages, in an amount to be determined by the Court, but not less than $50,000.

O. Compensatory and punitive damages for Defendants' intentional infliction of emotional distress, in an amount to be proven at trial, but not less than $50,000.

P. Compensatory and punitive damages for Defendants' civil conspiracy, in an amount to be proven at trial, but not less than $75,000.

Q. Attorney's fees as permitted under Idaho Code § 48-608(5) for violations of the Idaho Consumer Protection Act, should Plaintiff retain counsel during the pendency of this action.

R. A trial by jury on all issues so triable, pursuant to FRCP 38(b).

S. Any other relief the Court deems just and proper.

COMPLAINT - 25

DATED: March 25, 2025

Respectfully submitted in honor and in equity,

By:

Jason-Henry:Allen – Beneficiary, Without Recourse,

Without Prejudice, All Rights Reserved

Plaintiff, Pro Se

COMPLAINT - 26

1

# EXHIBITS

2

A.  Rikur Private Irrevocable Trust Agreement (August 26, 2022)

3

B.  First Demand, Notice of Tender, Demand For Title, Fully Indorsed Payment Coupons,

4

Durable Power of Attorney, & Form 56 (December 1st 2024)

5

C. Second Demand (January 13th 2025)

6

D. Cease and Desist (March 5th 2025)

7

E. Executed Original Contract (October 18th 2024)

8

F. Indorsed Negotiable Instrument (October 18th 2024)

9

G. Fiduciary Appointment (February 27th 2025)

10

H. UCC 1 Finance Statement & Certificate of Title form ITD 3337 – Idaho DMV Letter

11

(November 3rd 2024)

12

I. Debt Validation Demand & Intent to Litigate (February 23rd 2025)

13

J. Personal Information, Intent, & Definitions

14

15

16

17

18

COMPLAINT - 27

**CERTIFICATE OF SERVICE**

I, Jason Henry Allen, hereby certify that on this ____ day of _____, 2025, I caused a true and correct copy of the foregoing Complaint to be served upon the following parties via _____:

**Idaho Central Credit Union**

4400 Central Way

Chubbuck, ID 83202

**Brian M. Berrett**

Chief Financial Officer, ICCU

200 North 4th Street

Boise, ID 83702

Dated this ____ day of _____, 2025.



**Jason Henry Allen**

Plaintiff, Pro Se

2600 East Seltice Way #235

Post Falls, ID 83854

COMPLAINT - 28

# EXHIBIT A

# DECLARATION OF TRUST

## Rikur Private Irrevocable Express Trust

**PUBLIC NOTICE INSTRUMENT**

This **Declaration of Trust**, executed on **August 26, 2022**, and amended as of **March 19, 2025**, establishes the **Rikur Private Irrevocable Express Trust** (hereinafter "Trust"), a private, irrevocable express trust formed under **Idaho Code § 68-104** within Kootenai County, Idaho Republic. This document is intended for public filing to provide notice of the Trust's existence, its Trustees, and its ownership of specific trust res, pursuant to the Grantor's and Trustees' contractual rights under **Idaho Code § 73-102** and **Article I, Section 10 of the U.S. Constitution**. All other Trust details remain confidential under **Idaho Code § 15-7-813(c)** (limited disclosure).

### Section I – Establishment and Purpose

1. **Creation:** The Trust was created on August 26, 2022, by **Jason-Henry: Allen,** Grantor, who irrevocably conveyed property to **Jason-Henry: Allen** and **Sayra-Alejandra: Allen**, Trustees, to hold and manage in joint tenancy under **Idaho Code § 55-104** for the benefit of designated Beneficiaries.

2. **Purpose:** The Trust secures and administers trust res, including real and personal property, in a fiduciary capacity per **Idaho Code § 15-7-801**, commencing immediately and not as a testamentary devise under **Idaho Code Title 15**.

3. **Irrevocability:** The Trust is irrevocable under **Idaho Code § 15-7-602**—the Grantor retains no power to alter, amend, or revoke it. Termination occurs only by distribution of trust res as determined by the Trustees.

### Section II – Trust Res and Property

1. **Initial Corpus:** The Trust was funded with **Ten Dollars ($10.00)** on August 26, 2022, as acknowledged by the Trustees.

2. **Specific Trust Res:** On **November 3, 2024,** the Grantor conveyed the **2023 Toyota Sequoia, VIN 7SVAAABA8PX011784,** to the Trust via executed transfer documents and a perfected **UCC-1 Financing Statement (Filing #20242055232, Idaho SOS),** recorded as trust res. Legal title is vested in the Trustees, free of the Grantor's

personal ownership, per **Idaho Code § 49-502** (title as ownership evidence) and **UCC § 3-306** (rights of holder unimpaired).

3. **Public Notice:** The Trust asserts ownership of the 2023 Toyota Sequoia against all claims, liens, or encumbrances, with prior obligations discharged under **UCC § 3-603(b)** (tender of payment) as of October 18, 2024.

## Section III – Trustees and Authority

1. **Trustees:** The initial Trustees are **Jason-Henry: Allen** and **Sayra-Alejandra: Allen**, jointly holding legal title and authority to manage the Trust res, per **Idaho Code § 68-108**. Successors may be appointed by unanimous Trustee vote under **Idaho Code § 15-7-704**.

2. **Powers:** The Trustees possess plenary authority to protect, defend, and administer Trust assets, including the 2023 Toyota Sequoia, against trespass, seizure, or invalid liens, per **Idaho Code § 15-3-703** (fiduciary powers akin to an executor) and **UCC § 9-310** (perfection of security interests).

3. **Liability:** Trustees are liable only for their own willful misconduct or gross negligence, not for Trust losses or co-Trustees' acts, per **Idaho Code § 15-7-1001**.

## Section IV – Administration and Privacy

1. **Principal Place:** The Trust's administration is located at **c/o 2600 E Seltice Way, Unit 235, Post Falls, Idaho 83854**.

2. **Duration:** The Trust endures for **96 years** from August 26, 2022, unless terminated earlier by unanimous Trustee resolution, per **Idaho Code § 15-7-601**.

3. **Privacy:** This Trust is a private entity, not a partnership or public entity under **Idaho Code § 53-2-102**. Creditors or claimants must look solely to the Trust res for satisfaction, per **Idaho Code § 15-7-1010**, and no public commerce is permitted.

## Section V – Execution and Acceptance

The Grantor and Trustees execute this Declaration to affirm the Trust's existence and ownership of the 2023 Toyota Sequoia (VIN 7SVAAABA8PX011784), undertaking fiduciary duties in good faith under Idaho law.

**Without Prejudice,**

By: /s/ Jason-Henry: Allen
Jason-Henry: Allen, Grantor and Trustee

By: /s/ Sayra-Alejandra: Allen
Sayra-Alejandra: Allen, Trustee

**Without Prejudice,**

By: _____

Jason-Henry: Allen, Grantor and Trustee

By: /s/ Sayra-Alejandra: Allen

Sayra-Alejandra: Allen, Trustee


## JURAT

### State of Idaho, County of Kootenai

On this **19th day of March, 2025**, before me, Notary Public, personally appeared Jason-Henry: Allen, known to me to be the persons whose names are subscribed hereto, and acknowledged execution of this Declaration of Trust for the purposes stated.


**Notary Signature:** _____

**Seal:**

```
JOEL KOSOFF
Notary Public - State of Idaho
Commission Number 20221855
My Commission Expires Apr 18, 2028
```

**Commission Expires:** 4/18/2028 _____

# EXHIBIT B

Jason-Henry:Allen Beneficiary
2600 East Seltice Way
#235
Post Falls, Idaho [83854]

Idaho Central Credit Union
Brian M. Barrett, CFO
4400 Central Way
Chubbuck, Idaho 83202

Idaho Central Credit Union
Brian M. Barrett, CFO
200 North 4th Street
Boise, Idaho 83702

Postage $        $2.31

Extra Services & Fees
☐ Registered Mail    $19.30
☐ Return Receipt (hardcopy) $    $4.10
☐ Return Receipt (electronic) $    $0.00
☐ Restricted Delivery $    $0.00

Extra Services & Fees (continued)
☐ Signature Confirmation $
☐ Signature Confirmation Restricted Delivery

Total Postage & Fees    $25.71

Customer Must Declare Full Value
$ \_\_\_\_ $100.00

Received by
12/03/2024

DEC 3 2024

HAYDEN, ID 835...

**FROM:** JASON HENRY ALLEN
2600 East Seltice Way #235
Post Falls ID 83854

**TO:** Brian M Barrett
IDAHO CENTRAL CREDIT UNION
4400 Central Way
Chubbuck IDAHO 83202

PS Form **3806, Registered Mail Receipt**    Copy 1 - Customer
April 2015, PSN 7530-02-000-9051    (See Information on Reverse)
For domestic delivery information, visit our website at *www.usps.com* ®

## NOTICE OF TENDER
## PRIVATE AND CONFIDENTIAL

### NOTICE TO AGENT IS NOTICE TO PRINCIPAL.
### NOTICE TO PRINCIPAL IS NOTICE TO AGENT.

December 1, 2024

Re: Toyota Sequoia 2023 VIN 7SVAAABA8PX011784
Idaho Central Credit Union: Account #745384317

To Brian M. Berrett CFO, Et Al

This is a LEGAL NOTICE and not a letter.

Purpose: Since we have not received the clear title as of yet as referenced by the executed contract which is a negotiable security instrument. As this might be foreign to you we wanted to provide exact instructions on how to correctly handle and process the transaction. Utilizing your medallion stamp might also be advised for monetization of said security.

Please reference the received Registered Security related to the above mentioned asset transaction. You have received a perfected, executed, and properly indorsed negotiable instrument (copy attached) to satisfy any outstanding balance with interest and fees on 2023 Toyota Sequoia VIN # 7SVAAABA8PX011784 transacted through your agent George Gee

Cadillac Kia dealer #0047. Also included in this mail package, Beneficiary has enclosed a durable power of attorney, a fiduciary nomination, and a copy of the Negotiable Instrument executed on October 18th 2024. Please also be advised that this instrument is a lawful specie of payment under the Uniform Commercial Code in section 3-104 which must be used to credit / off-set the balance of the above account. The Negotiable Instrument is to be forwarded to your organization's banking partner, who in turn is to securitize the Instrument, deposit the appropriate amount into Treasury Direct Account #: G-509-840-052 (TDA ABA Routing # 051736158), and file Form 56F documenting the trustee action.

If there is any attempt to not fulfill your fiduciary duties, please be aware there is discharge under the Uniform Commercial Code section 3-603(b).

We are fully willing to work together with you and your banking institution to complete this transaction but be aware that any response except full compliance to performance of your fiduciary duties will result in legal action to secure remedy. Please be advised that the payment for the 2023 Toyota Sequoia plus interest has already been made, you are only to complete the process to satisfy and correct the balance. If applicable please submit an affidavit under the penalty of perjury and full commercial liability as to why you or your organization is exempt from any of these duties or the legislation as outlined.

Upon completion of fiduciary duties please provide written confirmation the account balance is zero.

Please send clean and clear title for 2023 Toyota Sequoia VIN # 7SVAAABA8PX011784 to the above mentioned mailing address.

We trust that this is to your satisfaction and that no claims will be made against JASON HENRY ALLEN Principal.

Enclosed in the received Registered Mail Package is the following:

Copy of Executed Securitized Negotiable Instrument
Durable Power of Attorney
Indorsed Payoff Coupon X2
Form 56 X2


Please be aware that we only desire a peaceful and mutually beneficial ongoing relationship.

This notice is being served pursuant to the Fair Debt Collections Practice Act (F.D.C.P.A.) and the Truth in Lending Act as well as other legislation included on the Notice of Acceptance of Presentment.

This transaction is to be executed and completed per Uniform Commercial Code

Article 3: Sections 3101-3406 and UCC 3-501, 502, 603, 409, 410, 411.


Yours without dishonor, ill will, or frivolity. All rights reserved. Non-assumpsit.
Errors and Omissions Excepted


Without prejudice, by:




By Jason-Henry:Allen
Jason-Henry:Allen
Agent on Behalf of Principal



**Auto Loan Payoff Quote**

11/26/2024

JASON H ALLEN

2600 E SELTICE WAY #235

POST FALLS, ID 83854

Account #:   745384317

To Whom It May Concern:

Re:  JASON H ALLEN

2600 E SELTICE WAY

POST FALLS, ID 83854

Payoff on the above referenced loan is subject to change with advances or payments.

Payoff Amount: $ 85598.37
Per Diem: $  15.02
Quoted payoff valid through: 12/16/2024

Please mail payoff to:

Idaho Central Credit Union
PO Box 2469
Pocatello, ID 83206

Please include the loan number and any special instructions for the title release. This
payoff supersedes any previous payoff information quoted prior to the date of this letter.

Sincerely,

Cave Guevarra

ICCU Team Member

PAY TO THE ORDER OF:
IDAHO CENTRAL CREDIT UNION
BY: _____
Agent For: JASON ALLEN                    /Agent
By Accommodation / Principle

EIGHTY FIVE THOUSAND FIVE HUNDRED NINETY EIGHT DOLLARS 37/100

**Idaho Central** CREDIT UNION

**Auto Loan Payoff Quote**

11/26/2024

JASON H ALLEN

2600 E SELTICE WAY #235

POST FALLS, ID 83854

Account #:  745384317

To Whom It May Concern:

Re:  JASON H ALLEN

2600 E SELTICE WAY

POST FALLS, ID 83854

Payoff on the above referenced loan is subject to change with advances or payments.

Payoff Amount: $  85598.37
Per Diem: $   15.02
Quoted payoff valid through:  12/16/2024

Please mail payoff to:

Idaho Central Credit Union
PO Box 2469
Pocatello, ID 83206

Please include the loan number and any special instructions for the title release. This payoff supersedes any previous payoff information quoted prior to the date of this letter.

Sincerely,

Cave Guevarra

ICCU Team Member

PAY TO THE ORDER OF:
JASON HENRY ALLEN, *REPRESENTED*, *PERSON*
BY: *(signature)* /Agent
Agent For: JASON ALLEN *WITHOUT RECOURSE*
By Accommodation / Principle

EIGHTY FIVE THOUSAND FIVE HUNDRED NINETY EIGHT DOLLARS 37/100

Member Service Center
PO Box 2469
Pocatello, ID 83206
(208) 478-3300

 **Idaho Central**
CREDIT UNION

**Auto Loan Payoff Quote**

11/26/2024

JASON H ALLEN

2600 E SELTICE WAY #235

POST FALLS, ID 83854

Account #:  745384317

To Whom It May Concern:

Re:  JASON H ALLEN

2600 E SELTICE WAY

POST FALLS, ID 83854

Payoff on the above referenced loan is subject to change with advances or payments.

Payoff Amount: $ 85598.37
Per Diem: $  15.02
Quoted payoff valid through: 12/16/2024

Please mail payoff to:

Idaho Central Credit Union
PO Box 2469
Pocatello, ID 83206

Please include the loan number and any special instructions for the title release. This payoff supersedes any previous payoff information quoted prior to the date of this letter.

Sincerely,

Cave Guevarra

ICCU Team Member

**LAW** 553-ID-eps 6/23

### RETAIL INSTALLMENT SALE CONTRACT
### SIMPLE FINANCE CHARGE

DEAL # 56475

CUST # 71483

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| JASON HENRY ALLEN<br>2600 E SELTICE WAY<br>POST FALLS, ID 83854<br>COUNTY: KOOTENAI<br>Cell: 323-377-5620<br>Email: JASON.ALISTOR@GMAIL.COM | N/A<br><br><br><br>Cell: N/A<br>Email: N/A | GEORGE GEE CADILLAC KIA<br>317 W DALTON AVE<br>COEUR D'ALENE, ID 83815<br>208-667-7416 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased<br>Personal, family, or household unless<br>otherwise indicated below |
|---|---|---|---|---|
| USED | 2023 | TOYOTA<br>SEQUOIA | 7SVAAABA8PX011784 | ☐ business<br>☐ agricultural ____ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 0.00 is |
|---|---|---|---|---|
| 6.49 % | $ 18058.18 | $ 84700.94 | $ 102759.12 | $ 102759.12 |

**Your Payment Schedule Will Be:**                                (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 1427.21 | MONTHLY   beginning   12/02/2024 |
| N/A | $ N/A | N/A |

N/A

**Late Charge.** If payment is not received in full within ___10___ days after it is due, you will pay a late charge of $ __15.00__ or __5__ % of the part of the payment that is late, whichever is __greater__ .

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Returned Payment Charge:** You agree to pay a charge of $ __20.00__ If any check or any electronic payment you give us is dishonored.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
**Spanish Translation: Guía para compradores de vehículos usados.** La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is** $ _____ and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

104657*1*GGC-FI

10/18/2024   07:00 pm

Buyer Signs X _____   Co-Buyer Signs X _____ N/A _____

## ITEMIZATION OF AMOUNT FINANCED

1 Cash Price (Including $ __4493.94__ sales tax)    $ __79392.94__ (1)

2 Total Downpayment =

Trade-In _____ N/A _____
   (Year)    (Make)    (Model)

Gross Trade-In Allowance    $ __N/A__
Less Pay Off Made By Seller to __N/A__    $ __N/A__
Equals Net Trade In    $ __N/A__
+ Cash    $ __N/A__
+ Other __N/A__    $ __N/A__
+ Other __N/A__    $ __N/A__
+ Other __N/A__    $ __N/A__
(If total downpayment is negative, enter "0" and see 4J below)    $ __0.00__ (2)

3 Unpaid Balance of Cash Price (1 minus 2)    $ __79392.94__ (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf
(Seller may keep part of these amounts):

A Cost of Optional Credit Insurance Paid to Insurance Company or Companies.
   Life    $ __N/A__
   Disability    $ __N/A__    $ __N/A__
B Vendor's Single Interest Insurance Paid to Insurance Company    $ __N/A__
C Other Optional Insurance Paid to Insurance Company or Companies    $ __N/A__
D Optional Gap Contract    $ __895.00__
E Official Fees Paid to Government Agencies    $ __N/A__
F Government Taxes Not Included in Cash Price    $ __N/A__
G Government License and/or Registration Fees
   __N/A__
   __N/A__    $ __N/A__
H Government Certificate of Title Fees    $ __19.00__
I Optional Service Contract** Paid to
   PROSIDIUM VSC    $ __3995.00__
J Other Charges (Seller must identify who is paid and describe purpose)
   to ____ for Prior Credit or Lease Balance    $ __N/A__
   to GEORGE GEE CADILLAC KIA DOCUMENTATION FEE    $ __399.00__
   to N/A    for N/A    $ __N/A__
   to N/A    for N/A    $ __N/A__
   to N/A    for N/A    $ __N/A__
   to N/A    for N/A    $ __N/A__
   to N/A    for N/A    $ __N/A__
   to N/A    for N/A    $ __N/A__
   to N/A    for N/A    $ __N/A__
   to N/A    for N/A    $ __N/A__
   Total Other Charges and Amounts Paid to Others on Your Behalf    $ __5308.00__ (4)

5 Amount Financed (3 + 4)    $ __84700.94__ (5)

**Purchase of an optional Service Contract is not required either to purchase or to obtain financing for the Vehicle.

OPTION: ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before __N/A__ , Year __N/A__ , SELLER'S INITIALS __N/A__

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term ____72____ Mos.    PROSIDIUM GAP
                              Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _Bay Glynn Stmi Sll WITHOUT RECALSE_
PAY TO THE ORDER STRON HENRY ALLEN
12 UCC WA

Buyer Signs X _[signature]_    Co-Buyer Signs X __N/A__

104657*1*GGC-FI

---

Insurance. You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked on page 1.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:

### Optional Credit Insurance

☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability:  ☐ Buyer  ☐ Co-Buyer  ☐ Both

Premium:
Credit Life $ __N/A__
Credit Disability $ __N/A__
Insurance Company Name __N/A__
__N/A__
Home Office Address __N/A__
__N/A__

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance

| ☒ | VEH. SERV. CONT. | MOS. |
|---|---|---|
| | Type of Insurance | Term |

Premium $ __3995.00__
Insurance Company Name __N/A__
__N/A__
Home Office Address __N/A__
__N/A__

| ☐ | N/A | N/A |
|---|---|---|
| | Type of Insurance | Term |

Premium $ __N/A__
Insurance Company Name __N/A__
__N/A__
Home Office Address __N/A__
__N/A__

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _[signature]_    __10/18/2024__
Buyer Signature    Date

X __N/A__    __10/18/2024__
Co-Buyer Signature    Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS. WITHOUT SUCH INSURANCE YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

10/18/2024    06:58 pm
LAW 553-ID-eps 6/23 v1    Page 2 of 4

## 1. FINANCE CHARGE AND PAYMENTS

**a.  How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b.  How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.

**c.  How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d.  You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**e.  Your right to refinance a balloon payment.** A balloon payment is a scheduled payment that is more than twice as large as the average of your earlier scheduled payments. If you are buying the vehicle primarily for personal, family, or household use, you have the right to refinance the balloon payment when due without penalty. The terms of the refinancing will be no less favorable to you than the terms of this contract. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

## 2. YOUR OTHER PROMISES TO US

**a.  If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b.  Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c.  Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d.  Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract, or, at our option, the highest rate the law permits.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e.  What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a.  You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

**b.  You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all that you owe on this contract at once. Default means:
- You do not pay any payment on time; or
- You give false, incomplete, or misleading information during credit application, you start a proceeding in bankruptcy or one is started against you or your property, or you break any agreements in this contract, except that if you bought the vehicle primarily for personal, family, or household purposes, we will only treat these events as defaults if they significantly impair the prospect of payment, performance, or realization of the collateral.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c.  You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs, as the law allows. You will also pay any reasonable collection costs we incur to enforce our security interest, as the law allows.

**d.  We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

**e.  How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

i. We will sell the vehicle if you do not redeem. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. WARRANTIES SELLER DISCLAIMS**
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**5. SERVICING AND COLLECTION CONTACTS**
In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.
You agree that you will, within a reasonable time, notify us of any change in your contact information.

**6. APPLICABLE LAW**
Federal law and the law of the state of Idaho apply to this contract.

**7. NEGATIVE CREDIT REPORT NOTICE**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X _____   Co-Buyer Signs X _____ N/A

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See the rest of this contract for other important agreements.

**NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs X _____   Date 10/18/2024   Co-Buyer Signs X _____ N/A   Date _____ N/A
Buyer Printed Name JASON HENRY ALLEN   Co-Buyer Printed Name N/A
If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A   Title N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here   X N/A   Address N/A
Seller signs   GEORGE GEE CADILLAC KIA   Date 10/18/2024   By X _____   Title F&I MGR

Seller assigns its interest in this contract to POTLATCH #1 FINANCIAL CREDIT UNION   (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse    ☒ Assigned without recourse    ☐ Assigned with limited recourse

Seller GEORGE GEE CADILLAC KIA

By X _____   Title F&I MGR

LAW FORM NO. 553-ID-eps (REV. 6/23)
©2023 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
104657*1*GGC-FI
10/18/2024   06:58 pm
LAW 553-ID-eps 6/23 v1   Page 4 of 4

**Form 56**
(Rev. November 2022)
Department of the Treasury
Internal Revenue Service

# Notice Concerning Fiduciary Relationship
(Internal Revenue Code Sections 6036 and 6903)

Go to *www.irs.gov/Form56* for instructions and the latest information.

OMB No. 1545-0013

## Part I  Identification

| Name of person for whom you are acting (as shown on the tax return)  JASON HENRY ALLEN | Identifying number  617170683 | Decedent's social security no. |
|---|---|---|

Address of person for whom you are acting (number, street, and room or suite no.)
**2600 East Seltice Way # 235**

City or town, state, and ZIP code (If a foreign address, see instructions.)
**POST FALLS, IDAHO 83854**

Fiduciary's name
Brian M Barrett

Address of fiduciary (number, street, and room or suite no.)
**4400 CENTRAL WAY**

| City or town, state, and ZIP code  **CHUBBUCK, IDAHO 83202** | Telephone number (optional)  ( 208 )  241-7725 |
|---|---|

## Section A. Authority

**1** Authority for fiduciary relationship. Check applicable box:

**a** ☐ Court appointment of testate estate (valid will exists)

**b** ☐ Court appointment of intestate estate (no valid will exists)

**c** ☐ Court appointment as guardian or conservator

**d** ☐ Fiduciary of intestate estate

**e** ☐ Valid trust instrument and amendments

**f** ☐ Bankruptcy or assignment for the benefit of creditors

**g** ☑ Other. Describe: All transactions related to account number 745384317 and 2023 Toyota Sequoia VIN 7SVAAABA8PX011784

**2a** If box 1a, 1b, or 1d is checked, enter the date of death: _____

**b** If box 1c, 1e, 1f, or 1g is checked, enter the date of appointment, taking office, or assignment or transfer of assets: **October 18th 2024**

## Section B. Nature of Liability and Tax Notices

**3** Type of taxes (check all that apply): ☐ Income  ☐ Gift  ☐ Estate  ☐ Generation-skipping transfer  ☐ Employment  ☐ Excise  ☐ Other (describe): _____

**4** Federal tax form number (check all that apply): **a** ☐ 706 series  **b** ☐ 709  **c** ☐ 940  **d** ☐ 941, 943, 944  **e** ☐ 1040 or 1040-SR  **f** ☐ 1041  **g** ☐ 1120  **h** ☐ Other (list): _____

**5** If your authority as a fiduciary does not cover all years or tax periods, check here . . . . . . . . . . ☐  and list the specific years or periods within your authority: _____

For Paperwork Reduction Act and Privacy Act Notice, see separate instructions.    Cat. No. 16375I    Form **56** (Rev. 11-2022)

Form 56 (Rev. 11-2022)                                                                                            Page **2**

| **Part II** | **Revocation or Termination of Notice** |
|---|---|

### Section A—Total Revocation or Termination

**6** Check this box if you are revoking or terminating all prior notices concerning fiduciary relationships on file with the Internal Revenue Service for the same tax matters and years or periods covered by this notice concerning fiduciary relationship  . . ☐

Reason for termination of fiduciary relationship. Check applicable box:

**a** ☐ Court order revoking fiduciary authority

**b** ☐ Certificate of dissolution or termination of a business entity

**c** ☐ Other. Describe: ----------------------------------------------------------------------------------------------------
--------------------------------------------------------------------------------------------------------------------------

### Section B—Partial Revocation

**7a** Check this box if you are revoking earlier notices concerning fiduciary relationships on file with the Internal Revenue Service for the same tax matters and years or periods covered by this notice concerning fiduciary relationship  . . . . . . . ☐

**b** Specify to whom granted, date, and address, including ZIP code.
--------------------------------------------------------------------------------------------------------------------------
--------------------------------------------------------------------------------------------------------------------------

### Section C—Substitute Fiduciary

**8** Check this box if a new fiduciary or fiduciaries have been or will be substituted for the revoking or terminating fiduciary and specify the name(s) and address(es), including ZIP code(s), of the new fiduciary(ies)  . . . . . . . . . . ☐
--------------------------------------------------------------------------------------------------------------------------
--------------------------------------------------------------------------------------------------------------------------

| **Part III** | **Court and Administrative Proceedings** |
|---|---|

| Name of court (if other than a court proceeding, identify the type of proceeding and name of agency) | Date proceeding initiated |
|---|---|
| Address of court | Docket number of proceeding |

| City or town, state, and ZIP code | Date | Time | ☐ a.m. ☐ p.m. | Place of other proceedings |
|---|---|---|---|---|

| **Part IV** | **Signature** |
|---|---|

**Please Sign Here**

Under penalties of perjury, I declare that I have examined this document, including any accompanying statements, and to the best of my knowledge and belief, it is true, correct, and complete.

**Agent for the Principal, Beneficiary**

| Fiduciary's signature | Title, if applicable | Date |
|---|---|---|

Form **56** (Rev. 11-2022)

## AFFIDAVIT OF TRUTH

### IN THE NATURE OF SUPPLEMENTAL RULES FOR ADMINISTRATIVE AND MARITIME CLAIMS RULES C(6)

Grant of exclusive power of attorney to conduct all
tax, business, and legal affairs of principal person.

# POWER OF ATTORNEY IN FACT

JASON H. ALLEN, JASON HENRY ALLEN, ALLEN, JASON H, or any derivative name thereof, **DEBTOR / principal person / *ens legis* Trust / corporate fiction**, located at 2600 East Seltice Way, Post Falls, Idaho [83854], does hereby appoint Jason-Henry: Allen (also stylized as "First-Middle: Last"), **a Living Soul / Secured Party / Creditor**, as **Agent** with **Power of Attorney in Fact**, located at 47.722820 latitude -116.944980 longitude (non-domestic), to take exclusive charge of, to manage, and to conduct all of the tax, business, and legal affairs and to act in the name and place of the DEBTOR without limitation on the powers necessary to carry out this exclusive purpose of Attorney in Fact as authorized herein:

**(a)** to take possession of, to hold, and to manage real estate and all other property;
**(b)** to receive money or property paid or delivered to the DEBTOR from any source;
**(c)** to deposit funds in, to make withdrawals from, or to sign checks or drafts against any account standing in the name of the DEBTOR individually or jointly in any bank or other depository; to cash coupons, bonds, or certificates of deposits; to endorse checks, notes, or other documents in said legal name; to have access to and to place items in or remove them from any safety deposit box standing in the DEBTOR's name individually or jointly, and to conduct any other bank transactions or business;
**(d)** to pay the just debts and expenses of the DEBTOR, including reasonable expenses incurred by the Attorney in Fact in exercising this exclusive power of attorney;
**(e)** to retain any investments and to invest in stocks, bonds, securities, or real estate or other property;
**(f)** to give general and special proxies or to exercise rights of conversion or rights with respect to shares or securities; to deposit shares or securities with or to transfer them to protective committees or similar bodies; to join any reorganization and pay assessments or subscriptions called for in connection with shares or securities;
**(g)** to sell, to exchange, to lease, to give options, and to make contracts concerning real estate or other property for such considerations and on such terms as the Attorney in Fact may consider prudent;
**(h)** to settle boundary lines, easements, and other rights with respect to real estate;
**(i)** to improve or to develop real estate; to construct, to alter, or to repair building structures and appurtenances or real estate; to settle boundary lines, easements, and other rights with respect to real estate; to plant, to cultivate, to harvest, and to sell or otherwise dispose of crops and timber and to do all things necessary or appropriate for good husbandry;
**(j)** to provide for the use, maintenance, repair, security, or storage of tangible property in the DEBTOR's legal name above; and
**(k)** to purchase and maintain such policies of insurance against liability, fire, casualty, or other risks as the Attorney in Fact may consider prudent.

The **Agent / Living Soul / Secured Party / Creditor**, Jason-Henry: Allen, is hereby authorized by law to act for and in control of the **DEBTOR**, JASON HENRY ALLEN (or any derivative name thereof). In addition, through the exclusive power of attorney, the undersigned Attorney in Fact is authorized to contract for all business and legal affairs of the **principal person**, JASON HENRY ALLEN.

The term "exclusive" shall be construed to mean that only the Attorney in Fact may obligate the principal person to these matters while these powers are in force, and the capacity to obligate the DEBTOR with regard to the same is hereby revoked and forfeited by any other party. The grant of this exclusive power is irrevocable during the lifetime of the **Attorney in Fact** until further notice from the undersigned.

Executed and sealed by the voluntary act of my own hand on this ___2___ day of December, 2024.

As this is executed without the UNITED STATES, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
Without prejudice, U.C.C. § 1-308.

I, the undersigned, exclusive Attorney in Fact, do hereby accept the fiduciary interest of the DEBTOR named herein and will execute the herein-granted powers with due diligence.

By: _____

**Jason-Henry: Allen, Agent,
Attorney in Fact with the Autograph**

**Witnesses**

_____          _____
Witness Signature # 1                        Printed Name

_____          _____
Witness Signature # 2                        Printed Name

**NOTICE**

Using a notary on this document does not constitute any adhesion, nor does it alter my status in any manner. The purpose for notarization is verification and identification only and not for entrance into any foreign jurisdiction.

### JURAT

Kootenai County                )
                               )   ss:
Idaho State                    )

Before me, the undersigned, _Kimberly Cummings_____, a Notary Public in and for said county and state, personally appeared Jason-Henry: Allen, known to me to be fully competent and of legal age to state the aforementioned, and has acknowledged that he/she has executed the same. Subscribed and affirmed before me this __2__ day of December, 2024.


_Kimberly Cummings_____
Notary Signature

Notary Seal:

KIMBERLY CUMMINGS
Notary Public - State of Idaho
Commission Number 47508
My Commission Expires Jun 30, 2030


My Commission Expires: _June 30, 2030_

**ALERT: EFFECTIVE NOVEMBER 29, 2024, INTERNATIONAL MAIL SERVICE TO CANADA IS TEM...**

# USPS Tracking®

FAQs >

Remove ✕

Tracking Number:

# RF816840985US

Copy      Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to an individual at the address at 9:32 am on December 10, 2024 in POCATELLO, ID 83202.

## Delivered

**Delivered, Left with Individual**
POCATELLO, ID 83202
December 10, 2024, 9:32 am

See All Tracking History

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

Feedback

Text & Email Updates     ⌄

Product Information     ⌄

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

# EXHIBIT C

**Via Registered and Regular Mail**

Jason-Henry:Allen Beneficiary
2600 East Seltice Way
#235
Post Falls, Idaho [83854]

Idaho Central Credit Union
Tommy Butler
200 North 4th Street
Boise, Idaho 83702

Kimball D. Gourley
225 North 9th Street
Suite 820
Boise, ID 83701

Date January 13th 2025

Re:    *Idaho Central Credit Union*
       *Demand on Loan - Account No. 745384317*
       *2023 Toyota Sequoia*

Dear Mr Gourley,

We are writing in response to your letter dated December 20th 2024 and received on January 13th 2025 regarding the alleged default on a Retail Installment Sale Contract with Idaho Central Credit Union ("ICCU"). We strongly dispute the allegations made in your letter and assert that the debt has been paid in full and furthermore your client is engaged in illegal and unlawful acts.

As evidence, we have attached receipts confirming the payment of the debt in its entirety. Despite this, ICCU's continued demands for payment constitute fraud, violation of state, violation of federal laws, and blatant breach of contract.

Be advised that ICCU and its agents are believed to have purloined with the security(s) provided relating to 2023 Toyota Sequoia and account number 745384317. If this matter is not resolved immediately we will be required to report these actions pursuant to the Securities Exchange Act of 1934 and 15 U.S.C. 78(d)

Be advised that Mr. Brian M. Barrett has not fulfilled his fiduciary duties as outlined in the attached documents received by Mr. Barrett's wet ink signature on December 10th 2024. Failure to complete these duties are a direct violation of 12 USC 504 and Mr. Barrett is liable for significant fines.

Your letter's attempt to intimidate into paying an obligation that has already been settled in full is unacceptable. We request that ICCU immediately update its records to reflect the paid-in-full status of the account and cease all further collection activities. This includes forwarding the free and clear title to the above mailing location.

Be aware that proof of validity of the alleged debt has already been submitted in writing.

Furthermore, we take issue with the threat of attorney's fees and costs. As the debt obligation has been paid, ICCU has no legal basis for pursuing such fees.

If ICCU and its agents simply do not have the knowledge or experience with how to perform their duties then they need to simply state as much and we are more than happy to assist where we can.

We demand a written confirmation within 14 days from the date of this letter, acknowledging the payment of the debt in full and confirming that all collection activities have been terminated.

Please be advised that we will seek legal action, including damages, if ICCU continues to commit fraud and not perform on the contract related to Account No. 745384317.

Sincerely,

/s/Jason-Henry:Allen

cc: Idaho Central Credit Union
Attachments: Receipts confirming payment of debt in full

ALERT: WINTER STORMS IN THE MIDWEST THROUGH THE NORTHEAST U.S. MAY DELAY FIN...

# USPS Tracking®

FAQs >

Remove ✕

Tracking Number:

## RF816840968US

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)



### Latest Update

Your item was delivered to an individual at the address at 1:00 pm on January 23, 2025 in BOISE, ID 83702.

### Delivered
**Delivered, Left with Individual**

BOISE, ID 83702
January 23, 2025, 1:00 pm

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

---

### Text & Email Updates                                        ⌄

---

### Product Information                                         ⌄

---

See Less ⌃

---

Track Another Package

Enter tracking or barcode numbers

# EXHIBIT D

JASON HENRY ALLEN

2600 East Seltice Way #235

Post Falls, ID 83854

February 25, 2025

VIA REGISTERED MAIL

Idaho Central Credit Union

Attn: Brian M. Berrett, Chief Financial Officer

4400 Central Way

Chubbuck, ID 83202

Re: CEASE AND DESIST – ALL ILLEGAL AND UNLAWFUL COLLECTION PRACTICES AND CREDIT REPORTING

To Idaho Central Credit Union and Brian M. Berrett, for Your Unlawful Conduct,

This is your final notice—cease and desist ALL your unlawful actions immediately. ICCU have crossed every line with your criminal handling of every aspect related to the legally binding contract, contracted with you on October 18, 2024. I fully performed on the contract you accepted, yet you've pulled this:

1. Refusing to release a clean title—deliberately withholding my property.

2. Harassing me with illegal collection attempts, ignoring state, local, and federal law.

3. Smearing my credit with false reports to Experian, Equifax, and TransUnion, wrecking my reputation with your lies.

4. Violation of Idaho Consumer Protection Act (ICPA, Idaho Code § 48-603) for unfair/deceptive practices.

You signature received validation demand— (Registered Mail #RF123456789US), Offers to resolve this peacefully and honorably - December 1, 2024 (#RF816840985US), and again on January 13, 2025 (#RF816840968US)—-and you've ignored every word. Under the Fair Debt Collection Practices Act (15 U.S.C. §§ 1692c(c), 1692e, 1692f), you are legally obligated to cease all collection activities and refrain from false or misleading representations and unfair practices, such as your unlawful collection attempts and credit reporting. Your fraudulent and unlawful credit reporting violates the Fair Credit Reporting Act (15 U.S.C. § 1681s-2(b)).

**You are hereby ordered**:

1. Immediately stop every collection attempt— telephone calls, written correspondence, electronic communications, and sending your agents to steal my property, all of it.

2. Remove and correct all derogatory entries related to this transaction from my credit reports with Experian, Equifax, and TransUnion, and notify said bureaus in writing of the correction.

3. Provide written proof of compliance within 7 days of postmark of this demand.

This letter doesn't soften a single claim against ICCU or you, Brian, for your fraud, title theft, and credit sabotage. We intend to expose your criminal conduct, seek statutory damages, actual losses (financial and reputational)

Your silence, criminal behavior, and conduct has prevented an honorable and equitable remedying this situation.  Failure to comply within 7 days will be treated as an admission of willful violation, triggering immediate legal action without further notice.

Sincerely,

/s/ JASON HENRY ALLEN

JASON HENRY ALLEN, WITHOUT PREJUDICE UCC 1-308

# EXHIBIT E

# ⌶LAW 553-ID-eps 6/23

## RETAIL INSTALLMENT SALE CONTRACT
### SIMPLE FINANCE CHARGE

DEAL # 56475

CUST # 71483

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| JASON HENRY ALLEN<br>2600 E SELTICE WAY<br>POST FALLS, ID 83854<br>COUNTY: KOOTENAI<br>Cell: 323-377-5620<br>Email: JASON.ALISTON@GMAIL.COM | N/A<br><br>Cell: N/A<br>Email: N/A | GEORGE GEE CADILLAC KIA<br>317 W DALTON AVE<br>COEUR D'ALENE, ID 83815<br><br>208-667-7416 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2023 | TOYOTA<br>SEQUOIA | 7SVAAABA8PX011784 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural    ☐ ___N/A___ |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 0.00 is |
|---|---|---|---|---|
| 6.49 % | $ 18058.18 | $ 84700.94 | $ 102759.12 | $ 102759.12 |

(e) means an estimate

#### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 1427.21 | MONTHLY    beginning    12/02/2024 |
| N/A | $ N/A | N/A |
| | N/A | |

Late Charge. If payment is not received in full within ___10___ days after it is due, you will pay a late charge of $ ___15.00___ or ___5___ % of the part of the payment that is late, whichever is ___greater___.

Prepayment. If you pay early, you will not have to pay a penalty.

Security Interest. You are giving a security interest in the vehicle being purchased.

Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

Returned Payment Charge: You agree to pay a charge of $ ___20.00___ if any check or any electronic payment you give us is dishonored.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL THE CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ _____ and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

104657*1'GGC-FI

10/18/2024   07:00 pm

Buyer Signs X _(signature)_   Co-Buyer Signs X ___N/A___

JASON HENRY ALLEN

LAW 553-ID-eps 6/23 v1   Page 1 of 4

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (incl. $ _____4493.94_____ sales tax)                                    $ _____78392.04_____ (1)

2. Total Downpayment =

Trade in _____ N/A _____
            (Year)        (Make)              (Model)

Gross Trade In Allowance                                           $ _____N/A_____
Less Pay Off Made By Seller to __N/A__                              $ _____N/A_____
Equals Net Trade In                                                $ _____N/A_____
• Cash                                                             $ _____N/A_____
• Other   N/A                                                      $ _____N/A_____
• Other   N/A                                                      $ _____N/A_____
(If Total downpayment is negative, enter "0" and see 4J below)     $ _____0.00_____ (2)

3. Unpaid Balance of Cash Price (1 minus 2)                        $ _____78392.04_____ (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts)

A. Cost of Optional Credit Insurance Paid to Insurance Company or Companies
   Life                                              $ _____N/A_____
   Disability                                        $ _____N/A_____              $ _____N/A_____
B. Vendor's Single Interest Insurance Paid to Insurance Company    $ _____N/A_____
C. Other Optional Insurance Paid to Insurance Company or Companies $ _____N/A_____
D. Optional Gap Contract                                          $ _____895.00_____
E. Official Fees Paid to Government Agencies                       $ _____N/A_____
F. Government Taxes Not Included in Cash Price                     $ _____N/A_____
G. Government License and/or Registration Fees
   N/A                                                            $ _____N/A_____
H. Government Certificate of Title Fees                            $ _____19.00_____
I. Optional Service Contract** Paid to
   PROSIDIUM VSC                                                   $ _____3995.00_____
J. Other Charges (Seller must identify who is paid and describe purpose)
   to _____ for Prior Credit or Lease Balance           $ _____N/A_____
   to GEORGE GEE CADILLAC KIA DOCUMENTATION FEE                    $ _____399.00_____
   to N/A                for N/A                                   $ _____N/A_____
   to N/A                for N/A                                   $ _____N/A_____
   to N/A                for N/A                                   $ _____N/A_____
   to N/A                for N/A                                   $ _____N/A_____
   to N/A                for N/A                                   $ _____N/A_____
   to N/A                for N/A                                   $ _____N/A_____
   to N/A                for N/A                                   $ _____N/A_____
   to N/A                for N/A                                   $ _____N/A_____
   Total Other Charges and Amounts Paid to Others on Your Behalf   $ _____5308.00_____ (4)

5. Amount Financed (3 + 4)                                         $ _____84700.94_____ (5)

**Purchase of an optional Service Contract is not required other to purchase or to obtain financing for the Vehicle

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before
_____ N/A _____ Year __N/A__ , SELLER'S INITIALS _____

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term   72   Mos.          PROSIDIUM GAP
                          Name of Gap Contract
Want to buy a gap contract.

Buyer Signs X _By: Gene Shin Allen_ WITHOUT RECOURSE

PAY TO THE ORDER SHON HENRY ALLEN

12 UCC 1114

104657*1*GGC-FI

Buyer Signs X _____   Co-Buyer Signs X _____N/A_____

---

Insurance. You may buy the physical damage insurance this contract requires from anyone you choose, who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked on page 1.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

### Optional Credit Insurance

☐ Credit Life      ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability  ☐ Buyer  ☐ Co-Buyer  ☐ Both
Premium

Credit Life $ _____N/A_____
Credit Disability $ _____N/A_____
Insurance Company Name _____N/A_____
                        _____N/A_____
Home Office Address _____N/A_____
                    _____N/A_____

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance

☒ VEH. SERV. CONT. _____ MOS.
   Type of Insurance              Term

Premium $ _____3995.00_____
Insurance Company Name _____N/A_____
                        _____N/A_____
Home Office Address _____N/A_____
                    _____N/A_____

☐ _____N/A_____ _____ _____N/A_____
   Type of Insurance              Term

Premium $ _____N/A_____
Insurance Company Name _____N/A_____
                        _____N/A_____
Home Office Address _____N/A_____
                    _____N/A_____

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _Sig_ _____   10/18/2024
   Buyer Signature                  Date

X _____   10/18/2024
   Co-Buyer Signature                Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS. WITHOUT SUCH INSURANCE YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

## OTHER IMPORTANT AGREEMENTS

### 1. FINANCE CHARGE AND PAYMENTS

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

e. **Your right to refinance a balloon payment.** A balloon payment is a scheduled payment that is more than twice as large as the average of your earlier scheduled payments. If you are buying the vehicle primarily for personal, family, or household use, you have the right to refinance the balloon payment when due without penalty. The terms of the refinancing will be no less favorable to you than the terms of this contract. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

### 2. YOUR OTHER PROMISES TO US

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

d. **Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract, or, at our option, the highest rate the law permits.
If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

### 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all that you owe on this contract at once. Default means:
- You do not pay any payment on time; or
- You give false, incomplete, or misleading information during credit application, you start a proceeding in bankruptcy or one is started against you or your property, or you break any agreements in this contract, except that if you bought the vehicle primarily for personal, family, or household purposes, we will only treat these events as defaults if they significantly impair the prospect of payment, performance, or realization of the collateral.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs, as the law allows. You will also pay any reasonable collection costs we incur to enforce our security interest, as the law allows.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

10/18/2024   06:58 pm

Buyer Signs X _____   Co-Buyer Signs X __N/A__

We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. **SERVICING AND COLLECTION CONTACTS**
In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.
You agree that you will, within a reasonable time, notify us of any change in your contact information.

6. **APPLICABLE LAW**
Federal law and the law of the state of Idaho apply to this contract.

7. **NEGATIVE CREDIT REPORT NOTICE**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.    Buyer Signs X _____    Co-Buyer Signs X _____ N/A

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See the rest of this contract for other important agreements.

**NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.**

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _____ Date 10/18/2024    Co-Buyer Signs X _____ N/A _____ Date _____ N/A
Buyer Printed Name JASON HENRY ALLEN    Co-Buyer Printed Name N/A
If the "business" use box is checked in "Primary Use for Which Purchased", Print Name N/A _____    Title N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X N/A _____    Address N/A
Seller signs GEORGE GEE CADILLAC KIA _____ Date 10/18/2024  By X _____    Title F&I MGR

Seller assigns its interest in this contract to POTLATCH #1 FINANCIAL CREDIT UNION    (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse    ☒ Assigned without recourse    ☐ Assigned with limited recourse
Seller GEORGE GEE CADILLAC KIA
By X _____    Title F&I MGR

---

# EXHIBIT F

# ⊿LAW 553-ID-eps 6/23

## RETAIL INSTALLMENT SALE CONTRACT
### SIMPLE FINANCE CHARGE

DEAL # 56475
CUST # 71483

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| JASON HENRY ALLEN<br>2000 E SELTICE WAY<br>POST FALLS, ID 83854<br>COUNTY: KOOTENAI<br>Cell: 323-377-5620<br>Email: JASON.ALISTORG.GMAIL.COM | N/A<br><br>Cell: N/A<br>Email: N/A | GEORGE GEE CADILLAC KIA<br>317 W DALTON AVE<br>COEUR D'ALENE, ID 83815<br>208-067-7410 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2023 | TOYOTA<br>SEQUOIA | 7SVAAABA8PX011784 | Personal, family, or household unless otherwise indicated below<br>☐ business ☐ N/A<br>☐ agricultural |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of<br>$ 0.00 |
|---|---|---|---|---|
| 6.49 % | $ 18058.18 | $ 84700.94 | $ 102759.12 | $ 102759.12 |

(e) means an estimate

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 1427.21 | MONTHLY beginning 12/02/2024 |
| N/A | $ N/A | N/A |

N/A

Late Charge. If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ __15.00__ or __5__ % of the part of the payment that is late, whichever is __greater__.

Prepayment. If you pay early, you will not have to pay a penalty.

Security Interest. You are giving a security interest in the vehicle being purchased.

Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

Returned Payment Charge: You agree to pay a charge of $ __20.00__ if any check or any electronic payment you give us is dishonored.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI Insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ _____ and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

104657*1*GGC-FI

10/18/2024  07:00 pm

Buyer Signs X _____  Co-Buyer Signs X _____N/A_____

*LAW 553-ID-eps 6/23 v1*  Page 1 of 4

ITEMIZATION OF AMOUNT FINANCED

1. [illegible] $ 9993.04 [illegible]                                    $    70302.04   (1)

2. Total [illegible]

   Trade-in _____ N/A _____
            (Make)      (Model)      (Year)

   G [illegible] Trade-in Allowance                              $    N/A
   L[illegible] Pay Off [illegible] By Seller to: N/A            $    N/A
   [illegible] Not Trade-in                                      $    N/A
   - [illegible]                                                 $    N/A
   - Other N/A                                                   $    N/A
   - Other N/A                                                   $    N/A
   - Other N/A                                                   $    N/A
   [illegible] Total down [illegible] is negative, enter "0" and see 4J below)   $    0.00   (2)

3. Unpaid Balance of Cash Price (1 minus 2)                      $    70302.04   (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf
   Seller may keep part of these amounts)
   A. Credit [illegible] Credit Insurance Paid to Insurance Company or Companies
      Life _____ N/A                                  $    N/A
      Disability _____ N/A                            $    N/A
   B. [illegible] Single Interest Insurance Paid to Insurance Company   $    N/A
   C. Other Optional Insurance Paid to Insurance Company or Companies   $    N/A
   D. Optional Gap Contract                                     $    895.00
   E. Official Fees Paid to Government Agencies                 $    N/A
   F. Government Taxes Not Included in Cash Price               $    N/A
   G. Government License and/or Registration Fees
      N/A
      N/A                                                       $    N/A
   H. Government Certificate of Title Fees                      $    19.00
   I. Optional Service Contract[1] Paid to
      PROSIDIUM VSC                                             $    3995.00
   J. Other Charges (Seller must identify who is paid and describe purpose)
      to _____ for Prior Credit or Lease Balance              $    N/A
      to GEORGE GEE CADILLAC KIA DOCUMENTATION FEE             $    399.00
      to N/A          for N/A                                   $    N/A
      to N/A          for N/A                                   $    N/A
      to N/A          for N/A                                   $    N/A
      to N/A          for N/A                                   $    N/A
      to N/A          for N/A                                   $    N/A
      to N/A          for N/A                                   $    N/A
      to N/A          for N/A                                   $    N/A
      to N/A          for N/A                                   $    N/A
      Total Other Charges and Amounts Paid to Others on Your Behalf   $    5308.00   (4)

5. Amount Financed (3 + 4)                                      $    84700.94   (5)

[1]Purchase of an optional Service Contract is not required either to purchase or to obtain financing for the Vehicle

---

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before
        N/A Year, N/A . SELLER'S INITIALS _____ N/A

---

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you agree or below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term _____ 72 _____ Mos.   PROSIDIUM GAP
                                Name of Gap Contract

[handwritten] PAY TO THE ORDER JASON HENRY ALLEN
12 UCC 1-201

Buyer Signs X [signature]          Co-Buyer Signs X _____ N/A

---

Insurance. You [illegible]...
[illegible]...
[illegible]...

Check the Insurance you want and sign below:

## Optional Credit Insurance

☐ Credit Life   ☐ Buyer   ☐ Co-Buyer   ☐ Both
☐ Credit Disability   ☐ Buyer   ☐ Co-Buyer   ☐ Both

Premium

   Credit Life $ _____ N/A
   Credit Disability $ _____ N/A
   Insurance Company Name _____ N/A
   Home Office Address _____ N/A
                       _____ N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original amount financed. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

## Other Optional Insurance

IX   VEH. SERV. CONT.                    MOS.
     Type of Insurance                   Term

   Premium $ 3995.00
   Insurance Company Name _____ N/A
   _____ N/A
   Home Office Address _____ N/A

☐ _____ N/A          N/A
     Type of Insurance          Term
   Premium $ _____ N/A
   Insurance Company Name _____ N/A
   Home Office Address _____ N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above

X [signature]                          10/18/2024
Buyer Signature                        Date

X _____                      10/18/2024
Co-Buyer Signature                     Date

THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS. WITHOUT SUCH INSURANCE YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.

104657-1-GGC-FI

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**

   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.

   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

   e. **Your right to refinance a balloon payment.** A balloon payment is a scheduled payment that is more than twice as large as the average of your earlier scheduled payments. If you are buying the vehicle primarily for personal, family, or household use, you have the right to refinance the balloon payment when due without penalty. The terms of the refinancing will be no less favorable to you than the terms of this contract. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

2. **YOUR OTHER PROMISES TO US**

   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods put on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

   d. **Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract, or, at our option, the highest rate the law permits.

   If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

   If you pay late, we may also take the steps described below.

   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all that you owe on this contract at once. Default means:
   - You do not pay any payment on time; or
   - You give false, incomplete, or misleading information during credit application, you start a proceeding in bankruptcy or one is started against you or your property, or you break any agreements in this contract, except that if you bought the vehicle primarily for personal, family, or household purposes, we will only treat these events as defaults if they significantly impair the prospect of payment, performance, or realization of the collateral.

   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

   c. **You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs, as the law allows. You will also pay any reasonable collection costs we incur to enforce our security interest, as the law allows.

   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

104657*1'GGC-FI

10/18/2024  06:50 pm

*LAW 553-ID-eps 6/23 v1    Page 3 of 4*

Buyer Signs X [signature] *WITHOUT RECOURSE*    Co-Buyer Signs X  N/A

We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. **SERVICING AND COLLECTION CONTACTS**
In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.
You agree that you will, within a reasonable time, notify us of any change in your contact information.

6. **APPLICABLE LAW**
Federal law and the law of the state of Idaho apply to this contract.

7. **NEGATIVE CREDIT REPORT NOTICE**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.    Buyer Signs X _____    Co-Buyer Signs X _____ N/A _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See the rest of this contract for other important agreements.

**NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs X _____ Date 10/10/2024    Co-Buyer Signs X ___ N/A _____ Date ___ N/A ___
Buyer Printed Name JASON HENRY ALLEN    Co-Buyer Printed Name N/A
If the "bus. rest" box is checked in "Primary Use for Which Purchased", Print Name N/A    Title N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other owner signs here X N/A _____ Address N/A    Title F&I MGR
Seller signs GEORGE GEE CADILLAC KIA _____ Date 10/10/2024 By X _____

Seller assigns its interest in this contract to POTLATCH #1 FINANCIAL CREDIT UNION    (Assignee) under the terms of Seller's agreement(s) with Assignee
☐ Assigned with recourse    ☒ Assigned without recourse    ☐ Assigned with limited recourse
Seller GEORGE GEE CADILLAC KIA
By X _____    Title F&I MGR

LAW FORM NO. 553-ID-eps    LAW 553-ID-eps 6-23 v1    Page 4 of 4

# EXHIBIT G

Fiduciary Appointment & Authorization, Registered Mail          ----- pg. 1 of 6

RF 816 841 977 US

October 19, 2024

C.F.O. BRIAN M. BERRETT, C.F.O. for

IDAHO CENTRAL CREDIT UNION
4400 Central Way
Chubbuck, ID 83202

**Respondent / Fiduciary Trustee**

Jason-Henry:Allen
for  JASON HENRY ALLEN, Estate
c/o 2600 East Seltice Way
#235
Post Falls, Idaho Republic
non-domestic and without the United States
**Principal / Beneficiary**

RE: ____JASON HENRY ALLEN____, Account No. 745384317

# FIDUCIARY APPOINTMENT AND AUTHORIZATION

## POWER OF AUTHORITY

I, Jason-Henry: Allen, hereinafter "Principal", being duly sworn, depose and say that I have the authority and broad general power of attorney in fact to grant, to convey, to assign, to pledge, and to authorize all the authorities, sureties, assets, duties, contracts, and instruments contained herein and enclosed herewith and hereby execute this Fiduciary Appointment & Authorization, hereinafter "Contract", on this ___19____ day of October, 2024.

## APPOINTMENT

The below-signed Principal hereby appoints C.F.O. BRIAN M. BERRETT, hereinafter "Fiduciary", to faithfully execute the setoff, settlement, and closure of the above-referenced account with the name of JASON HENRY ALLEN, Account No. 745384137, hereinafter "Account", held by IDAHO CENTRAL CREDIT UNION, hereinafter "Financial Institution", and to faithfully execute all the duties set forth herein with the authorities granted herein.

## AUTHORITIES

The Principal hereby grants the Fiduciary the following authorities:

(1) The Fiduciary is hereby authorized to delegate or sub-delegate any of the authorities granted herein to any third party of his / her choosing. Provided that any such delegation or sub-delegation is made in writing, this written record must specify the extent and nature of powers delegated, along with the length of time that such delegation will be in effect.

(2) The Fiduciary is hereby authorized to setoff, to settle, to discharge, and to close the account at the direction of Principal.

(3) The Fiduciary is hereby authorized to use any funds and/or assets in escrow released pursuant to the G.S.A. Optional Form 91 enclosed herewith and incorporated herein by this reference, hereinafter "Form 91", by the Financial Institution for JASON HENRY ALLEN, hereinafter "DEBTOR", and to use said funds and/or assets exclusively for the settlement, setoff, and discharge of any and all debts, obligations, and/or liabilities associated with the Account.

(4) The Fiduciary is hereby authorized to negotiate, endorse, and/or ledger the instruments, the statement with a private banker's acceptance with attached payment coupon, hereinafter "Instruments", enclosed herewith for the settlement and closure of the Account.

(5) The Fiduciary is hereby authorized to use any and all of the assets pledged pursuant to the G.S.A. Standard Form 28 (Affidavit of Individual Surety) enclosed herewith and incorporated herein by this reference, hereinafter "Form 28", for the settlement, setoff, and discharge of any and all debts, obligations, or liabilities associated with the Account and as surety to indemnify the Fiduciary's performance with regard to this Contract, the Form 91, and the Instruments.

(6) The Fiduciary is hereby authorized to use the Account and Routing numbers and/or bond numbers provided on the Instruments for the setoff, settlement, and closure of the Account.

(7) The Fiduciary is hereby authorized to release any and all funds and/or assets remaining after the setoff, settlement, and closure of the Account to the Principal.

(8) The Fiduciary is hereby authorized to ledger the I.R.S. Form 1099-A, hereinafter "Information Return", enclosed herewith, against the Account for the Financial Institution.

**SURETY**

I, the Undersigned, being duly sworn, depose and say that:

(1) The Principal is a surety to this Contract and any and all bond(s) and instrument(s) enclosed herewith.

(2) The Beneficiary is a surety to this Contract and any and all bond(s) and instrument(s) enclosed herewith.

(3) The Principal and Beneficiary hereby pledge the following assets as surety in support of any and all bond(s) and instrument(s) enclosed herewith and the fiduciary duties set forth by this Contract and the following info from Form 91:

i.     Account Statement indorsed with private banker's acceptance;

ii.    Payment Coupon authorized and indorsed;

iii.   assets and/or funds held in escrow for the Beneficiary and the Account held by the Financial Institution;

iv.    Account No. 745384137; and

(4) The Principal and Beneficiary hereby indemnify the performance of the Fiduciary in regards to the authorities granted herein and the duties set forth herein.

(5) The Principal and Beneficiary hereby indemnify the performance of the Fiduciary as the custodian pursuant to the Form 91.

## DUTIES OF THE FIDUCIARY

The Principal hereby directs the Fiduciary to perform the following duties within ten **(10)** days of the postmark of this Contract:

(1) Pursuant to the Form 91, the Fiduciary is hereby directed to use the personal property released from escrow exclusively for the settlement, setoff, and/or discharge any and all debts, obligations, or liabilities associated with the Account.

(2) The Fiduciary is hereby directed to settle, setoff, and/or discharge any and all debts, obligations, or liabilities associated with the Account.

(3) The Fiduciary is hereby directed to negotiate, endorse, and/or ledger the Instruments for the settlement, setoff, and/or discharge of any and all debts, obligations, or liabilities associated with the Account for the benefit of the Beneficiary.

(4) The Fiduciary is hereby directed to ledger the Information Return against the Account for the Financial Institution.

(5) The Fiduciary is hereby directed to issue a Statement of Account showing a zero dollar ($0.00) balance for the Account to the Principal.

(6) The Fiduciary is hereby directed to release any and all funds and/or assets remaining after the setoff, settlement, and closure of the Account to the Principal.

**ACCEPTANCE AND REFUSAL**

This Contract shall be deemed to have been accepted by the Fiduciary if a refusal to the appointment, authorities, and duties is not received by the Principal within ten **(10)** days of the postmark of this Contract. Any refusal of this Contract must be accompanied by a sworn affidavit signed under penalty of perjury and stating that the Fiduciary does NOT have the capacity, authority, obligation, and duty to:

    i.      setoff, settle, and close the Account;

    ii.     accept an appointment as a fiduciary;

    iii.    negotiate, endorse, or ledger the Instruments against the Account for the benefit of the Beneficiary;

    iv.    perform the duties as the custodian pursuant to the Form 91;

    v.     ledger the Information Return against the Account held by the Financial Institution for the benefit of the Beneficiary; and

    vi.    issue a Statement of Account showing a zero dollar ($0.00) balance for the Account to the Principal.

If the Fiduciary needs additional time to perform the duties set forth in this Contract, the Fiduciary may request said additional time by written request to the Principal within ten **(10)** days from the postmark of this Contract and said request must provide good cause. Any requests for additional time shall not exceed thirty **(30)** days from the postmark of this Contract. The Principal reserves the right to deny any requests for additional time.


## LIABILITY OF THE FIDUCIARY

The Fiduciary's failure to perform the duties set forth in this Contract within the time allotted to perform said duties will comprise the Fiduciary's agreement to the following:

(1) THAT the Fiduciary waives all rights, defenses, and immunities;

(2) THAT the Fiduciary accepts personal liability up to ten **(10)** times the face value of the Instruments;

(3) THAT the Fiduciary accepts the filing of the I.R.S. Form 3949-A (Information Referral) with the Internal Revenue Service for the Fiduciary's breach of this Contract;

(4) THAT the Fiduciary accepts the filing of any documents and public records reporting the Principal's right of lien on real property in relation to the Fiduciary's breach of this Contract;

(5) THAT the Fiduciary accepts that the Fiduciary's public hazard bond and/or limited liability insurance policy shall be surety for any liens or levies executed by the Principal for the Fiduciary's breach of this Contract; and

(6) THAT the Fiduciary accepts that any and all real property, personal property, fixtures, and accounts belonging to Fiduciary shall become surety for any liens or

## PREVIOUS AGREEMENTS AND CONTRACTS

This Contract supersedes all other agreements, whether written or oral, between the Beneficiary and the Financial Institution relating to the Account. The Principal hereby revokes and rescinds any and all prior grants, conveyances, notes, trusts, agreements, and/or contracts by and/or between the Financial Institution and the Beneficiary.

## GOVERNING LAW / SEVERABILITY

Private International Law shall govern and enforce this Contract. Should applicable laws deem any part or portion of this Contract as invalid or unenforceable, the remaining provisions shall not be affected and shall be enforced to as great an extent as possible.

## RESERVATION OF RIGHTS

The Principal hereby reserves all rights, remedies, defenses, and immunities.

Further Affiant sayeth not.

## INDORSEMENT

IN WITNESS WHEREOF, I hereunto affix my hand and seal on this ___25___ day of
February, 2025  and hereby certify that all of the statements made above are true, correct, and
complete.

Signed: By. _____ (seal)

Jason-Henry: Allen,
Authorized Representative and Beneficiary

## JURAT

COUNTY OF KOOTENAI          )
                                            ) ss:
STATE OF IDAHO               )

On this ___25th___ day of February, 2025, before me, the undersigned, a Notary Public in and for
Kootenai County, personally appeared the above-signed, known to me to be the one whose name
is sealed by Autograph on this instrument, and has acknowledged to me that he/she has executed
the same.

Notary Signature: _____

Printed Name: ___Joel Kosoff___

JOEL KOSOFF
Notary Public - State of Idaho
Commission Number 20221855
My Commission Expires Apr 18, 2028

Seal: _____



Registered No. *RF 816 841 977 US*
RF81684197 7US

Date Stamp    0835
69

Postage $    $2.04

Extra Services & Fees
(optional)

☐ Signature Confirmation
$

Extra Services & Fees
☐ Registered Mail  $9.30

☐ Signature Confirmation
Restricted Delivery
$

☐ Return Receipt
(hardcopy) $    $0.00

☐ Return Receipt
(electronic) $    $0.00

Total Postage & Fees
$    $21.34

☐ Restricted Delivery  $0.00

Customer Must Declare
Full Value
$    $10.00

Received by    02/27/2025

Domestic Insurance up to $50,000
is included based upon the
declared value. International
Indemnity is limited. (See Reverse).

To Be Completed
By Post Office

HAYDEN, ID
FEB 27 2025
0835 USPS

FROM  *Jason Allen* 83835
2600 E Seltice Way
#255
Post Falls ID 83543

TO  Brian M Berrett - ICCU
4400 Central Office Way
Chubbuck ID 83202

To Be Completed By Customer
(Please Print)
All Entries Must Be in Ballpoint or Typed

PS Form 3806, Registered Mail Receipt    Copy 1 - Customer
April 2015, PSN 7530-02-000-9051    (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com

# EXHIBIT H



20242055232



**STATE OF IDAHO**
*Office of the secretary of state, Phil McGrane*
**UCC1 FINANCING STATEMENT**
Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee - $3 submitted online, $6 print & mail or $12 if 3 or more pages. Make checks payable to Secretary of State.

| For Office Use Only |
|---|
| **-FILED-** |
| File #: 20242055232 |
| Date Filed: 11/3/2024 9:04:24 AM |

| Contact at Filer: | |
|---|---|
| Contact Name | JASON ALLEN |
| Contact Phone | (323) 377-5620 |
| Contact Email | Jason.alistor@gmail.com |

| Send acknowledgment to: | |
|---|---|
| Name | JASON ALLEN |
| Address | 2600 E SELTICE WAY UNIT 235 |
| | POST FALLS, ID 83854-7991 |

Debtors:

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| JASON H ALLEN | 2600 E Seltice Way<br>Unit 235<br>Post Falls, ID 83854-7991 |

Secured Parties:

| SECURED PARTY'S NAME | MAILING ADDRESS |
|---|---|
| RIKUR TRUST | RIKUR PRIVATE FOREIGN TRUST TRUSTEES<br>2600 E Seltice Way<br>Unit 235<br>Post Falls, ID 83854-7991 |

| Collateral: | |
|---|---|
| The financing statement covers the following collateral: | 2023 TOYOTA SEQUOIA CAPSTONE 4WD, COLOR SILVER, VIN # 7SVAAABAPX011784. THE RIKUR PRIVATE TRUST HOLDS TOTAL, COMPLETE, SUPERIOR, AND PERFECTED TITLE, POSITION, AND INTEREST IN THE ASSET. THIS COLLATERAL IS VALUED AT $275,000 USD |
| The collateral is: | Held in a trust |

| Designations: | |
|---|---|
| Select a designation which describes this financing statement: | Not Applicable |
| Select an additional designation which describes this financing statement: | Not Applicable |

| Alternative Designations: | |
|---|---|
| Select the alternative designation which describes this financing statement: | Not Applicable |

| Optional Filer Reference Data: |
|---|
| 2023 TOYOTA SEQUOIA CAPSTONE VIN # 7SVAAABAPX011784 |

Jason Henry Allen

2600 East Seltice Way #235

Post Falls, ID 83854

323-377-5620

March 15 2025

Kootenai County Assessor's Office

Motor Vehicle Division

P.O. Box 9000

Coeur d'Alene, ID 83816-9000

**Re: Application for Certificate of Title – 2023 Toyota Sequoia, VIN 7SVAAABA8PX011784**

Dear Sir or Madam,

I, Jason Henry Allen, am submitting the enclosed Form ITD 3337 (Application for Certificate of Title) to transfer ownership of a 2023 Toyota Sequoia, VIN 7SVAAABA8PX011784, to the Rikur Private Irrevocable Trust, a distinct legal entity established under Idaho Code § 68-104 (defining trusts as separate from the grantor's estate). This vehicle was irrevocably transferred into the trust as trust res on November 3, 2024, as evidenced by the attached trust agreement (Exhibit B) and UCC-1 Financing Statement filed with the Idaho Secretary of State (Exhibit A, Filing # 20242055232), perfecting the trust's interest pursuant to Idaho Code § 28-9-310(a) (filing required for perfection of security interests in titled vehicles).

The purpose of this submission is to register the title in the name of the Rikur Private Irrevocable Trust, with myself acting as trustee, in accordance with Idaho Code § 49-502 (certificate of title reflects legal ownership). However, the original title remains unlawfully withheld by Idaho Central Credit Union (ICCU), a lienholder whose claim was extinguished on October 18, 2024, by my tender of full payment via a specially and restrictively indorsed

negotiable instrument, accepted by ICCU under UCC § 3-301 (rights of a holder in due course). This tender discharged the obligation per UCC § 3-603(b) ("If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, the obligation is discharged to the extent of the amount tendered"), rendering ICCU's lien void as a matter of law.

ICCU's refusal to release the title, despite actual notice of the trust transfer via registered mail on December 1, 2024 (Receipt #RF816840985US, and January 13, 2025) (Receipt #RF816840968US), constitutes a wrongful interference with trust property under Idaho Code § 68-106 ("Trust property is not subject to the trustee's personal debts or liabilities"). This misconduct is the subject of a federal lawsuit filed in the U.S. District Court for the District of Idaho, Northern Division outlining violations of the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.), Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.), and conversion under Idaho common law (Watts v. Krebs, 131 Idaho 616, 962 P.2d 387 (1998)).

The delay in submitting this ITD 3337 beyond the 30-day period mandated by Idaho Code § 49-501(4) is directly attributable to ICCU's bad-faith retention of the title, an external impediment excusing compliance under principles of equitable tolling recognized in Idaho law (see Wilhelm v. Idaho State Bar, 140 Idaho 30, 89 P.3d 870 (2004) (tolling applies where third-party actions prevent timely filing)). I respectfully request waiver of any late fees, as my intent to register the vehicle in the trust's name was established as of November 3, 2024, and ICCU's actions have frustrated my statutory rights under Idaho Code § 49-504 (right to clear title upon lien satisfaction).

Enclosed, please find the following:

Form ITD 3337, completed and signed by the Trustee, notarized as required by Idaho Code § 49-503 (signature verification for title applications).

Exhibit A: UCC-1 Financing Statement, filed November 3, 2024, establishing the trust's superior interest per Idaho Code § 28-9-317(a) (priority over unperfected or discharged liens).

Exhibit B: Rikur Private Irrevocable Trust Agreement (relevant pages), confirming the Sequoia VIN 7SVAAABA8PX011784 as trust res under Idaho Code § 68-105.

Payment: Check for $14.00, payable to "Kootenai County Assessor," for the title fee as set forth in Idaho Code § 49-202(2)(b) (please advise if adjusted for 2025).

I request that the title be issued in the name of:

Rikur Private Irrevocable Trust

c/o Jason-Henry:Allen TTEE

2600 East Seltice Way #235

Post Falls, ID 83854

This submission is mailed via USPS Certified Mail, Return Receipt Requested, to ensure delivery confirmation and compliance with FRCP 5(d) (service documentation for federal court filings). Please process this application promptly and notify me of any additional requirements at the above address or by phone at 323-377-5620. The aforementioned federal lawsuit demonstrates my good-faith effort to secure trust ownership amidst ICCU's interference, actionable under 18 U.S.C. § 1001 (false statements by ICCU to credit bureaus) and Idaho Code § 18-2403 (theft by possession of stolen property).

Thank you for your attention to this matter. I look forward to your confirmation of receipt and issuance of the corrected title in the trust's name, free of ICCU's extinguished lien.

Respectfully,

By: _____

Jason – Henry : Allen – Beneficiary

Without Recourse, Without Prejudice

**JURAT**

**State of Idaho, County of Kootenai**

On this **19th day of March, 2025**, before me, Notary Public, personally appeared Jason-Henry: Allen, known to me to be the persons whose names are subscribed hereto, and acknowledged execution of this Declaration of Trust for the purposes stated.

Notary Signature: _____

Seal:

> JOEL KOSOFF
> Notary Public - State of Idaho
> Commission Number 20221855
> My Commission Expires Apr 18, 2028

Commission Expires: 4/18/2028

# Application for Certificate of Title
## Idaho Transportation Department

DMV SKIP THE TRIP! SAVE TIME-GO ONLINE

ITD 3337  (Rev 4/24)
dmv.idaho.gov

➡ **Before starting form, see instructions on Page 2.**

## Section 1 Purchaser – Owner

| Owner #1 Full Legal Name (First, Middle, Last) or Business Name | Idaho Driver's License # or SSN / EIN if Business | Sex M ☐ F ☐ | ☐ Or ☐ And |
|---|---|---|---|
| RIKUR PRIVATE IRREVOCABLE | 98-6083466 | Date Of Birth | ☐ LSR ☐ DBA |
| Owner #2 Full Legal Name (First, Middle, Last) or Business Name | Idaho Driver's License # or SSN / EIN if Business | Sex M ☐ F ☐ | ☐ Or ☐ And |
| | | Date Of Birth | ☐ LSE ☐ DBA |
| Owner #3 Full Legal Name (First, Middle, Last) or Business Name | Idaho Driver's License # or SSN / EIN if Business | Sex M ☐ F ☐ | ☐ Or ☐ And |
| | | Date Of Birth | ☐ LSE ☐ DBA |

| Owner's Legal Physical Address | City | State | Zip+4 |
|---|---|---|---|
| 2600 EAST SELTICE WAY #235 | POST FALLS | ID | 83854 |
| Mailing Address If Different from Physical Address | City | State | Zip+4 |

## Section 2 Vehicle Description

| 1st Vehicle or Hull Identification Number (VIN or HIN) | 2nd VIN If Assigned |
|---|---|
| 7SVAAABA8PX011784 | |

| Year | Make | Body Type | Model | Description | Color (Primary/Secondary) | Fuel Type | Wheel Base |
|---|---|---|---|---|---|---|---|
| 2023 | TOYOTA | SUV | SEQUOIA | CAPSTONE | SILVER | GAS | |

| Weight | Length | Width | Hull Material | Horsepower | Propulsion |
|---|---|---|---|---|---|
| | | | | | |

| Odometer Reading — (no tenths) | Date of Reading | Odometer Status | | | | |
|---|---|---|---|---|---|---|
| 23500  ■ Mi ☐ Km | | ■ Actual ☐ In Excess ☐ Not Actual ☐ No Device ☐ Exempt | | | | |

## Section 3 Sale

| Idaho Sellers Permit No. (required for leasing or rental companies) | Purchase Date | ☐ Lease ☐ Rental ☐ Tax Not Included |
|---|---|---|
| NA | 10/18/2024 | ■ Tax Exempt Sale ☐ Tax Exempt Form |

| | | **Dealer Sales Additional Information** | |
|---|---|---|---|
| Gross Sales Price.....................$ | 84,800 . 94 | Qualifying Rebates ..............$ | . |
| Net Idaho Sales Tax Due ...........$ | . | Trade-In Allowance ............$ | . |
| Net Idaho Sales Tax Collected ....$ | . | Adjusted Gross Sales Price. $ | . |

## Section 4 Lienholder

| Primary Lienholder Name | Mailing Address | City | State | Zip+4 |
|---|---|---|---|---|
| RIKUR PRIVATE IRREVOCABLE TRUST | 2600 EAST SELTICE WAY #235 | POST FALLS | ID | 83854 |
| Secondary Lienholder Name | Mailing Address | City | State | Zip+4 |

## Section 5 Brands

| Previous State | Previous State Brand |
|---|---|
| | ☐ Rebuilt Salvage ☐ Reconstruct ☐ Other_____ ☐ Repaired |

## Section 6 Agency/Dealer

| Agency/Dealer Name | Authorized Representative's Name Printed | Title |
|---|---|---|
| | | |

| Agency/Dealer Address | City | State | Zip Code |
|---|---|---|---|
| | | | |

| Phone No. | Fax Number | E-Mail Address |
|---|---|---|
| ( ) | ( ) | |

☐ By checking this box, I certify that I am a financial institution registered in the state of Idaho or an out of state dealership authorized by the state of Idaho, have physically inspected the vehicle/vessel described in Section 1, and that the VIN/HIN shown on this form is correct.

I certify that all information on this application is correct and that I have witnessed the signature(s) of the person(s) signing this application. I also release all interest in this vehicle/vessel unless I am listed as lienholder or owner on this application for Title.

| Authorized Signature | Date | Title documents will be submitted to the county office located in |
|---|---|---|
| X | | (City) |

## Section 7 Fees Paid

**Do Not Send Cash - Make payment by check or credit card. Go to dmv.idaho.gov for your county's admin fee.**

| | | | **CREDIT CARD purchases are subject to service fees** |
|---|---|---|---|
| ■ Title Fee ..................................... $ | 14.00 | | |
| ☐ County Title Admin Fee ................ $ | . | Credit Card ■ Visa | ☐ MasterCard |
| ☐ Sales Tax .................................... $ | . | Card Number | Print name as shown on front of credit card |
| ☐ Rush Fee (Optional) - Additional $26.00 $ | . | 4147-2026-7721-7315 | JASON ALLEN |
| Total Fees .................................... $ | 14.00 | Expiration Date 05/29 | Security Code 219 |

## Section 8 Signature(s)

I, the undersigned, certify that the vehicle/vessel described above is owned by me and this vehicle/vessel will not be the subject of a lien prior to receipt of the title unless indicated in Section 3. I certify under penalty of perjury pursuant to the law of the State of Idaho that the foregoing is true and correct to the best of my knowledge and belief, and that the signature below is my true and legal signature.

| Applicant's Signature | Email Address | Daytime Phone Number | Date |
|---|---|---|---|
| X ~WITHOUT RECOURSE~ | JASON.ALISTOR@GMAIL.COM | 323-377-5620 | 11/3/24 |
| Applicant's Signature | Email Address | Daytime Phone Number | Date |
| X | | | |

# EXHIBIT I

JASON HENRY ALLEN

2600 East Seltice Way #235

Post Falls, ID 83854

February 23, 2025

**VIA REGISTERED MAIL**

Idaho Central Credit Union

Attn: Brian M. Berrett, Chief Financial Office

4400 Central Way

Chubbuck, ID 83202

Re: Demand for Validation and Verification of Alleged Debt – Account Number 745384137

Dear Mr. Berrett and Idaho Central Credit Union,

This letter serves as my formal demand regarding the alleged debt tied to the consumer transaction contract with ICCU on or about October 18, 2024. I assert that I fully performed all obligations under said contract, which ICCU accepted. Despite this, ICCU has failed to release a clean and clear title, continued collection attempts, and reported negative information to credit bureaus, all without lawful basis.

Pursuant to my rights under federal and state law, including but not limited to the Fair Debt Collection Practices Act (15 U.S.C. § 1692g) and the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.), I hereby demand the following within thirty (30) days of registered delivery of this letter:

**1 -** Validation of the Alleged Debt: Provide a complete and actual accounting of the alleged debt, detailing all principal, interest, fees, and payments credited, including the disposition of the negotiable instrument tendered on October 18, 2024. This must be a true and accurate ledger, not a summary or computer-generated statement.

**2 -** Verification of Claim: Furnish written verification, signed in wet ink by a human with personal knowledge and authority, confirming that I owe any amount to ICCU related to this transaction. This must explicitly state the basis for your claim that the debt remains outstanding, despite my documented performance.

**3 -** Certified Copy of the Contract: Deliver a certified copy of the original contract binding both parties—JASON HENRY ALLEN, and Idaho Central Credit Union—bearing the wet ink signatures of all parties, including any agent of ICCU who executed the agreement.

Your failure to provide these items in full, within the specified timeframe, will be construed as an admission that no valid debt exists, that your claims against me lack merit, and that your prior actions constitute breaches of contract, fiduciary duty, and applicable law. I have previously notified you of these issues on December 1, 2024 (Registered Mail #RF816840985US) and January 13, 2025 (Registered Mail #RF816840968US), yet you have not corrected your conduct.

Be advised that I intend to pursue all available remedies, including litigation, should you fail to comply. This letter does not waive any rights or claims I have asserted against ICCU and Brian M. Berrett, including but not limited to those related to your handling of the negotiable instrument, refusal to release the title, and inaccurate credit reporting.

Send your response and all requested documentation to the address above.

Sincerely,

By:

Jason-Henry: Allen

Agent on behalf of the principle

Without Prejudice UCC 1-308

# EXHIBIT J

# EXHIBIT J

# U.S. District Court for the District of Idaho, Northern Division

# JASON HENRY ALLEN individually and as Trustee of Rikur Private Irrevocable Trust, v. IDAHO CENTRAL CREDIT UNION, BRIAN M. BERRETT, et al.

# Case No. _____

## PERSONAL INFORMATION AND INTENT

I, Jason-Henry:Allen, a person as defined herein (a nothingness which produces a somethingness, the seat of creativity, a potential consciousness with no space, wavelength, mass, or location, containing decisions and definitions associated with interaction, identity, ethics, morals, and integrity), acting as Beneficiary, Without Recourse, Without Prejudice, and as Trustee of the Rikur Private Irrevocable Trust, clarify my intent in this matter. I am not an ens legis entity, but a living essence distinct from the ens legis JASON HENRY ALLEN, as defined in my Complaint. I am addressing a misbalance that has occurred between myself and ICCU/Brian M. Berrett, ens legis entities, regarding a claimed obligation.

I am not writing from a place of rage or uneducation, as some may assume of those submitting such notices. I am a legal and lawful professional seeking to correct an imbalance with transparency and honor. My intent is to resolve this matter amicably and swiftly, in due course of law, without justiciable controversy. I genuinely appreciate your time and consideration of the Court in addressing this issue, and I seek to discharge any claimed obligation through the principles of equity and justice.

## SECTION A - DEFINITIONS

The following definitions shall apply to all terms used in Plaintiff's Complaint filed in *Jason Henry Allen individually and as Trustee of Rikur Private Irrevocable Trust v. Idaho Central Credit Union, Brian M. Berrett, et al.*, U.S. District Court for the District of Idaho, Northern Division, on March 25, 2025, and related filings, consistent with the definitions provided therein:

**ABSOLUTE:** As defined in Black's Law Dictionary 4th Ed., complete; perfect; final; without any condition or incumbrance; as an absolute bond (simplex obligatio) in distinction from a

conditional bond. Unconditional; complete and perfect in itself; without relation to or dependence on other things or persons. Irrevocable, final. An absolute estate is one that is free from all manner of condition or incumbrance; an estate in fee simple. (*Johnson v. McIntosh*, 8 Wheat. 543, 5 L.Ed. 681).

**ALIENATION:** As defined in Black's Law Dictionary 4th Ed., the transfer of the property and possession of lands, tenements, or other things, from one person to another. The term is particularly applied to absolute conveyances of real property. The voluntary and complete transfer from one person to another. (*Rich v. Doneghey*, 71 Okl. 204, 177 P. 86).

**BAD FAITH:** As defined in Black's Law Dictionary 4th Ed., the opposite of good faith; a state of mind characterized by dishonesty, fraud, or a deliberate intent to deceive or evade responsibility. In this matter, ICCU's failure to engage in good-faith dispute resolution, despite its BBB commitment, constitutes bad faith under Idaho common law, as recognized in *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 108 P.3d 380 (2005), and alleged in Count XI of the Complaint.

**BOND:** As defined in Black's Law Dictionary 4th Ed., a certificate or evidence of a debt. A contract. (*Cusack v. McGrain*, 136 Ohio St. 27, 23 N.E.2d 633).

**CONTRACT:** As defined in Black's Law Dictionary 4th Ed., a promissory agreement between two or more persons that creates, modifies, or destroys a legal relation. (*Buffalo Pressed Steel Co. v. Kirwan*, 138 Md. 60, 113 A. 628).

**CONTRACT, ESTOPPEL BY:** As defined in Black's Law Dictionary 4th Ed., estoppel to deny the truth of facts agreed on and settled by force of entering into a contract, and estoppel arising from acts done under or in performance of the contract. A party is bound by the terms of its own contract until set aside or annulled for fraud, accident, or mistake. (*United Fidelity Life Ins. Co. v. Fowler*, Tex.Civ.App., 38 S.W.2d 128).

**ENS LEGIS:** As defined in Black's Law Dictionary 4th Ed., a creature of the law; an artificial being, as contrasted with a natural person. Applied to corporations, considered as deriving their existence entirely from the law.

**FEASOR:** As defined in Black's Law Dictionary 4th Ed., a doer; maker. Also used in the compound term "tort-feasor," one who commits or is guilty of a tort.

**FIDUCIARY DUTY:** As defined in Black's Law Dictionary 4th Ed., a duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person; the highest standard of duty implied by law, requiring loyalty, good faith, and care. In this matter, ICCU and Berrett assumed a fiduciary duty by accepting Plaintiff's perfected contract and payment, as alleged in Count II of the Complaint

**INALIENABLE:** As defined in Black's Law Dictionary 4th Ed., not subject to alienation; the characteristic of those things which cannot be bought or sold or transferred from one person to another, such as rivers and public highways, and certain personal rights; e.g., liberty.

**INSTRUMENT:** As defined in Black's Law Dictionary 4th Ed., a written document; a formal or legal document in writing, such as a contract, deed, will, bond, or lease. A document or writing which gives formal expression to a legal act or agreement, for the purpose of creating, securing, modifying, or terminating a right; a writing executed and delivered as the evidence of an act or agreement. (*Moore v. Diamond Dry Goods Co.*, 47 Ariz. 128, 54 P.2d 553).

**MONEY:** As defined in Black's Law Dictionary 4th Ed., in usual and ordinary acceptation, it means gold, silver, or paper money used as a circulating medium of exchange, and does not embrace notes, bonds, evidences of debt, or other personal or real estate. (*Lane v. Railey*, 280 Ky. 319, 133 S.W.2d 74).

**NEGOTIABLE INSTRUMENTS:** As defined in Black's Law Dictionary 4th Ed., any written securities which may be transferred by indorsement and delivery or by delivery merely, so as to vest in the indorsee the legal title, and thus enable him to sue thereon in his own name. Under UCC § 3-104(a), a "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest, if it: (1) is payable to bearer or to order; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking beyond payment, with exceptions for collateral or waivers.

**PAY:** As defined in Black's Law Dictionary 4th Ed., to discharge a debt; to deliver to a creditor the value of a debt, either in money or in goods, for his acceptance. (*Beals v. Home Ins. Co.*, 36 N.Y. 522).

**PAYEE:** As defined in Black's Law Dictionary 4th Ed., the person in whose favor a bill of exchange, promissory note, or check is made or drawn; the person to whom or to whose order a bill, note, or check is made payable. (*Thomson v. Findlater Hardware Co.*, Tex.Civ.App., 156 S.W. 301).

**PAYER or PAYOR:** As defined in Black's Law Dictionary 4th Ed., one who pays, or who is to make a payment; particularly the person who is to make payment of a bill or note. Correlative to "payee."

**PAYMENT:** As defined in Black's Law Dictionary 4th Ed., the fulfillment of a promise, or the performance of an agreement. A discharge of an obligation or debt by the delivery of money or other value by a debtor to a creditor, where the money or other valuable thing is tendered and accepted as extinguishing debt or obligation in whole or in part. (*Moore v. Diamond Dry Goods Co.*, 47 Ariz. 128, 54 P.2d 553).

**PERSON, HUMAN BEING, INDIVIDUAL:** As defined in Plaintiff's Complaint, "person" (and by extension "human being" and "individual") shall mean: a nothingness which produces a

somethingness; the seat of creativity. This is not the brain, nor the body, but is a potential consciousness that has no space, no wavelength, no mass, and no location. This essence contains the decisions and definitions associated with interaction, identity, ethics, morals, and integrity. No other definition applies, and this definition constitutes a full legal action between Plaintiff and Defendant ICCU et al. Any vagueness in the use of these terms will be met with additional liens.

**PRIVITY:** As defined in Black's Law Dictionary 4th Ed., a mutual or successive relationship to the same rights of property. Derivative interest founded on, or growing out of, contract, connection, or bond of union between parties; mutuality of interest. (*Hodgson v. Midwest Oil Co.*, C.C.A.Wyo., 17 F.2d 71).

**SECURITIES FRAUD:** As defined in Black's Law Dictionary 4th Ed., the act of deceiving or misrepresenting facts in connection with the purchase or sale of securities, often involving the use of fraudulent schemes to obtain money or property. In this matter, ICCU and Berrett's absconding with Plaintiff's negotiable instruments and using mail and wire to misrepresent debt status (Counts VIII–IX) constitute securities fraud under 18 U.S.C. §§ 1341, 1343, as alleged in the Complaint.

**TENDER:** As defined in Black's Law Dictionary 4th Ed., an offer of money; the act by which one produces and offers to a person holding a claim or demand against him the amount of money which he considers and admits to be due, in satisfaction of such claim or demand, without any stipulation or condition. (*Kastens v. Ruland*, 94 N.J.Eq. 451, 120 A. 21).

**TRUST RES:** The property held by a trust for the benefit of its beneficiaries, which in this matter refers to the 2023 Toyota Sequoia VIN 7SVAAABA8PX011784, transferred to the Rikur Private Irrevocable Trust on November 3, 2024, and no longer the personal property of Plaintiff. Under Idaho Code § 68-104, trust res is property held in trust, distinct from the trustee's personal estate.

**UNCONSCIONABLE CONTRACT:** As defined in Black's Law Dictionary 4th Ed., one which no sensible man not under delusion, duress, or in distress would make, and such as no honest and fair man would accept. (*Franklin Fire Ins. Co. v. Noll*, 115 Ind.App. 289, 58 N.E.2d 947).


## SECTION B: LAWS AND STATUTES APPLIED

1. **UCC § 3-603 – Tender of Payment and Discharge:**
   As defined, "tender" is an offer of money or value to satisfy a claim (Black's Law Dictionary 4th Ed.). UCC § 3-603 states: "If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the

obligation to which the tender relates." I, as a person (a nothingness which produces a somethingness), tendered payment via a negotiable instrument (as defined in UCC § 3-104(a)) to ICCU, the payee (the entity to whom the instrument was made payable), on October 18, 2024 (Complaint, Paras. 10–13, Exhibit F). ICCU's refusal to accept this tender and release the title to the 2023 Toyota Sequoia VIN 7SVAAABA8PX011784 discharges the claimed obligation to the extent of the amount tendered, per UCC § 3-603, as alleged in Count X of the Complaint.

2. **18 U.S.C. § 891 – Definitions in Extortionate Credit Transactions:**
   This statute defines:

   o "To extend credit" as making or renewing any loan, or entering into any agreement whereby repayment of a debt may be deferred (18 U.S.C. § 891(1)).

   o "Creditor" as any person (herein, an ens legis entity) making that extension of credit (18 U.S.C. § 891(2)).

   o "Debtor" as any person to whom that credit is extended (18 U.S.C. § 891(3)).

   o "Repayment" as the discharge of a debt in whole or in part (18 U.S.C. § 891(4)). ICCU, as an ens legis entity, claims to be a creditor under a contract (a promissory agreement creating a legal relation). I, as a person (a nothingness which produces a somethingness), am the alleged debtor. My tender of payment (as defined) constitutes repayment, discharging the obligation per UCC § 3-603, and aligns with 18 U.S.C. § 891(4).

3. **UCC § 3-204– Indorsement:**
   UCC § 3-204 defines "indorsement" as a signature on a security certificate or separate document for the purpose of assigning, transferring, or redeeming the instrument. My special indorsement on the negotiable instrument (Exhibit F in Complaint) was made "By: Jason-Henry:Allen Without Recourse, Pay to the order of JASON H ALLEN," transferring legal title to the payee (ICCU), per UCC § 3-205(a). Their acceptance of this instrument (as a holder) binds them under estoppel by contract (Black's Law Dictionary 4th Ed.), preventing denial of the facts agreed upon.

4. **12 U.S.C. § 83 – Prohibition on Loans Secured by Own Stock:**
   This statute prohibits a national bank from making a loan on the security of its own shares. While ICCU (in my Complaint) is a credit union, not a national bank, the principle applies analogously to ICCU as a creditor (18 U.S.C. § 891(2)). Any attempt to secure a debt with an instrument tied to their own interests (e.g., a bond or certificate of debt, Black's Law Dictionary 4th Ed.) is unlawful, further invalidating their claim.

5. **15 U.S.C. § 1681s-2 – Fair Credit Reporting Act (FCRA) Violations:**
   ICCU's false reporting of my credit status, despite my full payment and disputes on

December 1, 2024, and January 13, 2025, violates 15 U.S.C. § 1681s-2(a) by furnishing inaccurate information to credit bureaus, and § 1681s-2(b) by failing to investigate and correct within 30 days, as alleged in Count III of my Complaint.

6. **15 U.S.C. § 1692c(c) – Fair Debt Collection Practices Act (FDCPA) Violations:**
ICCU's continued collection attempts after my cease-and-desist notices on December 1, 2024, January 13, 2025, and March 5, 2025, violate 15 U.S.C. § 1692c(c), which prohibits communication with a consumer after a written request to cease, as alleged in Count VI of my Complaint.

7. **Idaho Code § 48-603 – Idaho Consumer Protection Act (ICPA) Violations:**
ICCU's actions, including misrepresenting the debt status and failing to uphold their BBB commitment to good-faith dispute resolution, constitute unfair and deceptive practices under Idaho Code § 48-603(7) (false statements in trade), § 48-603(9) (deceptive acts creating confusion), and § 48-603(17) (conduct creating likelihood of misunderstanding), as alleged in Count IV of my Complaint.

8. **Idaho Code § 68-106 – Trust Law Violations:**
ICCU's failure to release the title to the 2023 Toyota Sequoia, which is trust res of the Rikur Private Irrevocable Trust, violates Idaho Code § 68-106, which prohibits a trustee from claiming trust property as their own, as alleged in Count X of my Complaint

DATED: March 25, 2025

Respectfully submitted in honor and in equity,

By

Jason-Henry:Allen – Beneficiary, Without Recourse,
Without Prejudice, All Rights Reserved
Plaintiff, Pro Se

# END EXHIBIT J