Kimbell D. Gourley / ISB #3578
Cody J. Witko / ISB #10427
JONES♦WILLIAMS♦FUHRMAN♦GOURLEY, P.A.
The 9th & Idaho Center
225 North 9th Street, Suite 820
P.O. Box 1097
Boise, ID 83701
Telephone: (208) 331-1170
Facsimile: (208) 331-1529
Email: kgourley@idalaw.com; cwitko@idalaw.com

*Attorneys for Defendants/Counterclaimant,*
*Idaho Central Credit Union and Brian M. Berrett*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JASON HENRY ALLEN, Individually and as Trustee of Rikur Private Irrevocable Trust,<br><br>Plaintiffs,<br><br>vs.<br><br>IDAHO CENTRAL CREDIT UNION, and BRIAN M. BERRETT,<br><br>Defendants. | Case No.: 2:25-cv-00172-AKB<br><br>**OBJECTION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT PURSUANT TO FRCP 15(A)(2) [Dkt. 27]** |
| IDAHO CENTRAL CREDIT UNION,<br><br>Counterclaimant,<br><br>vs.<br><br>JASON HENRY ALLEN, Individually and as Trustee of Rikur Private Irrevocable Trust,<br><br>Counter Defendants. | |

COME NOW the Defendants/Counterclaimant, the Idaho Central Credit Union ("ICCU") and

Brian M. Berrett ("Berrett"), by and through their counsel of record Jones Williams Fuhrman Gourley,

P.A., and object to and oppose the Plaintiffs' *Motion for Leave to Amend Complaint Pursuant to*

OBJECTION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT - 1

*FRPC 15(A)(2) and Local Rule 15.1* ("Mot. to Amend") [Dkt. 27]. Plaintiffs' motion to amend should be denied in full based on the following grounds and for the following reasons.

## I.    INTRODUCTION

This case stems from a Retail Installment Sale Contract dated October 18, 2024 (the "Vehicle Contract"), executed by Plaintiff Jason Henry Allen ("Allen"), as purchaser/borrower, and George Gee Cadillac Kia, as seller/lender for the purchase of a 2023 Toyota Sequoia (the "Vehicle"). George Gee Cadillac Kia and Allen were therefore the parties to the Vehicle Contract. Pursuant to the Vehicle Contract, Mr. Allen financed $84,700.94 for the purchase price of the Vehicle. George Gee Cadillac Kia originally anticipated assigning the Vehicle Contract to Potlatch #1 Financial Credit Union ("Potlatch #1"), but, for reasons not in the evidentiary record, Potlatch #1 was not assigned the Vehicle Contract and instead George Gee Cadillac Kia assigned it to ICCU. Irrespective of what entity is owed money under the Vehicle Contract, Mr. Allen has defaulted on it.

Plaintiffs' present motion to amend largely revolves around this assignment to ICCU, as he mistakenly claims this to be a form of fraud and now seeks leave to include a new cause of action: "Count XVIII-FRAUD." Importantly, the relevant assignment was an action committed by George Gee Cadillac Kia—not ICCU. Mr. Allen also suggests this newly added claim, which consists of 19 paragraphs and spans over 4 pages (Mot. to Amend [Dkt. 27] at 45-49), rectifies and saves his other inadequately pled and invalid causes of action. Despite the length of the proposed new claim, it neither alleges any facts to support a common fraud claim, nor cures the other causes of actions that are likewise insufficient and subject to ICCU's motion to dismiss and motion for partial summary judgment. Accordingly, the motion to amend is futile and should be denied in full.

## II.     RELEVANT FACTS AND PROCEDURE

**1. The Assignment to ICCU and the Seller's right to assign.**

The motion to amend the complaint is predicated on essentially one fact: that the Vehicle Contract was assigned to ICCU instead of Potlatch #1 without Mr. Allen's knowledge or consent. (*See, e.g.*, Mot. to Amend [Dkt. 27] at 1, 3, 5.) The record before the Court does in fact illustrate this change, which resulted in the assignment of the Vehicle Contract to ICCU instead of Potlatch #1, as the copy of the Vehicle Contract attached to his complaint lists Potlatch #1 as the initial contemplated assignee (*see* Compl. [Dkt. 1] at 62), while the Vehicle Contract supplied by ICCU instead lists ICCU as the Seller's (George Gee Cadillac Kia's) assignee. (Dkt. 11-2 at 4.) As explained, this was in no way any form of fraud or misrepresentation, it was merely George Gee Cadillac Kia exercising its unilateral right to assign the Vehicle Contract. Accordingly, this fact is immaterial and wholly unrelated to any allegation of fraud.

Based on the language of the Vehicle Contract, George Gee Cadillac Kia's had the ability to assign the agreement. Specifically, and drawing from both copies of the Vehicle Contract supplied by each party, the right for George Gee Cadillac Kia to assign the Vehicle Contract is found bolded and in its own blocked-out section; it reads: "**The Seller may assign this contract and retain its right to receive a part of the Finance Charge**." (Compl. [Dkt. 1] at 62; Dkt. 11-2 at 4.) Just below that blocked-out section, the Vehicle Contract further acknowledges this right to assign and provides space for the seller to assign it; that space reads, "Seller assigns its interest in this contract to_____." (*Id.*) This is where the noted modification occurred.

Other portions of the Vehicle Contract also recognize the Seller's right to assign: page 1 of the *Retail Installment Sale Contract Simple Finance Charge* references potential assignees (Compl. [Dkt. 1] at 59 ("Buyer will not assert against any subsequent holder or assignee of this contract any

OBJECTION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT - 3

claims or defenses . . ."); Dkt. 11-2 at 1 (reading the same).) The Gap Addendum recognizes it as well, stating that it "is between the Customer/Borrower (You or Your), the Dealer Creditor, or, if assigned, the Assignee (We, Us, or Our)[.]" (Dkt. 11-2 at 6.) Likewise, even the application references the Seller's right to assign the contract; it reads, "The consent applies to the dealer, who is the originating creditor in this transaction, as well as any assignee who may purchase your credit contract." (Dkt. 11-2 at 9.) In sum, George Gee Cadillac Kia's ability and right to assign the Vehicle Contract is patent and readily apparent throughout the Vehicle Contract. Exercising that right cannot amount to any violation, breach, or fraud.

2. **The Proposed Amendment.**

ICCU was unable to discern a red-lined version of the proposed amended complaint (as is required by Local Civil Rule 15.1). Nevertheless, through a comparison of the original complaint and the proposed amended complaint found in Docket 27 (pages 22 through 54), the apparent additions sought to be included through the motion to amend amount to three substantive alterations: (1) the inclusion of count 18 for fraud, (2) the attendant request for relief found in paragraph T of the Prayer for Relief, and (3) additional referenced exhibits. These proposed amendments are reproduced below, starting with the new count 18:

### COUNT XVIII - FRAUD

159. Plaintiff incorporates by reference all prior allegations as if fully set forth herein.

160. On or about October 18, 2024, Plaintiff entered into a Retail Installment Sale Contract for the purchase of a 2023 Toyota Sequoia, VIN 7SV AAABA8PX011784, designating Potlatch No. 1 Financial Credit Union as the lender (Exhibit E).

161. The fraud claim arises from the same transaction as Plaintiffs federal claims under the FCRA, FDCPA, and ECOA (*Counts III, VI, XIV*), invoking this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

162. After Plaintiffs execution, ICCU or its agent fraudulently altered the contract by scratching out "Potlatch No. 1 Financial Credit Union" as the designated lender and

handwriting "Idaho Central Credit Union" or "ICCU" as the assigned lender, without Plaintiffs knowledge, permission, or consent as discovered on May 20, 2025, and evidenced by Exhibit K. This alteration violates:

- **Idaho Code § 28-3-407 (UCC § 3-407),** which defines an unauthorized change to a contract or negotiable instrument as a fraudulent alteration that discharges the obligor's liability unless consented to, as the change materially modified the lienholder's identity. *Watts v. Krebs,* 131 Idaho 616, 624, 962 P.2d 387 (1998); *Cheney v. Palos Verdes Inv. Corp.,* 104 Idaho 897,905,665 P.2d 661 (1983). The Retail Installment Sale Contract is a negotiable instrument under Idaho Code § 28-3-104 and UCC § 3-104.

- **Idaho Code § 28-9-316 (UCC § 4-406),** which requires authenticated notification to the account debtor (Plaintiff) of any assignment, absent here, rendering ICCU's lien unenforceable. Cora/es v. Flagstar Bank, FSB, 822 F. Supp. 2d 1102, 1112 (W.D. Wash. 2011).

- **Idaho Code § 18-3174**, which establishes that altering a financial instrument with intent to defraud is a felony, supporting civil liability for ICCU's misrepresentation. See Idaho Code § 18-2407(l)(b) (theft by fraud).

163. ICCU knowingly and intentionally altered the contract post-signing to misrepresent themselves as the creditor, with intent to deceive Plaintiff and induce continued performance under false terms, defrauding Plaintiff of property rights and title.

164. ICCU's alteration was not a clerical error but a deliberate act, as evidenced by the handwritten change post-signing and their failure to disclose or correct it despite Plaintiffs demands, constituting fraud under *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 905, 665 P.2d 661 (1983).

165. No term in the Retail Installment Sale Contract or industry practice authorized ICCU to unilaterally alter the lender from Potlatch No. 1 Financial Credit Union to ICCU without Plaintiffs consent, and ICCU failed to provide authenticated notification of any assignment, violating Idaho Code § 28-9-316 (UCC § 4-406). The lender's identity was material, as it directly affected Plaintiffs payment obligations, lien priority, and the Rikur Private Irrevocable Trust's property rights, constituting a fraudulent misrepresentation under Watts v. Krebs, 131 Idaho 616,624, 962 P.2d 387 (1998).

166. ICCU's unauthorized alteration of the Retail Installment Sale Contract discharged Plaintiffs liability under Idaho Code§ 28-3-407(b) (UCC § 3-407(b)), as the change from Potlatch No. 1 Financial Credit Union to ICCU was material and made without Plaintiffs consent, fundamentally altering the creditor's identity and lienholder rights. ICCU's alteration of the contract without notifying Plaintiff violates Idaho Code§ 28-3-406 (UCC § 3-406), shifting liability to ICCU for contributing to the fraudulent alteration

167. By failing to disclose the true lender at signing, ICCU violated 12 C.F.R. § 226. l 7(a) (TILA), which requires clear and conspicuous disclosure of credit terms, depriving Plaintiff

OBJECTION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT - 5

of informed consent (Ford Motor Credit Co. v. Milhollin, 444 U.S. 555 (1980)).

168. ICCU concealed the alteration, failing to disclose the modified lender designation at signing or in response to Plaintiffs demands for title and lien release, violating their good faith duty under Idaho Code§ 28-1-304.

169. No contract term or industry practice authorized ICCU to unilaterally change the lender without Plaintiffs consent, and ICCU failed to provide authenticated notification of assignment, violating Idaho Code § 28-9-316 (Corales v. Flagstar Bank, FSB, 822 F. Supp.2d 1102, 1112 (W.D. Wash. 2011)).

170. The lender's identity was material, as it altered Plaintiffs payment obligations, lien priority, and the Rikur Private Irrevocable Trust's property rights, causing direct harm (Watts v. Krebs, 131 Idaho 616,624,962 P.2d 387 (1998)).

171. Plaintiff reasonably relied on the original contract terms as signed on October 18, 2024, designating Potlatch as lender, and was unaware of ICCU's alteration until May 20, 2025, due to their concealment, as evidenced by Exhibit K.

172. As a direct and proximate result of ICCU's fraudulent alteration, Plaintiff has suffered damages, including but not limited to financial losses from unlawful collection attempts, reputational harm from false credit reporting and emotional distress, in an amount not less than $75,000, to be proven at trial.

173. ICCU's willful misconduct, evidenced by their silence in response to Plaintiffs demands and concealment of the alteration until May 20, 2025, justifies punitive damages of not less than $150,000 to deter such egregious behavior.

174. ICCU's fraudulent alteration directly harmed the Rikur Private Irrevocable Trust by impairing its clear title to the 2023 Toyota Sequoia, constituting conversion under Watts v. Krebs, 131 Idaho 616,962 P.2d 387 (1998), and exacerbating Plaintiffs emotional distress through anxiety and humiliation.

175. ICCU's actions constitute common-law fraud under Idaho law, satisfying the elements of misrepresentation, falsity, materiality, intent, reliance, and damages. *Watts v. Krebs,* 131 Idaho at 624, 962 P.2d 387; *Cheney v. Palos Verdes,* 104 Idaho at 905,665 P.2d 661. Plaintiff is entitled to compensatory and punitive damages for ICCU's willful misconduct, per Idaho Code § 6-1604 (punitive damages for fraud).

176. The alteration further violates 15 U.S.C. § 1691 (ECOA) by deceptively altering credit terms and 12 C.F.R. § 226.17 (TILA) by failing to disclose the true lender, as alleged in Plaintiffs Motion for Leave to Amend, reinforcing and increasing ICCU's liability.

177. Plaintiff is entitled to compensatory damages for ICCU's fraud, including financial losses from improper collection attempts, reputational harm from false credit reporting, and emotional distress, in an amount not less than$75,000; punitive-damages of not less than

> $150,000 for ICCU's willful misconduct; and equitable relief, including discharge of any ICCU lien, pursuant to Idaho Code § 28-9-317 and common-law principles.

(Mot. to Amend [Dkt. 27] at 45-49.) As discussed below, this new cause of action fails to adequately plead <u>any viable claim</u>, despite its reference to various bodies of law. Plaintiffs' proposed amended prayer for relief adds the following:

> T. Compensatory damages for Defendants' fraud and constructive fraud under Count XVIII, including but not limited to financial losses from improper collection attempts, inflated payment demands, reputational harm from false credit reporting, and emotional distress caused by ICCU's fraudulent and unauthorized alteration of the Retail Installment Sale Contract and Negotiable Instrument, in an amount to be proven at trial but not less than $100,000; punitive damages of not less than $200,000 for ICCU's willful, oppressive, and fraudulent misconduct[1] in altering the contract, concealing the alteration, and violating their duty of good faith under Idaho Code § 28-1-304, as warranted by Idaho Code § 6-1604; equitable relief, including discharge of any purported ICCU lien on the 2023 Toyota Sequoia, VIN 7SV AAABA8PX0 11784, and restoration of clear title and MCO to the rightful and lawful owner, the Rikur Private Irrevocable Trust, pursuant to Idaho Code § 28-3-407, § 28-9-317, and common-law principles of fraud and conversion; and restitution for unjust enrichment from ICCU's retention of $84,800.94 without delivering title, under *Stevenson v. Windermere Real Estate/Capital Grp., Inc.,* 152 Idaho 824, 275 P.3d 839 (2012).

(Mot. to Amend [Dkt. 27] at 51.) Finally, Plaintiffs' proposed amended complaint further includes the following exhibits:

> K. Altered contract pages after plaintiff signed (May 20th 2025)
>
> L. Amended Original Complaint (This document)
>
> M. Credit Reports

(Mot. to Amend [Dkt. 27] at 53.) None of these additions sufficiently plead fraud or any other cause of action. As such, the motion for leave to amend is futile and should be denied.

---

[1] Defendants take the opportunity to point out to the Court that the present motion to amend does not, and should not be considered to, address the inclusion of punitive damages, as the motion fails to argue for the inclusion of punitive damages in accordance with I.C. § 6-1604.

### III.  LAW AND ANALYSIS

1. **Legal standard for motions to amend a complaint.**

"Denial of a request for leave to amend is reviewed for abuse of discretion. The district court is afforded considerable deference in determining whether a party's motion to amend a complaint should be granted." C*arranza-Hernandez v. Altus Fin. Corp.*, 33 F. App'x 364, 365 (9th Cir. 2002) (citing *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 799 (9th Cir. 2001)). "A district court does not err in denying leave to amend where the amendment would be futile, or where the amended complaint would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (internal citations omitted). "If the district court is correct in making a finding that 'there was no possibility of stating a cause of action[, ] the dismissal would not be an abuse of discretion.'" *Californians for Renewable Energy v. Cal. PUC*, 922 F.3d 929, 935 (9th Cir. 2019) (quoting *Shermoen v. United States*, 982 F.2d 1312 (9th Cir. 1992)).

Here, Plaintiffs' suggested amendment does not and cannot as a matter of law state a cause of action for fraud; it is therefore futile and subject to dismissal in this regard and the motion should be denied. Similarly, the proposed amendment likewise fails to cure his other deficient causes of action, and denial is also appropriate in this regard. Each alleged cause of action is addressed in turn, starting with common law fraud.

2. **Plaintiffs' newly pled facts lack various elements of common law fraud; accordingly, fraud cannot be sustained as a matter of law and amending to include that claim is futile.**

As discussed above, the facts that Plaintiffs contend support the proposed amended complaint are (1) that George Gee Cadillac Kia modified the entity to which it was intending to assign the Vehicle Contract from Potlatch #1 to ICCU; and (2) that Allen was unaware this was occurring. These facts cannot, as a matter of law, support a fraud claim.

Initially, it should be noted that Allen claims that he was unaware of this assignment until May 20, 2025 (*see* Mot. to Amend [Dkt. 27] at 2, 3) is demonstrably false. The attachments to Plaintiffs' own Complaint illuminate that he was communicating with ICCU about the loan and Vehicle Contract as early as November 26, 2024, just a few weeks after he obtained the loan. (Compl. [Dkt. 1] at 38-40.)

Under Rule 9 of the Federal Rules of Civil Procedure, a plaintiff, "[i]n alleging fraud or mistake, . . . must state with particularity the circumstances constituting fraud or mistake." F.R.C.P. 9(b).[2] Turning to the element of fraud; Idaho requires proof of—or at this stage particularly and plausibly pleading: "(1) [defendant] made a representation, (2) the representation was false, (3) [defendant] knew it was false or was ignorant of its truth, (4) the representation was material, (5) [defendant] intended that the representation be acted upon, (6) [plaintiff] was ignorant of the falsity, (7) [plaintiff] reasonably relied on the representation, and (8) causation[;]" (*Puckett v. Oakfabco, Inc.*, 132 Idaho 816, 825, 979 P.2d 1174, 1183 (1999)) and "(9) resultant injury." *Doe v. BSA*, 159 Idaho 103, 108, 356 P.3d 1049, 1054 (2015). Most of these elements are patently absent from Plaintiffs' claims and alleged facts, which renders the claim futile.

Addressing the first element, whether there is a representation of fact: this element is not met because, as seen in the quote above, the representation must be by the defendant. Here, the written identification of the entity that the Seller's might assign the contract to <u>was not a statement by ICCU</u>—it was a representation by the Seller George Gee Cadillac Kia. Accordingly, this element has not been met as a matter of law and as a matter of the uncontested facts.

Additionally, regarding the first and second element (of falsity), these cannot be established

---

[2] "Although we construe pleadings liberally in their favor, *pro se* litigants are bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir.1995).

in the pleadings because the statement regards a future event. "[A] representation consisting of promise or a statement as to a future event will not serve as basis for fraud, even though it was made under circumstances as to knowledge and belief which would give rise to an action for fraud had it related to an existing or past fact." *Choice Feed, Inc. v. Montierth*, 168 Idaho 124, 141, 481 P.3d 78, 95 (2021). Here, the indication that Potlatch #1 would be the assignee was related to a future, prospective event of who could or would be the assignee. As such, the first and second elements cannot be met as a matter of law based on the allegations of a future event.

Similarly, elements (4) that the representation was material, (5) that it was intended that the representation be acted upon, and (7) that Allen reasonably relied on the representation, are also legally absent here. The representation regarding Potlatch #1 was in no way material, because Allen still obtained the money for financing, and the identity of the assignee had no effect on the obligation to repay. Element (5) and (7) are also missing because of a related reason: who the assignee is has no bearing on whether Allen obtained the requested financing nor whether he had to repay it—thus, there could be no intent for reliance, nor any actual reliance, on any representation about who the assignee may have been.

Finally, elements 8 and 9 are also wholly absent as well. There can be no causation of damage stemming from the representation that Potlatch #1 was supposed to be the original assignee because it did not affect Allen's ability to obtain financing nor the requirement to repay the amount financed. In sum, almost all elements of fraud cannot be established from the pled fact, even when presumed true. As such, the claim of common law fraud is futile and would be subject to dismissal. Amending to add such a claim is therefore improper.

    **3.**    **The proposed amended complaint does not give rise to viable or non-futile claims under Idaho Code § 28-3-407 (UCC § 3-407), Idaho Code § 28-9-316 (UCC § 4-406), nor Idaho Code § 18-3174.**

Paragraph 162 of the proposed complaint references three additional Idaho Code sections, § 28-3-407 (UCC § 3-407), § 28-9-316 (UCC § 4-406), and § 18-3174—which is nonexistent. (Mot. to Amend [Dkt. 27] at 24-25.) However, there is no legal basis for claims under any of these statutes based on the facts alleged.

While the three statutes are addressed below, an initial point should be made. In Idaho, a creditor/lender perfects a security interest in a vehicle by placing a lien upon the certificate of title. A creditor does not file a UCC-1 financing statement with the Idaho Secretary of State to perfect a security interest in a vehicle unless the vehicle is inventory of the debtor. Thus, any of Plaintiffs' references to the UCC related to such financing statements are inapplicable.

    **a.**    **The facts alleged do not give rise to a violation of Idaho Code 28-3-407.**

Plaintiffs proffer that the assignment of the Vehicle Contract amounts to an unauthorized alteration under section 28-3-407, which discharges Allen's obligation under the contract. (Mot to Amend [Dk.t 27] at 4.) This is a misunderstanding of the Seller's rights under the agreement and a misstatement of section 28-3-407.

First, no alteration occurred because George Gee Cadillac Kia merely exercised its right under the Vehicle Contract to assign. As such, the assignment was merely an exercise of right, not an unauthorized modification. Secondly, section 28-3-407 reads:

> "Alteration" means (i) an unauthorized change in an instrument **that purports to modify in any respect the obligation of a party**, or (ii) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party.
>
> (2) Except as provided in subsection (3) of this section, an **alteration fraudulently** made discharges **a party whose obligation is affected by the alteration** unless that party assents or is precluded from asserting the alteration. **No other alteration**

**discharges a party, and the instrument may be enforced according to its original terms.**

I.C. § 28-3-407 (emphases added). As the statute makes clear, the alteration must be made "fraudulently." As explained, the alleged facts do not support or intimate a fraudulent alteration. Moreover, as the emphasized language makes clear, in order for an alteration to be improper, it must modify the obligation of a party—specifically Allen's obligation to pay—in order for him to claim his duty is discharged. Yet Allen's obligations were not modified in any substantial way: the assignment did not change the interest rate or the amount due, it merely altered the entity who was to be paid, which is not a substantive nor material modification to the obligations under the Vehicle Contract. *See Settle v. Bank of Am., N.A.*, No. 4:17 CV 1343 JMB, 2017 U.S. Dist. LEXIS 91303, at *6 (E.D. Mo. June 14, 2017) ("A material alteration is one which so changes the terms of the instrument as to give it a different legal effect from that which it originally had, and thus works some change in the rights, interest, or obligations of the parties." (quoting *Recsnik v. Retirement Time Ins., LLC*, 361 S.W.3d 9, 11-12 (Mo. Ct. App. 2009)).

Finally, ICCU did not make this alteration, if in fact an alteration occurred—George Gee Cadillac Kia did. As a result, ICCU committed no actionable conduct and no action against ICCU exists. As such, no viable claim or discharge exists under section 28-3-407.[3]

    **b.    The facts alleged do not give rise to a violation of Idaho Code 28-9-316.**

The second statute cited in the newly proposed 18th claim is section 28-9-316. Plaintiffs' amended complaint reads, "Idaho Code § 28-9-316 (UCC § 4-406), which requires authenticated

---

[3] Plaintiffs cite to two cases in his proposed amended complaint to support his claim regarding section 28-3-407. The first case is *Watts v. Krebs*, 131 Idaho 616, 962 P.2d 387 (1998). That case does not reference section 28-3-407. Instead, it addresses fraud and waste in the partition of marital property, not the alteration of a negotiable instrument. Similarly, the Plaintiffs also cite to *Cheney v. Palos Verdes Inv. Corp.,* 104 Idaho 897, 905, 665 P.2d 661 (1983), which appears to a case addressing punitive damages that was superseded by section 6-1604 in 1987. *See Cummings v. Stephens*, 157 Idaho 348, 363 n.5, 336 P.3d 281, 296 (2014). Accordingly, neither case is relevant.

notification to the account debtor (Plaintiff) of any assignment, absent here, rendering ICCU's lien unenforceable. *Corales v. Flagstar Bank, FSB*, 822 F. Supp. 2d 1102, 1112 (W.D. Wash. 2011)." (Mot. to Amend [Dkt. 27] at 46 (bolding removed).) This argument is an unsupported non sequitur.

First, section 28-9-316 addresses perfecting security interest; it does not address modifications or assignments. Second, the *Corales* case also fails to support this argument. Instead, *Corales* held that recording was unnecessary:

> Washington State does not require the recording of such transfers and assignments. The purpose of recording the assignment is to put parties who subsequently purchase an interest in the property on notice of which entity owns a debt secured by the property. Therefore, Plaintiffs claim based on an alleged lack of recording of the assignment from MERS to Flagstar is unavailing . . . .

*Corales*, 822 F. Supp. 2d at 1109 (citations omitted). As a result, this alleged violation of 28-9-316 is nonsensical and utterly unsupported. It is therefore frivolous and futile.

### c. Idaho Code section 18-3174 does not exist.

Section 18-3174 is the third statute cited in the newly proposed 18th claim. However, it does not exist. Plaintiffs' amended complaint writes, "Idaho Code§ 18-3174, which establishes that altering a financial instrument with intent to defraud is a felony, supporting civil liability for ICCU's misrepresentation. *See Idaho Code § 18-2407(l)(b)* (theft by fraud)." (Mot. to Amend [Dkt. 27] at 46 (bolding removed).) Chapter 31 of Title 18 ends at section 18-3128; there is no section 18-3174. The citation by Plaintiffs to section 18-2407 is also inapplicable. That section is titled "Grading of Theft." I.C. § 18-2407. There is no allegation of theft. As such, any amendment to include a related claim for some type of theft is not adequately plead and is futile.

In sum, the three references to additional statutes in the newly proposed count 18 are ineffective, as they are either futile or do not even amount to causes of action to begin with.

OBJECTION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT - 13

4.  **The proposed amended complaint does not rectify, cure, or save any of the prior causes of action.**

Plaintiffs argue that the proposed amendment "refines" his original 17 causes of actions "thereby curing any pleading deficiencies." (Mot. to Amend [Dkt. 27] at 5.) This suggestion is incorrect, and ICCU's and Mr. Berrett's prior motion to dismiss and motion for partial summary judgment remain effective. Accordingly, ICCU and Mr. Berrett rely on their prior briefing for their other motions. In addition, the following points also support that the proposed amendment does not save Plaintiffs' other claims from dismissal.

To summarize, Plaintiffs originally alleged the following 17 claims:

| COUNTS | DESCRIPTION OF CLAIMS |
|---|---|
| **COUNT I** | **Breach of Contract** |
| **COUNT II** | **Breach of Fiduciary Duty** |
| **COUNT III** | **Violation of the Fair Credit Reporting Act** |
| **COUNT IV** | **Violation of the Idaho Consumer Protection Act** |
| **COUNT V** | **Unjust Enrichment** |
| **COUNT VI** | **Violation of the Fair Debt Collection Practices Act** |
| **COUNT VII** | **Violation of 18 U.S.C. § 1001 (False Statements)** |
| **COUNT VIII** | **Violation of 18 U.S.C. § 1341 (Mail Fraud)** |
| **COUNT IX** | **Violation of 18 U.S.C. § 1343 (Mail Fraud)** |
| **COUNT X** | **Declaratory Judgment and Conversion of Trust Property** |
| **COUNT XI** | **Violation of BBB Standards for Trust and Bad Faih Conduct** |
| **COUNT XII** | **Violation of the Federal Credit Union Act** |
| **COUNT XIII** | **Violation of Idaho Unfair Claims Settlement Practices Act** |

| | |
|---|---|
| **COUNT XIV** | **Violation of the Equal Credit Opportunity Act** |
| **COUNT XV** | **Violation of the Idaho Constitution (Articles I, §§ 18, 21)** |
| **COUNT XVI** | **Intentional Infliction of Emotional Distress** |
| **COUNT XVII** | **Civil Conspiracy** |

In short, the only new fact alleged is that the Seller changed the initial assignee from Potlatch #1 to ICCU, presumably without Plaintiffs' immediate knowledge or approval. This occurrence, however it is categorized, is not actionable conduct <u>against ICCU</u> because (1) the Seller was acting within its rights under the Vehicle Contact; and (2) <u>ICCU did not commit this conduct</u>—it was instead the action of George Gee Cadillac Kia as the seller and other party to the agreement. ICCU was not a party to the agreement at that time. As such, even if the assignment were actionable conduct, which it is not, the causes of action would be against George Gee Cadillac Kia—not against ICCU. Accordingly, Defendants respectfully request that the present motion to amend be denied in full and further contend that the proposed amendment fails to rectify or cure any of his prior causes of action.

## IV.   CONCLUSION

Based on the forgoing authorities, ICCU and Mr. Berrett respectfully request that the Court deny in full Plaintiffs' Motion for Leave to Amend the Complaint.

DATED this 25th day of June, 2025.

JONES WILLIAMS FUHRMAN GOURLEY, P.A.

/s/ Kimbell D. Gourley & Cody J. Witko
KIMBELL D. GOURLEY, of the Firm
CODY J. WITKO, of the Firm
Attorneys for Defendants/Counterclaimant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 25th day of June, 2025, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF System.

I certify that the following listed non-registered CM/ECF participants were served a copy of the foregoing by first class mail, postage prepaid, addressed to:

> Jason Henry Allen, individually and as
> trustee of the Rikur Private Irrevocable
> Trust,
> 2600 East Seltice Way
> Post Falls, Idaho 83854

                                       */s/ Kimbell D. Gourley*
                                       Kimbell D. Gourley

OBJECTION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT - 16