Kimbell D. Gourley / ISB #3578
JONES♦WILLIAMS♦FUHRMAN♦GOURLEY, P.A.
The 9th & Idaho Center
225 North 9th Street, Suite 820
P.O. Box 1097
Boise, ID 83701
Telephone: (208) 331-1170
Facsimile: (208) 331-1529
Email: *kgourley@idalaw.com*

*Attorneys for Defendants/Counterclaimant,*
*Idaho Central Credit Union and Brian M. Berrett*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JASON HENRY ALLEN, Individually and as Trustee of Rikur Private Irrevocable Trust,<br><br>Plaintiff,<br><br>vs.<br><br>IDAHO CENTRAL CREDIT UNION, and BRIAN M. BERRETT,<br><br>Defendants. | Case No.: 2:25-cv-00172-AKB<br><br>**MEMORANDUM IN SUPPORT OF AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FRCP 56** |
| IDAHO CENTRAL CREDIT UNION,<br><br>Counterclaimant,<br><br>vs.<br><br>JASON HENRY ALLEN, Individually and as Trustee of Rikur Private Irrevocable Trust,<br><br>Counter Defendants. | |

COME NOW the Defendants/Counterclaimant, the Idaho Central Credit Union ("ICCU") and Brian M. Berrett ("Berrett"), by and through their counsel of record, Jones Williams Fuhrman Gourley, P.A., and submit this memorandum in support of their Amended Motion for Partial Summary Judgment pursuant to FRCP 56.

## I. Introduction

This case relates to a Retail Installment Sale Contract (the "Installment Contract") for the purchase by Plaintiff/Counter Defendant, Jason Henry Allen ("Allen"), as buyer, of a used 2023 Toyota Sequoia Platinum, VIN#7SVAAABA8PX011784 (the "Vehicle" or the "Collateral"), on October 18, 2024, from George Gee Cadillac Kia, as seller. See Exhibit "A" to the Verified Counterclaim and Exhibit "A" attached hereto. The Installment Contract was then assigned by George Gee Cadillac Kia to ICCU. See p. 4 of the Installment Contract. Thus, the obligations owed by Mr. Allen pursuant to the Installment Contract are now owed to ICCU.

Mr. Allen defaulted on the Installment Contract, and there is currently due and owing from Mr. Allen pursuant to the Installment Contract, monthly payments for the period of December 2, 2024, to the current date. Based upon this default, ICCU seeks to repossess the Vehicle and obtain a judgment on the Installment Contract. As of April 10, 2024, the outstanding obligation owed pursuant to the Installment Contract is as follows:

| | |
|---|---|
| Principal balance | $ 84,800.94 |
| Accrued Interest | $2,546.03 |
| Repossession Fees | $257.50 |
| Total | $87,604.47 |

Additional interest continues to accrue on this sum from and including April 10, 2025, until and including the date of entry of judgment herein at the per diem rate of $15.12.

Mr. Allen appears to have formulated a plan, possibly with the assistance of some artificial intelligence software or research, by which he could sign the Installment Contract with additional language of "without recourse" or "without release", and somehow, pursuant to Idaho Code §28-1-308 and other law, he could keep the Vehicle and not pay for it. For example, see Exhibit G to the complaint, whereby on October 19, 2024, one-day after executing the Installment Contract, Mr. Allen attempts to appoint ICCU and/or Mr. Berrett as fiduciaries of Mr. Allen pursuant to a

document entitled "Fiduciary Appointment and Authorization", and Mr. Allen pursuant thereto makes demand for ICCU to issue a statement showing a "zero dollar ($0.00) balance for the Account". See p. 5. The United States District Courts for the District of Nevada and the Western District of Washington have dealt with these types of arguments and have held as follows:

> Plaintiff includes "UCC 1-308" next to her name. The relevant portion of UCC § 1-308 states,
>> A party that, with explicit reservation of rights, performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as "without prejudice," "under protest," or the like are sufficient. UCC § 1-308(a).
>
> While the intended meaning is unclear, the Court notes that including [*3] "UCC 1-308" is a frequent and common tactic by those who adhere to the sovereign citizen movement. *See Tiffany v. Karen*, 2023 U.S. Dist. LEXIS 91639, at *4 (D. Nev. May 25, 2023) ("Plaintiff also appears to have included in the signature line a reference to "UCC 1-308" which appears to refer to some sort of reservation of rights. This is common in Moorish pleadings because they believe that by "reserving your rights" you can avoid the potential consequences of untruthful answers."); *see also Harper v. California Dep't of Corr. & Rehabilitations*, 2022 U.S. Dist. LEXIS 57821, at *2 (E.D. Cal. March 29, 2022) (collecting cases) (finding that inclusion of UCC 1-308 "has been used by persons who consider themselves to be 'sovereign citizens.'"). While the Court does not have reason to believe plaintiff adheres to the sovereign citizen movement, the Court believes that plaintiff intends to include UCC § 1-308 as a means to "avoid the potential consequences of untruthful answers." Plaintiff cannot seek to absolve herself from the consequences of untruthful or "frivolous" pleadings and/or filings. *C.f. United States v. Sykes*, 614 F.3d 303, 306 n.2 (7th Cir. 2010) (characterizing defendant's claim that the UCC relieved him of criminal liability as "bizarre"). The purpose of Rule 11 is undermined when filers, such as the plaintiff, seek to "reserve her rights" and thereby avoid the penalty of such consequences. *See* Fed. R. Civ. P. 11(b)-(c) (permitting sanctions for violations of the rule).
>
> To the extent that plaintiff [*4] attempts to assert such sovereign citizen/Moorish ideology in her IFP application and Complaint, the Court rejects them. This Court and many others have rejected such movements. *See Harper*, 2022 U.S. Dist. LEXIS 57821, at *2; *see also United States v. Studley*, 783 F.2d 934, 937, fn.3 (9th Cir. 1986) (finding that arguments based on sovereign citizen ideology is frivolous and grounds for sanctions). McCarley v. Stout Ins. Co., LLC., No. 2:24-cv-01697-CDS-MDC, 2024 U.S. Dist. LEXIS 205668, at *1-4 (D. Nev. Nov. 12, 2024)
>
> Finally, Plaintiffs assert Axia's endorsement of the Note "without recourse" somehow "materially altered" the Note, rendering it unenforceable. (Resp. at 4-6). By endorsing the Note "without recourse," Axia was merely insulating itself from liability with regard to any subsequent Note holders should Plaintiffs default on the Note. *See Hall v. Sec. Planning Serv. Inc.*, 371 F. Supp. 7, 14 (D. Ariz. 1974) (HN14 "An [**26] indorsement

of a note creates a contract (unless without recourse) binding indorser to pay the instrument according to its tenor at time of indorsement to holder."). Plaintiffs offer no authority for their novel and somewhat perplexing argument. Indeed, if the court were to follow the Plaintiffs' argument to its logical conclusion, then any endorsement of a negotiable instrument "without recourse" would render the instrument invalid. Axia and Flagstar endorsed the Note without recourse to affect the negotiation of the Note. The endorsements "without recourse" by either Axia or Flagstar in no way altered Plaintiffs' obligations under the Note. None of the new claims or arguments Plaintiffs assert in response to Flagstar's and MERS's motion for summary judgment, even if permissible at this stage in the litigation, raise material issues of fact warranting a trial. Accordingly, the court grants Flagstar's and MERS's motion for summary judgment. Corales v. Flagstar Bank, FSB, 822 F. Supp. 2d 1102, 1112 (W.D. Wash. 2011)

While the intended meaning is unclear, the Court notes that including "UCC 1-308" and similar disclaimers is a frequent and common tactic by those who adhere to the sovereign citizen movement. See *Tiffany v. Karen*, 2023 U.S. Dist. LEXIS 91639, at *4 (D. Nev. May 25, 2023) ("Plaintiff also appears to have included in the signature line a reference to "UCC 1-308" which appears to refer to some sort of reservation of rights. This is common in Moorish pleadings because they believe that by "reserving your rights" you can avoid the potential consequences of untruthful answers."); see also *Harper v. California Dep't of Corr. & Rehabilitations*, 2022 U.S. Dist. LEXIS 57821, at *2 (E.D. Cal. March 29, 2022) (collecting cases) (finding that inclusion of UCC 1-308 "has been used by persons who consider themselves to be 'sovereign citizens.'"). Maida v. United States, No. 2:24-cv-02375-RFB-MDC, 2025 U.S. Dist. LEXIS 3591, at *5 (D. Nev. Jan. 7, 2025)

Mr. Allen then proceeded with a series of letters, demands, and notices, many of which are attached as exhibits to the Plaintiffs' complaint, whereby Mr. Allen attempted, among other things, to (i) unilaterally appoint ICCU's chief financial officer, Brian M. Berrett as Mr. Allen's fiduciary and then to assert Mr. Berrett and ICCU somehow breached this alleged fiduciary duty, and (ii) avoid having to pay for the Vehicle.

The Plaintiffs have identified 17 Counts in their complaint, without regard for whether (i) there exists a private right of action, or (ii) they have alleged the prima facie elements of such claims. Thus, ICCU and Berrett have filed an amended motion for partial summary judgment. In

addition, ICCU has simultaneously filed a motion to dismiss and a motion for judgment on the pleadings relating to the claims not addressed in the amended motion for partial summary judgment.

There is a fundamental misunderstanding by Plaintiffs as to the law, facts, and legal effect of documents one or both Plaintiffs have prepared or used. For example:

(1) Mr. Allen asserts he transferred the Vehicle to Mr. Allen, as trustee of the Rikur Private Irrevocable Trust (the "Trustee"), by filing a UCC-1 financing statement with the Idaho Secretary of State, even though a UCC-1 financing statement does not transfer ownership of an asset, but merely perfects a security interest in a personal property asset, and that somehow the Vehicle was transferred to the Trustee free and clear of ICCU's security interest in the Vehicle (See allegation 119 in the complaint);

(2) Mr. Allen appears to have granted a power of attorney to himself, and then he thereafter signs documents pursuant to his power of attorney (See Exhibit B to the complaint);

(3) Mr. Allen appears to have attempted to create an irrevocable trust, but then provides in the trust agreement that the trustees can terminate it at any time (See Exhibit A to the complaint);

(4) Mr. Allen is the "maker" on the Installment Contract, but he makes numerous allegations about how he is an indorser. A "maker" on a promissory note is not an indorser and cannot assert any rights or protections applicable to an indorser. Mr. Allen then asserts that he somehow assigned the Installment Contract to ICCU as payment in full of the outstanding obligations owed pursuant to the Installment Contract. See Count X on page 18 of the complaint.

(5) The Idaho Unfair Claims Settlement Practices Act relates to insurance, and insurance is not involved in any of the claims asserted in this matter;

(6) A "debt collector" pursuant to the Fair Debt Collection Practices Act is not a person that owns the debt, such as ICCU, but rather relates to a third-party seeking to collect the debt owed

to a third-person creditor. ICCU is not a "debt collector" and is not liable pursuant to the Fair Debt Collection Practices Act;

(7) There is no private cause of action pursuant to the Fair Credit Reporting Act; and

(8) Plaintiffs signed a document entitled "Fiduciary Appointment and Authorization" (See Exhibit G to the complaint), whereby they attempt to unilaterally appoint Mr. Berrett as their fiduciary, without Mr. Berrett's permission or consent.

There are numerous more examples that could be referenced, but for brevity, ICCU and Berrett will wait to see what arguments, if any, are raised by Plaintiffs in response to the amended motion for partial summary judgment.

## II. Summary of Claims Subject to the Amended Motion for Partial Summary Judgment

| COUNTS | DESCRIPTION OF CLAIMS | PARTY(S) AGAINST WHOM THE CLAIM IS ASSERTED |
|---|---|---|
| **COUNT I** | **Breach of Contract** | ICCU |
| **COUNT II** | **Breach of Fiduciary Duty** | ICCU & Berrett |
| **COUNT III** | **Violation of the Fair Credit Reporting Act** | ICCU |
| **COUNT IV** | **Violation of the Idaho Consumer Protection Act** | ICCU |
| **COUNT V** | **Unjust Enrichment** | ICCU |
| **COUNT VI** | **Violation of the Fair Debt Collection Practices Act** | ICCU |
| **COUNT X** | **Declaratory Judgment and Conversion of Trust Property** | ICCU |
| **COUNTERCLAIM** | **Breach of Installment Contract** | Plaintiffs |

## III. Undisputed Facts

The following facts are true, accurate, and supported by the Affidavit of Thomas Butler [Dkt. No. 23-1], Affidavit Brian M. Berrett [Dkt. No. 22-1], Second Affidavit of Thomas Butler [Dkt. No. 41, and Verified Counterclaim [Dkt No. 11}:

(1) At all times relevant hereto, Idaho Central Credit Union ("ICCU") was an Idaho state-chartered association duly authorized to do, and doing business in, the state of Idaho.

(2) At all times relevant hereto, Counter Defendants, Jason Henry Allen, an individual ("Allen"), and Jason Henry Allen, trustee of the Rikur Private Irrevocable Trust ("Trustee"), were individuals residing in Kootenai County, Idaho.

(3) On or about October 18, 2024, Allen, as borrower, executed in favor of George Gee Cadillac Kia, as seller and lender, a certain Idaho Retail Installment Contract in the original principal amount of $84,700.94 (the "Installment Contract"). A true and correct copy of the Installment Contract is attached to the Counterclaim as **Exhibit A**. George Gee Cadillac Kia thereafter assigned the Installment Contract on October 18, 2024, to ICCU.

(4) In order to secure the obligations owed under the Installment Contract, Allen, as grantor, granted to ICCU, as secured party, a security interest in a certain used 2023 Toyota Sequoia Platinum, VIN#7SVAAABA8PX011784 ("Collateral"). This security interest is evidenced, and the terms and conditions are set forth, in the Installment Contract.

(5) In order to perfect ICCU's security interest in the Collateral, ICCU caused its name to be listed as a first lien holder on the Collateral's certificate of title. A true and correct copy of the Collateral's certificate of title is attached as **Exhibit B** to the counterclaim.

(6) That the security interest granted to ICCU in the Collateral is superior in time and in right to the interest of any other party, including Allen and the Trustee to this action.

(7) Allen is in default under the Installment Contract for failure to pay the December 2, 2024, to the present installment payments.

(8) The Collateral has not yet been repossessed or foreclosed upon by ICCU.

(9) As of April 10, 2025, the following sums were due, owing, and unpaid on the Installment Contract:

| | |
|---|---|
| Principal balance | $ 84,800.94 |
| Accrued Interest | $2,546.03 |
| Repossession Fees | $257.50 |
| Total | $87,604.47 |

Additional interest continues to accrue on this sum from and including April 10, 2025, until and including the date of entry of judgment herein at the per diem rate of $15.12.

(10) ICCU has fully complied with all conditions precedent incumbent upon it to perform.

(11) The Installment Contract, among other things, provides that if payment of any sums, either principal or interest, shall not be made at the times when the said payments shall become due as expressed by the Installment Contract, the whole of the principal sums then remaining paid, together with interest that shall have accrued thereon, shall become immediately due and payable at the option of the holder of the Installment Contract, and that Allen has failed to pay the amounts due on the Installment Contract in accordance with its terms. Accordingly, ICCU declared that the principal sum under the Installment Contract is now due and payable in full, together with interest with accrued and accruing interest thereon.

(12) The Installment Contract provides, among other things, that if Allen fails to repay the Installment Contract as provided therein, ICCU has the right to take possession of any or all of the Collateral which has been granted as collateral to ICCU. That due to the default of Allen, ICCU may exercise its rights pursuant to the Installment Contract to take possession of the Collateral.

(13) That, based on information and belief and the NADA Guides attached as **Exhibit C** to the counterclaim, the fair market value of the Collateral, namely a 2023 Toyota Sequoia Platinum, VIN#7SVAAABA8PX011784, is in the range of $59,400.00.

(14) Neither ICCU nor Mr. Berrett had any participation in or knowledge about the purchase and sale and loan transaction between Allen and George Gee Cadillac Kia.

(15) In addition, Mr. Berrett had no participation in or knowledge about the assignment of the Installment Contract by George Gee Cadillac Kia to ICCU.

(16) Mr. Berrett had no participation in Allen's efforts to create a fiduciary duty that does not exist with ICCU or with Mr. Berrett, individually. Allen sent to ICCU in care of Mr. Berrett fiduciary appointment and authorization dated October 19, 2024. This is the first time Mr. Berrett had any knowledge about Allen or the Installment Contract.

(17) Mr. Berrett never accepted any appointment as a fiduciary of Allen, as an individual, or Allen as trustee of the Rikur Private Irrevocable Trust, and Mr. Berrett never assumed or undertook any fiduciary duties as to Allen or the Trustee.

(18) In addition, Mr. Berrett never had any conversations or meetings with Allen or the Trustee.

(19) Allen's fiduciary appointment and authorization form, along with other documents received from Allen over the next five months, were forwarded by ICCU to its counsel, Kimbell D. Gourley, and Mr. Gourley responded to Allen on behalf of ICCU and Mr. Berrett.

(20) Mr. Berrett was simply never involved with Allen or the Installment Contract until after the Installment Contract was assigned to ICCU and Allen was making various demands upon ICCU and/or Mr. Berrett. Mr. Berrett's involvement with Allen, both as an individual and as

Trustee of the Rikur Private Irrevocable Trust, has been to simply keep informed of the demands and this lawsuit.

(21) Neither ICCU nor Mr. Berrett entered into an agreement to accomplish an unlawful objective or to accomplish a lawful objection in an unlawful manner.

IV. Standard of Review on Amended Motion for Partial Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there [*7] is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.
"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Material facts are those that may affect the outcome of the case. *See id.* at 248.
The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that [*8] the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). Klein v. Beck, No. 4:10-CV-0088-EJL-REB, 2012 U.S. Dist. LEXIS 39609, at *6-8 (D. Idaho Mar. 22, 2012)

IV. Argument

(1) COUNTERCLAIM, AND PLAINTIFFS' COUNT I – BREACH OF CONTRACT – alleged against ICCU.

ICCU has filed a counterclaim on the Installment Contract. The Plaintiffs have filed a claim alleging breach of the Installment Contract, but no legitimate breach has been identified or pled. Mr. Allen has not paid the installments on the Installment Contract for the period

December 2, 2024, to the present date. This failure to make the required payments constitutes a default pursuant to the Installment Contract, and ICCU is entitled to summary judgment as to the obligations owed as of April 10, 2025, pursuant to the Installment Contract in the following amounts:

| | |
|---|---|
| Principal balance | $ 84,800.94 |
| Accrued Interest | $2,546.03 |
| Repossession Fees | $257.50 |
| Total | $87,604.47 |

Additional interest continues to accrue on this sum from and including April 10, 2025, until and including the date of entry of judgment herein at the per diem rate of $15.12.

The Plaintiffs admit in allegation 59 on page 9 of the complaint that there exists a valid and enforceable contract between ICCU and Plaintiff, Mr. Allen, but then assert in allegation 61 that ICCU's failure to release its security interest in the Vehicle somehow constitutes a breach of the Installment Contract. ICCU has a perfected security interest in the Vehicle, and the law does not require it to release such security interest until the obligations owed pursuant to the Promissory Note have been paid in full. Thus, ICCU and Berrett are entitled to summary judgment as a matter of law as to Count I of the Plaintiffs' complaint and ICCU's counterclaim.

**(2)       COUNT II – BREACH OF FIDUCIARY DUTY – alleged against ICCU.**

Plaintiffs have alleged a claim against ICCU and Mr. Berrett based upon an alleged breach of fiduciary duty. As set forth in the Affidavit of Thomas Butler [Dkt. No. 23-1] and the Affidavit of Brian M. Berrett [Dkt. No. 22-1], neither ICCU nor Mr. Berrett ever (i) entered into an agreement with either of the Plaintiffs creating a fiduciary relationship, nor (ii) agreed to assume any such fiduciary duty. Rather, the Plaintiffs attempted to unilaterally create a fiduciary duty with Fiduciary Appointment attached as Exhibit G to the complaint. ICCU and Mr. Berrett

rejected any such appointment, and there does not exist any fiduciary duty between the Plaintiffs, or either of them, and ICCU and/or Mr. Berrett.  See Second Affidavit of Thomas Butler [Dkt. No. 41].

The Idaho Supreme Court has repeatedly and consistently decreed that there is no fiduciary duty between a lender/creditor and the borrower/debtor, except with one small exception not applicable to this subject loan relating to the disbursement of funds with construction loans, and held:

> Generally, the relationship between a borrower and lender is a debtor-creditor relationship, not a fiduciary relationship. *Idaho First National Bank v. Bliss Valley \*\*754 \*805 Foods, Inc.,* 121 Idaho 266, 277, 824 P.2d 841, 852 (1991). However, fiduciary duties may arise between lenders and borrowers in limited circumstances where there is "an agreement creating a duty, or if the lender exercises complete control over the disbursement of funds." *Wooden v. First Security Bank of Idaho, N.A.,* 121 Idaho 98, 100, 822 P.2d 995, 997 (1991). Madrid v. Roth, 134 Idaho 802, 804–05, 10 P.3d 751, 753–54 (Ct. App. 2000)
>
> In *Black Canyon, supra,* we held that, generally, the relationship between a bank lender and borrower was a debtor-creditor relationship, not a fiduciary relationship, stating: "We have been unable to locate any case in which a fiduciary relationship was held to arise solely through a longstanding creditor-debtor relationship or prior dealings between the customer and the bank." ... The rule expressed in the above cases holds that the relationship in a lender-borrower situation is a debtor-creditor relationship, and not a fiduciary relationship. 119 Idaho at 176, 804 P.2d at 905 (citing *Dugan v. First National Bank of Wichita,* 227 Kan. 201, 606 P.2d 1009, 1015 (1980). *See also, Peterson v. Idaho First National Bank,* 83 Idaho 578, 585, 367 P.2d 284, 291 (1961) ("It is generally stated that the relationship between a bank and its general depositor is that of debtor and creditor"); *Meyer v. Idaho First National Bank,* 96 Idaho 208, 525 P.2d 990 (1974). Notwithstanding our holding in *Black Canyon,* the borrowers, while acknowledging that a fiduciary relationship will not "arise solely through" a borrower-lender relationship, cite to cases from other jurisdictions which hold that there are some instances in which a fiduciary relationship may arise between a lender and borrower. *See, e.g., Union State Bank v. Woell,* 434 N.W.2d 712 (N.D.1989); *Deist v. Wachholz,* 208 Mont. 207, 678 P.2d 188 (1984); *Denison State Bank v. Madeira,* 230 Kan. 684, 640 P.2d 1235 (1982); *Dolton v. Capitol Federal Sav. & Loan Ass'n.,* 642 P.2d 21 (Colo.App.1981); *Pigg v. Robertson,* 549 S.W.2d 597 (Mo.App.1977); *Klein v. First Edina Nat'l. Bank,* 293 Minn. 418, 196 N.W.2d 619 (1972). In the *Black Canyon* case, we reviewed those or similar cases, but nevertheless chose to reject the claim of a fiduciary relationship. <u>Idaho First Nat. Bank v. Bliss Valley Foods, Inc.</u>, 121 Idaho 266, 276–77, 824 P.2d 841, 851–52 (1991).

Accordingly, ICCU and Mr. Berrett are entitled to summary judgment as a matter of law.

### (3) COUNT III – Violation of Fair Credit Reporting Act – alleged against ICCU.

The Plaintiffs next assert a claim for an alleged violation of the Fair Credit Reporting Act. The Fair Credit Reporting Act is set forth in 15 U.S.C. §§1681-1681x. The Fair Credit Reporting Act (Title VI of the Consumer Credit Protection Act) protects information collected by consumer reporting agencies such as credit bureaus, medical information companies, and tenant screening services. Companies that provide information to consumer reporting agencies also have specific legal obligations, including the duty to investigate disputed information. Additionally, users of the information for credit, insurance, or employment purposes must notify the consumer when an adverse action is taken based on such reports. The Fair and Accurate Credit Transactions Act added many provisions to this Act, primarily relating to record accuracy and identity theft. The Dodd-Frank Act transferred to the Consumer Financial Protection Bureau most of the rulemaking responsibilities added to this Act by the Fair and Accurate Credit Transactions Act and the Credit CARD Act, but the Commission retains all its enforcement authority.

The key question is whether the Plaintiffs have a private right of action pursuant to the Fair Credit Reporting Act against ICCU. The Ninth Circuit spoke to this precise question in Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1058-59 (9th Cir. 2002), wherein the court discussed whether a private right of action exists against a furnisher of credit under the FCRA. There, the Ninth Circuit explained the issue as follows:

> "It can be inferred from the structure of the [FCRA] that Congress did not want furnishers of credit information exposed to suit by any and every consumer dissatisfied with the credit information furnished. Hence, Congress limited the enforcement of the duties [owed by furnishers of credit information] to governmental bodies. However, Congress did provide a filtering mechanism by requiring the disputatious consumer to notify a CRA and establishing the CRA as the recipient of notice of the investigation from the furnisher. With this filter in place and opportunity for the furnisher to save itself from liability by taking the steps required by § 1681s-2(b), Congress put no limit on private enforcement under §§ 1681n & o." 282 F.3d 1057, 1060 (9th Cir. 2002).

> The foregoing makes clear that a private right of action against a furnisher of credit [*1180] exists only if the disputatious consumer notifies the CRAs in the first instance. The CRAs then have an obligation to investigate whether the claim is frivolous [**6] or irrelevant. See 15 U.S.C. § 1681i(a) (3). Once a claim is deemed viable, the CRAs must contact the furnisher of the credit information, which affords an opportunity to investigate and rectify erroneous reports. See 15 U.S.C. § 1681s-2(b). The furnisher's duty to investigate, however, does not arise unless it receives notice of the dispute from the CRAs directly. Bypassing the filter and contacting the furnisher of credit directly does not actuate the furnisher's obligation to investigate, nor does it give rise to a private right of action. See <u>Nelson</u>, 282 F.3d at 1060.
>
> In order for Plaintiffs to state a claim under the FCRA against a furnisher of credit such as Rickenbacker, Plaintiffs must allege that they contacted the CRAs, who, in turn, determined the claim was viable and contacted Rickenbacker, triggering Rickenbacker's duty to investigate. Since Plaintiffs have failed to allege the foregoing as required, they lack standing to bring this private right of action against Rickenbacker. Accordingly, Rickenbacker's motion to dismiss Plaintiffs' FCRA claim is granted with leave to amend. <u>Roybal v. Equifax, Transunion, Experian Rickenbacker, Medamerica, City Towing Body Shop, Inc., 405 F. Supp. 2d 1177, 1179-80 (E.D. Cal. 2005)</u>.

Thus, ICCU and Berrett respectfully request that the court grant summary judgment as to the Plaintiffs' claim of an alleged violation of the Fair Credit Reporting Act.

**(4)   COUNT IV - Violation of the Idaho Consumer Protection Act – alleged against ICCU.**

Plaintiffs have asserted a claim based upon an alleged violation of the Idaho Consumer Protection Act, which Act is set forth in Idaho Code §48-601 et. seq. (the "ICPA"). The Plaintiffs allege a violation of the ICPA, but do not articulate what exactly the alleged violations are.

The ICPA sets forth certain unfair methods of competition, and unfair or deceptive acts or practices are unlawful, and states in part:

> 48-603. UNFAIR METHODS AND PRACTICES. The following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful, where a person knows, or in the exercise of due care should know, that he has in the past, or is:
> …

> (17) Engaging in any act or practice that is otherwise misleading, false, or deceptive to the consumer;
> (18) Engaging in any unconscionable method, act or practice in the conduct of trade or commerce, as provided in section 48-603C, Idaho Code, provided, however, that the provisions of this subsection shall not apply to a regulated lender as that term is defined in section 28-41-301, Idaho Code;
> ….

The ICPA then sets forth circumstances of what constitutes an unconscionable method, act, or practice, and states in part:

> …
> (2) In determining whether a method, act, or practice is unconscionable, the following circumstances shall be taken into consideration by the court:
> (a) Whether the alleged violator knowingly or with reason to know, took advantage of a consumer reasonably unable to protect his interest because of physical infirmity, ignorance, illiteracy, inability to understand the language of the agreement, or similar factor;
> (b) Whether, at the time the consumer transaction was entered into, the alleged violator knew or had reason to know that the price grossly exceeded the price at which similar goods or services were readily available in similar transactions by similar people, although price alone is insufficient to prove an unconscionable method, act, or practice;
> (c) Whether the alleged violator knowingly or with reason to know, induced the consumer to enter into a transaction that was excessively one-sided in favor of the alleged violator;
> (d) Whether the sales conduct or pattern of sales conduct would outrage or offend the public conscience, as determined by the court.

None of these circumstances is applicable in the present situation, and Plaintiffs have alleged no facts that fall within such circumstances.

Thus, ICCU and Berrett respectfully request that the court grant summary judgment as to the Plaintiffs' claim of an alleged violation of the ICPA.

### (5) COUNT V – Unjust Enrichment – alleged against ICCU

Plaintiffs have alleged a claim against ICCU based upon unjust enrichment. As referenced hereinabove, the Plaintiffs admit in allegation 59 on page 9 of the complaint that there

exists a valid and enforceable contract between ICCU and Plaintiff, Mr. Allen. In addition, ICCU in its Verified Counterclaim [Dkt. No. 11} and in the Affidavit Thomas Butler [Dkt. No. 23-1] testifies that there exists a valid and enforceable agreement between ICCU and Plaintiff, Mr. Allen.

In Wolford v. Tankersley, 107 Idaho 1062, 695 P.2d 1201 (1985), the Court stated the following in relation to a claim for unjust enrichment when an express agreement is found to be enforceable:

> Even though an agreement exists, unjust enrichment may be imposed. Hixon v. Allphin, 76 Idaho 327, 281 P.2d 1042 (1955). The existence of an express agreement does not, in and of itself, signify that an action for unjust enrichment cannot be brought. Rather, only when the express agreement is found to be enforceable is a court precluded from applying the equitable doctrine of unjust enrichment in contravention of the express contract. Id. at 1064, 695 P.2d at 1203. Dbsi/Tri V P'ship v. P'ship v. Bender, 130 Idaho 796, 805, 948 P.2d 151, 160 (1997)

As to the elements of a claim for unjust enrichment:

> "The elements of unjust enrichment are that (1) a benefit is conferred on the defendant by the plaintiff; (2) the defendant appreciates the benefit; and (3) it would be inequitable for the defendant to accept the benefit without payment of the value of the benefit." *Teton Peaks Inv. Co., LLC v. Ohme*, 146 Idaho 394, 398, 195 P.3d 1207, 1211 (2008). Because this is an equitable claim, we note: "The maxim, 'He who comes into equity must come with clean hands,' imposes itself alike upon him who defends, and upon him who prosecutes, a suit in equity." *Witthoft v. Commercial Dev. & Inv. Co.*, 46 Idaho 313, 324, 268 P. 31, 34 (1928). Harris, Inc. v. Foxhollow Constr. & Trucking, 151 Idaho 761, 771, 264 P.3d 400, 410 (2011).

In this matter, ICCU has received no benefit, and accordingly, there is no benefit that would be inequitable for ICCU to retain. ICCU simply financed the loan and has not been repaid. Thus, Plaintiffs cannot establish a prima facie claim for unjust enrichment, and ICCU and Berrett are entitled to summary judgment as a matter of law.

**(6)　COUNT VI – Violation of the Fair Debt Collection Practices Act – alleged against ICCU**

The Plaintiffs next assert a claim for an alleged violation of the Fair Debt Collection Act. The primary basis of the dismissal is that the Fair Debt Collection Practices Act is

applicable to "debt collectors", who are attempting to collect debts owed to third parties, and the Act is not applicable to parties seeking to collect debts owed to themselves. This analysis is set forth in Tierney v. Carrington Mortg. Servs., LLC, No. C20-1245RSM, 2021 U.S. Dist. LEXIS 219288, at *14-15 (W.D. Wash. Nov. 12, 2021), which stated:

> The Fair Debt Collection Practices Act ("FDCPA") was enacted to combat abusive debt collection practices. 15 U.S.C. § 1692. An FDCPA claim must allege facts demonstrating the false or misleading representations made by the debt collector and unfair practices used in an attempt to collect the debt. 15 U.S.C. § 1692(e), (f).
>
> The Fair Credit Reporting Act is set forth in 15 U.S.C. §§1681-1681x
> entered into for personal purposes; (3) the defendant is a debt collector; and (4) the defendant violated one of the provisions of the FDCPA. *Smith v. Bank of N.Y. Mellon*, No. C19-0538-JCC, 2019 U.S. Dist. LEXIS 113688, 2019 WL 2994695, at *4 (W.D. Wash. July 9, 2019).
> To establish a violation of the FDCPA, a plaintiff must demonstrate the following elements: (1) the plaintiff is a consumer; (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a debt collector; and (4) the defendant violated one of the provisions of the FDCPA. *Smith v. Bank of N.Y. Mellon*, No. C19-0538-JCC, 2019 U.S. Dist. LEXIS 113688, 2019 WL 2994695, at *4 (W.D. Wash. July 9, 2019).
> The FDCPA defines "debt collector" as any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 USC § 1692a(6). The term explicitly does not include any employee of a creditor acting in the name of the creditor. § 1692a(6)(A). The term explicitly does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed [*15] or due another to the extent such activity... concerns a debt which was not in default at the time it was obtained by such person." § 1692a(6)(F). A creditor is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." § 1692a(4).

Tierney v. Carrington Mortg. Servs., LLC, No. C20-1245RSM, 2021 U.S. Dist. LEXIS 219288, at *14-15 (W.D. Wash. Nov. 12, 2021). (emphasis added). See also, Barnes v. Routh Crabtree Olsen PC, 963 F.3d 993, 997-98 (9th Cir. 2020), In re Pohlman, No. 16-01332-JMM, 2018 Bankr. LEXIS 2389, at *19-20 (Bankr. D. Idaho Aug. 10, 2018), Purdy v. Aegis Wholesale Corp., No. 1:11-cv-00640-EJL-REB, 2012 U.S. Dist. LEXIS 140931, at *24-26 (D. Idaho Aug. 17, 2012), and Student Loan Fund v. Duerner, 131 Idaho 45, 50, 951 P.2d 1272, 1277 (1997) (A "debt collector" is defined as any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect,

directly or indirectly, debts owed or due or asserted to be owed or due another. . . .)

ICCU has not utilized a "debt collector" in relation to this debt, and all of the communications made in this matter were made by ICCU, which owns the subject debt. Thus, the Fair Debt Collection Practices Act is inapplicable, and ICCUs and Berrett's amended motion for summary judgment should be granted.

**(7)      COUNT X – Declaratory Judgment and Conversion of Trust Property – alleged against ICCU**

The Plaintiffs have asserted a claim against ICCU for declaratory judgment and conversion of trust property. See allegation 118 et. seq., on page 18. In this claim, Plaintiffs assert Mr. Allen transferred ownership of the Vehicle to Mr. Allen, as trustee of the Rikur Private Irrevocable Trust pursuant to a UCC-1 financing statement filed with the Idaho Secretary of State. There is a disconnect or misunderstanding by Plaintiffs as to what a UCC-1 financing statement does and does not do. As the court is aware, a UCC-1 financing statement perfects a security interest in personal property; however, it does not transfer any ownership interest in the property, including a motor vehicle. In addition, even if Plaintiff, Mr. Allen, did somehow transfer the Vehicle to himself, as Trustee, the transfer as a matter of law would be subject to ICCU's lien/security interest in the Vehicle because Plaintiff, Mr. Allen, cannot unilaterally transfer the Vehicle free and clear of ICCU's lien/security interest.

Plaintiffs then assert in allegation 121 that ICCU's attempt to repossess the Vehicle constitutes wrongful conversion of trust property. First, ICCU has the contractual right to repossess the Vehicle, and second, attempts to repossess do not constitute conversion.

Finally, Plaintiffs in allegation 120 on page 18 allege that the endorsement of Exhibit B to the complaint constitutes full satisfaction of the indebtedness owed pursuant to the

Installment Contract. Exhibit B is a compilation of documents, including the Installment Contract and a power of attorney from Mr. Allen to himself. It appears Mr. Allen is asserting the Installment Contract is a negotiable instrument and he has tendered it to ICCU as full payment of the indebtedness owed pursuant to the Installment Contract. None of this makes sense or is supported by the facts or the law. Accordingly, ICCU and Berrett are entitled to summary judgment as a matter of law on this claim.

V. Conclusion

ICCU and Berrett respectfully request that the court enter an order granting summary judgment on the following counts alleged by Plaintiffs in their complaint and ICCU's counterclaim:

| COUNTS | DESCRIPTION OF CLAIMS | PARTY(S) AGAINST WHOM THE CLAIM IS ASSERTED |
|---|---|---|
| COUNT I | Breach of Contract | ICCU |
| COUNT II | Breach of Fiduciary Duty | ICCU & Berrett |
| COUNT III | Violation of the Fair Credit Reporting Act | ICCU |
| COUNT IV | Violation of the Idaho Consumer Protection Act | ICCU |
| COUNT V | Unjust Enrichment | ICCU |
| COUNT VI | Violation of the Fair Debt Collection Practices Act | ICCU |
| COUNT X | Declaratory Judgment and Conversion of Trust Property | ICCU |
| COUNTERCLAIM | Breach of the Installment Contract | Plaintiffs |

DATED this 31st day of October, 2025.

                                      JONES WILLIAMS FUHRMAN GOURLEY, P.A.

                                      */s/ Kimbell D. Gourley*
                                      KIMBELL D. GOURLEY
                                      Attorneys for Defendants/Counterclaimant

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 31st day of October 2025, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF System.

I certify that the following listed non-registered CM/ECF participants were served a copy of the foregoing by first-class mail, postage prepaid, addressed to:

  Jason Henry Allen, individually and as
  trustee of the Rikur Private Irrevocable
  Trust,
  2600 East Seltice Way
  Post Falls, Idaho 83854

                                      */s/ Deirdre Price*
                                      Deirdre Price