UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JASON HENRY ALLEN, individually and as Trustee of Rikur private irrevocable trust,<br><br>Plaintiff,<br><br>v.<br><br>IDAHO CENTRAL CREDIT UNION and BRIAN M. BERRETT,<br><br>Defendants. | Case No. 2:25-cv-00172-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are numerous motions, including several dispositive motions. Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented, and that oral argument would not significantly aid its decision-making process. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). As discussed below, the Court disposes of Plaintiff's claims over which it has original jurisdiction and declines to exercise supplemental jurisdiction over Plaintiff's state law claims and Defendants' state law counterclaims. *See* 28 U.S.C. § 1367(c)(3).

## BACKGROUND

Plaintiff, John Henry Allen, brings this action against Defendants Idaho Central Credit Union (ICCU) and its chief financial officer, Brian M. Berrett (Dkt. 1 at 2, ¶¶ 1-3). The genesis of Allen's complaint is a debt for a 2023 Toyota Sequoia (vehicle). Plaintiff entered a Retail Installment Sale Contract (Installment Contract) with George Gee Cadillac Kia on October 18,

**MEMORANDUM DECISION AND ORDER - 1**

2024, to purchase the vehicle for approximately $84,700 (*id.* at 4, ¶ 1; *id.* at 59-62) (attaching Installment Contract as Ex. E).

Plaintiff attaches the Installment Contract to his complaint along with several other documents (*id.* at 59-62). Plaintiff signed the Installment Contract in various places as "By: Jason-Henry: Allen Without Recourse, Pay to the order of John Henry Allen" or as "By Jason-Henry: Allen Without Recourse" (*id.*). The Installment Contract granted a security interest in the vehicle to secure the outstanding loan, and the Installment Contract was assigned to ICCU.

Plaintiff alleges that around the same time he purchased the vehicle, he appointed Berrett as "Plaintiff's fiduciary within the transaction" (*id.* at ¶ 13). In support, Plaintiff attaches a "Fiduciary Appointment and Authorization," which is dated October 19, 2024, is signed by Plaintiff, and purports to designate Berrett as Plaintiff's "fiduciary" for purposes of his account with ICCU (*id.* at 69-76). Then, on November 3, Plaintiff purportedly transferred the vehicle to the Rikur Private Irrevocable Express Trust of which Plaintiff is the trustee (*id.* at 30-33).

On December 1, 2024, Plaintiff sent a letter to Berrett demanding clear title to the vehicle (*id.* at ¶¶ 15-20; *id.* at 35-37). In support, Plaintiff enclosed, among other things, a copy of the Installment Contract and an "Affidavit of Truth" appointing "Jason-Henry: Allen" as an agent with the power of attorney for Jason Henry Allen (*id.* at 35-50). In his letter, Plaintiff asserted that the enclosed documents "satisfy any outstanding balance with interest and fees" on the vehicle (*id.* at 35).

On January 13, 2025, Plaintiff sent a letter to ICCU in response to ICCU's December 2024 letter regarding Plaintiff's default under the Installment Contract (*id.* at ¶¶ 21-25; *id.* at 52-54). In Plaintiff's January 2025 letter, Plaintiff asserted the debt had been paid "in its entirety"; ICCU's continued demands for payment violated state and federal laws; and Berrett had "not fulfilled his

fiduciary duties" (*id.* at 52). After more correspondence between the parties (*id.* at ¶¶ 44-46); Plaintiff sent "a formal cease and desist [letter] to ICCU" on March 5 (*id.* at ¶ 47; *id.* at 56-57).

On March 25, Plaintiff—proceeding pro se—filed a ninety-three-page complaint against ICCU and Berrett, seeking to avoid payment for the vehicle and alleging seventeen claims for relief. Of Plaintiff's seventeen claims, ten are state law claims, including Count I for breach of contract; Count II for breach of fiduciary duty; Count IV for violation of the Idaho Consumer Protection Act, Idaho Code §§ 48-601-619; Count V for unjust enrichment; Count X for declaratory judgment and conversion of trust property; Count XI for violation of "BBB standards" and bad faith; Count XIII for violation of the Idaho Unfair Claims Settlement Practices Act, Idaho Code § 41-1329; Count XV for violation of the Idaho Constitution; Count XVI for intentional infliction of emotional distress; and Count XVII for civil conspiracy.

Additionally, Plaintiff asserts seven claims for relief under federal statutes. Those claims include Count III for a violation of Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x; Count VI for a violation of Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p; Count VII for a violation of 18 U.S.C. § 1001 for false statements; Count VIII for a violation of 18 U.S.C. § 1341 for mail fraud; Count IX for a violation of 18 U.S.C. § 1343 for wire fraud; Count XII for a violation of the Federal Credit Union Act, 12 U.S.C. §§ 1751-1795k; and Count XIV for a violation of Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f.

Defendants responded to Plaintiff's complaint with a barrage of filings. They allege state law counterclaims against Plaintiff for an action on the Installment Contract and for claim and delivery (Dkt. 11). Further, Defendants' pending motions include: (1) a motion to dismiss and for judgment on the pleadings (Dkt. 20); (2) a motion for partial summary judgment (Dkt. 22); (3) a motion for order to show case requesting that the Court order the United States Marshal to seize

the vehicle (Dkt. 23); (4) a motion to strike portions of Plaintiff's affidavits (Dkt. 45); and (5) an amended motion for summary judgment (Dkt. 59).

Meanwhile, Plaintiff filed his own flurry of motions including: (1) a motion to dismiss Defendants' counterclaims (Dkt. 18); two motions to strike Defendants' supporting affidavits (Dkts. 39, 42); a motion to amend the complaint to assert another state law claim (Dkt. 27); a motion for preliminary injunction (Dkt. 32); and a cross-motion for summary judgment (Dkt. 63).

In this decision, the Court addresses the filings related to Defendants' motion to dismiss (Dkt. 20); their motion for partial summary judgment (Dkt. 22); their amended motion for partial summary judgment (Dkt. 59); and Plaintiff's motion to amend (Dkt. 27)—as those motions relate to Plaintiff's federal claims. As discussed below, the Court concludes that Plaintiff's Counts VII, VIII, IX, XII, and XIV fail to state viable claims for relief. Accordingly, the Court dismisses those claims under Rule 12(b)(6) with prejudice because any amendment would be futile. Further, the Court concludes that Plaintiff has failed to establish any genuine issue of material fact for trial on Counts III and VI, and it grants summary judgment for Defendants on these claims.

Because the Court concludes that none of Plaintiff's federal claims over which it has original jurisdiction survive Defendants' dispositive motions, it declines to exercise supplemental jurisdiction over Plaintiff's state law claims and Defendants' state law counterclaims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if the district court has dismissed all claims over which it has original jurisdiction."). For this reason, the Court takes no position on these state law claims.

**ANALYSIS**

A.  **Motion to Dismiss**

This Court considers the filings related to Defendants' motion to dismiss (Dkt. 20) to the extent those filings address Defendants' challenges to Plaintiff's federal claims for failure to state a claim under Rule 12(b)(6).

1.  **Legal Standard**

A dismissal under Rule 12(b)(6) is appropriate where a complaint "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a short and plain statement of the claim, showing the plaintiff is entitled to relief and giving the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it requires "more than labels and conclusions." *Twombly*, 550 U.S. at 555 "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a Rule 12(b)(6) motion, a claim requires a complaint to have enough factual basis which, if true, states a plausible claim for relief. *Twombly*, 550 U.S. at 556. A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Further, a Rule 12(b)(6) dismissal is appropriate where a plaintiff attempts to allege a claim for relief under a statute which does not provide a private right of action.

### 2. No Private Right of Action Under Federal Criminal Statutes

Defendants move to dismiss Counts VII, VIII, and IX for failure to state a claim under Rule 12(b)(6) (Dkt. 21 at 11-13). These Counts all rely on federal criminal statutes. Count VII alleges ICCU provided false statements to credit bureaus in violation of 18 U.S.C. § 1001 (Dkt. 1 at ¶¶ 102-06). Count VIII alleges ICCU committed mail fraud by using the mail to misrepresent Plaintiff's debt status in violation 18 U.S.C. § 1341 (*id.* at ¶¶ 107-11). And Count IX alleges ICCU committed wire fraud by using "wire to misrepresent debt status" in violation of 18 U.S.C. § 1343 (*id.* at ¶¶ 112-17).

A private citizen, however, is not empowered—either individually, as a trustee, or otherwise—to prosecute criminal statutes. *See, e.g.*, *Diamond v. Charles*, 476 U.S. 54, 64 (1986) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Further, federal criminal statutes do not create private rights of action, and a plaintiff may not assert a claim for relief based on a federal criminal statute. *See, e.g.*, *Bey v. Howe*, No. EDCV 18-2568, 2019 WL 2290473, at *4 n.7 (C.D. Cal. Mar. 20, 2019) (ruling plaintiff could not state claim for violation of 18 U.S.C. § 1001); *Chester v. U.S. Dep't. of State*, 2024 WL 2922801, at *3 (W.D. Wash. 2024) (ruling 18 U.S.C. § 1341 is a criminal statute which does not create private right of action).

Plaintiff does not cite any authority to the contrary. Accordingly, the Court dismisses Plaintiff's Counts VII, VIII, and IX with prejudice under Rule 12(b)(6) for failure to state a viable claim for relief. To the extent Plaintiff asserts he pleads Counts VII, VIII, and IX under state law (*see, e.g.*, Dkt. 28 at 1; Dkt. 28-1 at 4-9), the Court declines to exercise supplemental jurisdiction over these claims, as discussed below.

### 3. No Private Right of Action under Federal Credit Union Act

Defendants move to dismiss Count XII under Rule 12(b)(6) for failure to state a claim. (Dkt. 21 at 13-14). Count XII alleges that ICCU is subject to the Federal Credit Union Act (FCUA), 12 U.S.C. §§ 1751-1795k, and that ICCU violated § 1757 by "retaining Plaintiff's payment without releasing the title," "continuing collection attempts after cease-and-desist notices," and "falsely reporting Plaintiff's credit status" (Dkt. 1 at ¶¶ 132-135).

The FCUA, however, does not provide a private right of action, except for limited circumstances not alleged or applicable here. *See, e.g.*, *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) ("[T]he FCUA does not expressly provide a private right of action . . . ."); *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131-32 (9th Cir. 1994) (declining to find common law cause of action under FCUA); *Kaszuba v. Fid. Nat. Default Servs.*, No. 11-cv-129, 2012 WL 392900, at *4 (S.D. Ca. Jan. 3, 1997) ("FCUA does not provide for enforcement through actions filed in court by private individuals"); *Ridenour v. Andrews Fed. Credit Union*, 897 F.2d 715, 719-22 (4th Cir. 1990) (ruling FCUA does not provide either express or implied right of action, other than the statutory exceptions for employee whistleblowers and usury interest).

Plaintiff does not cite any authority to the contrary. Rather, he argues he has asserted "an implied private right of action" under FCUA, which he acknowledges is "contra" to *Jesinger*, 24 F.3d 1127 (Dkt. 28 at 2). The Court, however, is bound by Ninth Circuit authority, including *Jesinger*, and it declines to recognize an implied private right of action under the FCUA. Accordingly, the Court dismisses Count XII with prejudice under Rule 12(b)(6) for failure to state a claim for relief. Further, because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, it declines to consider Plaintiff's request to amend Count XII to state

a claim for breach of the implied covenant of good faith and fair dealing under state law (Dkt. 28-1 at 10).

4. **Failure to State a Viable Claim Under Equal Credit Opportunity Act**

Defendants move to dismiss Count XIV under Rule 12(b)(6) for failure to state a claim (Dkt. 21 at 14-15). Count XIV alleges ICCU violated the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691-1691f (Dkt. 1 at ¶¶ 140-143). Specifically, Plaintiff alleges ICCU violated the ECOA by "falsely reporting Plaintiff's credit status and refusing to release the title to the 2023 Toyota Sequoia" (*id.*).

The ECOA prohibits discrimination against an applicant for credit based on race, color, religion, national origin, sex, marital status, or age; because the applicant's income derives from a public assistance program; or because the applicant exercised a right under the ECOA in good faith. § 1691(a). For purposes of the EOCA, "[t]he term 'applicant' means any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." *Id.* § 1691a(b). The term "applicant," by definition, limits the EOCA's applicability to persons who are still in the process of applying for credit or who initiate a subsequent application for a continuation of credit. *Nia v. Bank of Am., N.A.*, 603 F. Supp. 3d 894, 901-02 (S.D. Cal. 2022). The EOCA provides only an "aggrieved applicant" a private right of action. § 1691e(a).

Although the Ninth Circuit has not yet addressed the requisite elements of a prima facie case for an EOCA violation, at least one district court in the Circuit has ruled that to state a claim for an ECOA violation, a plaintiff must allege facts that plausibly suggest: "(1) the plaintiff was a member of a protected class; (2) the plaintiff applied for credit from defendants; and (3) the plaintiff was denied credit on the basis of his or her protected class." *Nia*, 603 F. Supp. 3d at 902;

*see also Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1160 (N.D. Cal. 2011) (stating prima facie elements).

Here, Plaintiff has failed to allege facts sufficient to state a claim for an ECOA violation. First, Plaintiff does not allege he is an applicant for credit who is a member of a protected class or who is otherwise covered by ECOA. Second, he does not allege ICCU denied his credit application. To the contrary, Plaintiff was granted credit. Instead of the challenging a denial of credit, the upshot of Plaintiff's complaint is that ICCU demands that he repay the loan. For these reasons, Plaintiff has failed to state a viable claim for relief under the ECOA.

The Court rejects Plaintiff's argument that his "trust status satisf[ies]" the prima facie elements articulated in *Das*, 831 F. Supp. 2d 1147 (Dkt. 28 at 2). Specifically, Plaintiff argues that he "alleges discrimination on trust status" (*id.*). No law, however, including the EOCA or *Das*, recognizes "trust status" as a protected class. Further, the Court disagrees that Plaintiff has alleged a claim within the scope of § 1691(d) based on a "denial or discouragement of credit and other discriminatory practices" (Dkt. 28-1 at 13). Plaintiff has not stated a claim for relief under ECOA. Moreover, even if Plaintiff were a member of a recognized protected class, he cannot state a claim for relief under the ECOA because he is not an applicant for credit. Accordingly, the Court dismisses Count XIV with prejudice under Rule 12(b)(6) for failure to state a claim.

**B.     Summary Judgment**

The Court considers the filings related to Defendants' motion for partial summary judgment (Dkt. 22) and their amended motion for summary judgment (Dkt. 59) as they relate to Plaintiff's federal claims.

1.  **Legal Standard**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The trial court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather, the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

At the summary judgment stage, the trial court must view the evidence in the light most favorable to the nonmoving party. If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set

forth by the nonmoving party with respect to that fact. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

### 2. No Triable Issue of Fact Under Fair Credit Reporting Act

Defendants move for summary judgment on Count III. Count III alleges a claim against ICCU under the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681-1681x. Specifically, Plaintiff alleges that ICCU violated the FCRA because "ICCU and its agents furnished inaccurate and misleading information to credit reporting agencies regarding Plaintiff's financial obligations"; "Plaintiff disputed these inaccuracies with ICCU on December 1, 2024, and January 13, 2025"; "ICCU failed to investigate and correct within 30 days"; and ICCU reported "inaccurate debt information against Plaintiff, rather than the Rikur Private Irrevocable Trust" (Dkt. 1 at ¶¶ 71-73). In his allegations, Plaintiff relies on both §§ 1681s-2(a) and 1681s-2(b).

For purposes of the FCRA, ICCU is a furnisher of credit reporting information to "any consumer reporting agency" (CRA). § 1681s-2(a)(1)(A); *see also Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002) (analyzing mortgagee's liability as a "furnisher of credit reporting information"). Section 1681s-2(a) establishes the duties of a furnisher of credit reporting information, such as ICCU. These duties include, for example, to provide accurate information, to correct and update information, and to provide notice of disputed information. § 1681s-2(a)(1)-(3).

Federal and state officials, however, have exclusive authority to enforce violations of § 1681s-2(a). *Nelson*, 282 F.3d at 1059 (noting private enforcement of § 1681s-2(a) is excluded); *see also* § 1681s-2(c)(1) (providing private rights of action under §§ 1681n and 1681o do not apply to violations of § 1681s-2(a)); § 1681s-2(d) (limiting exclusive enforcement of § 1681s-2(a) to federal and state authorities). Because the enforcement of § 1681s-2(a) is limited to Federal and

state officials, Plaintiff does not have a private right of action to assert a violation of § 1681s-2(a) and may not state a claim for any alleged violations of § 1681s-2(a). *Nelson*, 282 F.3d at 1059 (noting no private right of action under § 1681s-2(a)).

A plaintiff may, however, have a private right of action under § 1681s-2(b). *Id.* at 1060; *see also Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1179-80 (E.D. Cal. 2005) (discussing private right of action under § 1681s-2(b)). A precondition to asserting a claim under § 1681s-2(b) is that the consumer must first notify a CRA that he disputes the accuracy of the information the furnisher of credit reporting information provided that CRA. *Nelson*, 282 F.3d at 1060; *Roybal*, 405 F. Supp. 2d at 1179-80. As the district court in *Roybal* explained:

> [A] private right of action against a furnisher of credit information exists ***only if*** the disputatious consumer notifies the CRAs in the first instance. The CRAs then have an obligation to investigate whether the claim is frivolous or irrelevant. *See* 15 U.S.C. § 1681i(a)(3). Once a claim is deemed viable, the CRAs must contact the furnisher of the credit information which affords an opportunity to investigate and rectify erroneous reports. *See* 15 U.S.C. § 1681s-2(b). ***The furnisher's duty to investigate, however, does not arise unless it receives notice of the dispute from the CRAs directly.***

*Roybal*, 405 F. Supp. 2d at 1179-80 (emphasis added); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) (noting obligation of furnisher of credit reporting information under § 1681-2(b) is triggered on notice of dispute from CRA).

Here, Plaintiff fails to allege that he contacted a CRA to dispute inaccurate information which ICCU allegedly provided to that CRA. Defendants assert this failure is grounds for summary judgment (Dkt. 22-2 at 13-14). In response, Plaintiff relies on Exhibits B, C, and D to his complaint (Dkt. 29-1 at 11) (citing to exhibits at Dkt 1 at 34-57). These Exhibits, however, do not establish that Plaintiff contacted a CRA before filing this action to dispute information that ICCU provided to the CRA.

Exhibit B is a "notice of tender" letter, dated December 1, 2024, from Plaintiff to Berrett, stating that Berrett had "received a perfected, executed, and properly indorsed negotiable instrument . . . to satisfy any outstanding balance" on the loan for the vehicle and complaining that Plaintiff had "not received clear title" for the vehicle (Dkt. 1 at 35). Enclosed with this letter are three copies of an "auto loan payoff document" from ICCU with Plaintiff's various notations on them; a copy of the Installment Contract; an unsigned Internal Revenue Service form, entitled "Notice Concerning Fiduciary Relationship"; and an "Affidavit of Truth" purporting to grant the power of attorney for Jason H. Allen to "Jason-Henry: Allen" (*id*. at 38-57). Exhibit C is a January 13, 2025, letter from Plaintiff to ICCU, asserting that "the debt has been paid in full" and purporting to "attach[] receipts confirming the payment of the debt in its entirety" (*id.* at 52-53). And Exhibit D is a February 25, 2025, letter from Plaintiff to Berrett demanding that ICCU cease and desist "all illegal and unlawful collection practices and credit reporting" (*id.* at 56-57).

Contrary to Plaintiff's assertion, these Exhibits fail to establish a genuine issue of material fact that Plaintiff contacted a CRA to dispute information which ICCU allegedly provided to that CRA and that the CRA, in turn, notified ICCU of Plaintiff's dispute. Specifically, Plaintiff has failed to point the Court to any evidence in the record showing he notified a CRA that he disputed credit information ICCU provided to the CRA. To the contrary, Plaintiff's communications, including Exhibits B, C, and D, are with ICCU directly and not with a CRA. Further, Plaintiff's response to Defendants' amended summary judgment motion fails to identify or establish any genuine issues of material fact for trial. Because Plaintiff has failed to establish triable factual issues regarding essential elements of a FCRA claim under § 1681s-2(b) and because he does not have a private right of action to allege a claim under § 1681s-2(a), the Court grants Defendants summary judgment on Count III.

### 3. No Triable Issue of Fact Under Fair Debt Collection Practices Act

Defendants also move for summary judgment on Count VI. Count VI alleges a claim against ICCU under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p. Specifically, Plaintiff alleges that ICCU violated: (1) § 1692c(c), by failing to cease all collection efforts after his December 2024, January 2025, and February 2025 letters; (2) § 1692e, by falsely reporting Plaintiff's debt was outstanding despite his alleged full payment; and (3) § 1692f, by engaging in unfair and unconscionable debt collection practices when demanding payment of a satisfied debt (Dkt. 1 at ¶¶ 93, 96, 99).

Only a "debt collector," however, is subject to liability under the FDCPA. *Henson v. Santander Consumer U.S.A., Inc.*, 582 U.S. 79, 81 (2017). The FDCPA defines the term "debt collector" to mean "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" § 1692a(6). In other words, a debt collector is limited to someone who regularly seeks to collect debts owed to others. *Hensen*, 582 U.S. at 81. The term does not include, however, "any officer or employee of a creditor while, in the name of the creditor, collect[s] debts for such creditor." § 1692a(6)(A). Accordingly, a creditor's employee may collect a debt owed to his employer without being a debt collector under the FDCPA.

Defendants argue ICCU is entitled to summary judgment on Plaintiff's FDCPA claim because it is a creditor rather than a debt collector subject to the FDCPA. Plaintiff acknowledges that creditors are "generally not 'debt collectors'" under the FDCPA (Dkt. 29-1 at 6). Plaintiff argues, however, that "ICCU engaged in collection activities beyond its role as a creditor, such as through third-party agents or practices akin to those of a debt collector" (*id.*). In support, Plaintiff relies on *Henson*, 582 U.S. at 79, and *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir.

1994) (Dkt. 1 at ¶ 92 (citing *Fox* and arguing ICCU is "vicariously liable" as debt collector); Dkt. 29-1 at 6 (citing *Henson*)).

*Henson*, however, does not support Plaintiff's contention that ICCU is a debt collector. In fact, *Henson* clarifies that a purchaser of debt, such as ICCU, is not a debt collector under the FDCPA. 582 U.S. at 83. Specifically, *Henson* explains that the FDCPA does not apply to "a debt owner seeking to collect debts for itself" regardless of "whether the owner originated the debt or came by it only through a later purchase." *Id.* Here, ICCU is a creditor, not a debt collector because Plaintiff's debt under the Installment Contract was assigned to ICCU (Dkt. 22-1 at ¶¶ 5, 9).

Likewise, *Fox* does not support Plaintiff's contention that ICCU is vicariously liable as a debt collector (Dkt. 1 at ¶ 92). Rather, the Ninth Circuit in *Fox* addressed whether a debt collector, who employed an attorney to collect debts, was vicariously liable under § 1692i for its attorney's improper venue decisions when bringing legal actions against the debtor. *Fox*, 15 F.3d at 1516. The Ninth Circuit concluded that the attorney's actions were imputed to the debt collector, which was vicariously liable for those actions. *Id. Fox* is inapposite here because the doctrine of vicarious liability has no application in this case.

Plaintiff also argues that "a creditor who uses any name other than its own or engaged in deceptive conduct may qualify as a 'debt collector'" (Dkt. 62 at 6). Plaintiff, however, fails to point to anything in the record showing that ICCU or Berrett used a name other than their own for purposes of collecting the debt against him or otherwise used deceptive conduct. Moreover, even assuming Berrett attempted to collect the debt for ICCU, he is not a debt collector under the FDCPA because he is an officer of ICCU, the creditor. *See* 1692a(6)(A) (excluding officer or employee of creditor as definition of debt collector); (Dkt. 1 at ¶ 3) (alleging Berrett is ICCU's chief financial officer). Plaintiff has failed to show any genuine issue of material fact that ICCU is

a debt collector under the FCPA. Accordingly, the Court grants Defendants summary judgment on Count VI.

C.      **Rule 56(d) Request for Discovery**

Throughout his filings, Plaintiff requests relief under Rule 56(d) of the Federal Rules of Civil Procedure to conduct discovery in response to Defendants' summary judgment motions (*see, e.g.*, Dkt. 29 at 3; Dkt. 29-1 at 14-15; Dkt. 62 at 2). Under Rule 56(d), a court may defer or deny considering a summary judgment motion, allow additional time to conduct discovery, or issue any other appropriate order if the nonmoving party shows by affidavit that it cannot present facts to justify denying the summary judgment. To prevail on a Rule 56(d) motion, "[t]he requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Fam. Home & Fin. Center, Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F. 3d 822, 827 (9th Cir. 2008). "Failure to comply with these requirements is proper ground for denying discovery and proceeding to summary judgment." *Id.* (citation modified).

Plaintiff has failed to properly support his request for discovery under Rule 56(d). Moreover, no amount of discovery will cure the defects in Plaintiff's federal claims. For example, no discovery will provide Plaintiff with a private right of action if the statute on which relies does not provide for such a right. No discovery will establish Plaintiff is an applicant for credit because he undisputedly was extended credit. No discovery will show Plaintiff notified a CRA about disputed information because that information, if it were to exist, is within Plaintiff's possession and control. Finally, no discovery will establish that either ICCU or Berrett is a debt collector. For these reasons, the Court denies Plaintiff's request for discovery under Rule 56(d).

D.  **Motion to Amend**

Plaintiff repeatedly requests leave to amend his complaint in various filings opposing Defendants' motions. Additionally, Plaintiff specifically moves to amend his complaint to add Count XVIII (Dkt. 27). Plaintiff contends newly discovered evidence indicates that ICCU "fraudulently altered the Installment Contract" (*id*. at 3). In support, he submits an unsigned "Report of Sale and Application for Certificate of Title" showing Potlatch #1 Financial Credit Union (FCU) as the primary lienholder of the vehicle, and another report of sale signed by Plaintiff on which FCU is scratched out and ICCU is included in its place in handwriting (*id.* at 11-12).

Plaintiff's proposed Count XVIII is for fraud under state law (*id.* at 45-49, ¶¶ 159-177). Specifically, Count XVIII is premised on alleged violations of Idaho Code §§ 28-3-407, 28-9-316, and 18-3174 (*id.* at ¶ 162). Count XVIII does, however, contain a single conclusory allegation that "the alteration further violates 15 U.S.C. § 1691 (ECOA) by deceptively altering credit terms and 12 C.F.R. § 226.17 (TILA) by failing to disclose the true lender" (*id.* at 176).

To the extent Count XVIII refers to these federal authorities, it fails to state a claim for relief. As noted above, Plaintiff cannot assert a claim under the ECOA because he cannot allege that he is an applicant for credit. *See, e.g.*, § 1691e(a) (providing only "aggrieved applicant" private right of action); *Nia*, 603 F. Supp. 3d at 902 (ruling "applicant" means persons in the process of applying for credit or continuation of credit). Further, Plaintiff's mere citation to the federal authorities is inadequate to state a claim for relief. For these reasons, the Court denies Plaintiff's motion to amend his complaint to add Count XVIII and his other stray requests for amendments as futile. *See Stripling v. Jordan Prod. Co., L.L.C.*, 234 F.3d 863, 873 (5th Cir. 2000) (providing motion to amend is futile if proposed amendment would "fail to state a claim upon which relief could be granted" under "the same standard of legal sufficiency as applies under Rule 12(b)(6)");

*Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (ruling futility alone is grounds to deny motion seeking leave to amend).

E.  **Declination of Supplemental Jurisdiction**

As discussed above, the Court either dismisses or grants summary judgment on Plaintiff's claims over which it has original jurisdiction, and no amendments or discovery will cure the defects in these claims. A district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The general rule is that "when federal claims are dismissed before trial . . . pendent state claims should also be dismissed." *Religious Tech. Center v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992). Considering the procedural posture of this case, as well as judicial economy, convenience, fairness, and comity, the Court exercises its discretion to decline to entertain supplemental jurisdiction over Plaintiff's state law claims and Defendants' state law counterclaims, and it dismisses those claims without prejudice.

## ORDER

**IT IS ORDERED THAT:**

1. Under 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims (Dkt. 1) all of which are **DISMISSED WITHOUT PREJUDICE**, including Counts I, II, IV, V, X, XI, XIII, XV, XVI, and XVII.

2. Under 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Defendants' state law counterclaims (Dkt. 11) all of which are **DISMISSED WITHOUT PREJUDICE**, including Defendants' First and Second Claims.

3. Plaintiff's Motion to Dismiss Defendant Idaho Central Credit Union's Counter Claims (Dkt. 18) is **DENIED** as **MOOT**.

4. Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(b)(6) & (c) (Dkts. 20, 21, 25) is **GRANTED IN PART** as to Plaintiff's federal law claims, including Counts VII, VIII, IX, XII, and XIV, and these claims are **DISMISSED WITH PREJUDICE**. This Motion is **DENIED IN PART** as **MOOT** to the extent it challenges Plaintiff's state law claims.

5. Defendants' Motion for Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Dkt. 22) is **GRANTED IN PART** as to Plaintiff's federal law claims, including Counts III and VI. This Motion is **DENIED IN PART** as **MOOT** to the extent it challenges Plaintiff's state law claims.

6. Defendants' Motion for Order to Show Cause (Dkt. 23) is **DENIED** as **MOOT**.

7. Plaintiff's Motion for Leave to Amend Complaint Pursuant to Fed. R. Civ. P. 15(a)(2) and Local Rule 15.1 (Dkt 27) is **DENIED** to the extent it seeks to allege a federal claim and is otherwise **DENIED** as **MOOT**.

8. Plaintiff's Motion for Preliminary Injunction and Stay Pursuant to Fed. R. Civ. P. 65 (Dkt. 32) is **DENIED** as **MOOT**.

9. Plaintiff's Motion to Strike Affidavit of Kimbell D. Gourley (Dkt. 39) is **DENIED** as **MOOT** because the Court did not rely on the affidavit in reaching its decision.

10. Plaintiff's Motion to Strike Affidavit of Thomas Butler (Dkt. 42) is **DENIED** as **MOOT** because the Court did not rely on the affidavit in reaching its decision.

11. Defendants' Motion to Strike Portions of the Two Affidavits of Jason Henry Allen (Dkt. 45) is **DENIED** as **MOOT** because the Court did not rely on these affidavits in reaching its decision.

12. Defendants' Amended Motion for Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Dkt. 59) is **GRANTED IN PART** as to Plaintiff's federal law claims, including Counts III and VI. This Motion is **DENIED IN PART** as **MOOT** to the extent it challenges Plaintiff's state law claims.

13. Plaintiff's Cross-Motion for Summary Judgment (Dkt. 63) is **DENIED** as **MOOT**.

14. Based on the foregoing, this case is **DISMISSED** in its entirety, and a separate judgment will enter.

DATED: November 12, 2025

Amanda K. Brailsford
U.S. District Court Judge